1   TONY LOPRESTI, County Counsel (S.B. #289269)
    ARYN PAIGE HARRIS, Deputy County Counsel (S.B. #208590)
2   OFFICE OF THE COUNTY COUNSEL
    70 West Hedding Street, East Wing, Ninth Floor
3   San José, California  95110-1770
    Telephone: (408) 299-5900
4   Facsimile:  (408) 292-7240
    Email:  aryn.harris@cco.sccgov.org
5

6   Attorneys for Defendants
    COUNTY OF SANTA CLARA and SHERIFF
7   ROBERT JONSEN

8

9                          UNITED STATES DISTRICT COURT
10                        NORTHERN DISTRICT OF CALIFORNIA
11

12

| | |
|---|---|
| 13  ROBERT M. BLANK, an individual, ANTONIO RAMOS RODRIGUEZ, an individual, KYLE HOANG TRUONG, an individual, CHARLES KOON CHIU YOUNG, an individual, JONATHAN YOUNG, an individual, CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; and THE SECOND AMENDMENT FOUNDATION, | No. 25CV08027 EJD  **DEFENDANTS' MOTION TO DISMISS [F.R.C.P. 12(b)(6) and 12(b)(7)]; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 17          Plaintiffs, | Date:    TBD  Time:    9:00 a.m. |
| 18  v. | Dept.    4  Judge:   The Honorable Edward J. Davila |
| 19  SANTA CLARA COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT JONSEN, in his official capacity; and DOES 1-10, | |
| 21          Defendants. | |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................1

II. PARTIES ..................................................................................................................2

III. LEGAL BACKGROUND ON CCWs .......................................................................3

    A.      THE BRUEN DECISION ........................................................................3

    B.      SENATE BILL 2 WAS PASSED TO COMPLY WITH BRUEN ........................3

          1.      SB 2 Legislation is Expansive and, as Anticipated, Costly to Administer .........................................................................................3

          2.      CCW Licensing Requirements (Cal. Penal Code § 26150) .........................3

          3.      CCW Application Form (Cal. Penal Code § 26175) ..................................4

          4.      CCW Licenses (Cal. Penal Code § 26175) .................................................4

          5.      CCW License Fees and Psychological Assessment (Cal. Penal Code § 26190) ............................................................................................5

          6.      California DOJ Background Checks (Cal. Penal Code §§ 26185, 26202) ...............................................................................................5

          7.      Recorded Owner of the Licensed Firearm (Cal. Penal Code § 26162) .......6

          8.      Training Courses (Cal. Penal Code § 26165) ............................................6

          9.      Disqualified Person Investigation (Cal. Penal Code § 26202) ...................6

          10.     Disqualified Person Determination (Cal. Penal Code § 26202) .................7

          11.     Initial Notice to Applicant (Cal. Penal Code §§ 26202, 26205, 26206) ......7

          12.     Prohibited Activities (Cal. Penal Code §§ 26200, 26230) .........................8

IV. DEFENDANTS' CCW PROCESS IS DICTATED BY STATE LAWS ................8

    A.      PLAINTIFFS ALLEGE DEFENDANTS' FEES ARE HIGH BUT DO NOT DISPUTE THAT THE FEES REFLECT COST RECOVERY AUTHORIZED BY LAW ...........................................................................8

    B.      A PSYCHOLOGICAL TEST IS AUTHORIZED BY LAW ...............................9

    C.      LEVINE ACT NOTICE .............................................................................9

V. CLAIMS FOR RELIEF ...........................................................................................10

VI. LEGAL ARGUMENT ..............................................................................................11

    A.      THE SHERIFF'S OFFICE IS NOT A PARTY ..............................................11

    B.      PLAINTIFFS CHALLENGE THE CONSTITUTIONALITY OF SB 2. ............11

          1.      Dismissal with Leave to Amend is Warranted. ...........................................11

          2.      The Attorney General Must Be Notified Where the Constitutionality of a State Statute is "Drawn In Question." .............................................12

          3.      Plaintiffs' Claims "Draw In Question" SB 2's Authorization for Cost Recovery and Psychological Tests ........................................................13

a.  Challenge to Defendants' Cost Recovery is a Challenge to the Constitutionality of SB 2 .......14

b.  Psychological Tests on Initial Application is Authorized by SB 2 ...........................................16

c. Summary of Legal Position ..................................................................................................17

           4.      Plaintiffs Also Challenge the Constitutionality of the Levine Act ............17

C.      PLAINTIFFS' SECOND CLAIM, ALLEGEING THAT A LEVINE ACT NOTICE ON THE CCW APPLICATION PAGE VIOLATES THE FIRST AMENDMENT, FAILS AS A MATTER OF LAW..............................................18

ii

1

## TABLE OF AUTHORITIES

Page

2

3

## CASES

4

*Antonyuk v. James*,
 120 F.4th 941, 951 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900, 221 L. Ed. 2d 646 (2025) ..14

5

Ariz . Libertarian Party, Inc. v. Bd. of Supervisors of Pima Cnty.,
 216 F. Supp. 2d 1007, 1009 (D. Ariz. 2002) ............................................................13

6

7

*Ashcroft v. Iqbal*,
 556 U.S. 544, 561-62 (2009) ...................................................................................18

8

Bell Atlantic Corp. v. Twombly,
 550 U.S. 544 (2007) ...............................................................................................18

9

10

Brownstein v. Orange Cnty. Sheriff's Dep't,
 (C.D. Cal., Case No. 8:24-cv-00970) ......................................................................14

11

*Buckley v. Valeo*,
 424 U.S. 1, 13 (1976) ..............................................................................................19

12

13

California Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't,
 745 F. Supp. 3d 1037, 1044 (C.D. Cal. 2024) .........................................................14

14

Citizens United v. Fed. Election Comm'n,
 558 U.S. 310, 366-67 (2010) ...................................................................................19

15

16

*Family PAC v. McKenna*,
 685 F.3d 800, 806 (2012) ........................................................................................19

17

*Fordyce v. City of Seattle*,
 55 F.3d 436, 442 (9th Cir. 1995)..............................................................................15

18

19

*Garcia v. City of Merced*,
 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008) ..............................................................11

20

*Hoffman v. Bonta,*
 (S.D. Cal., Case No. 3:24-cv-00664) .......................................................................14

21

22

Jett Bros. Distilling Co. v. City of Carrollton,
 252 U.S. 1, 6, (1920) ..............................................................................................12

23

*Koons v. Att'y General New Jersey,*
 156 F.4th 210, 2477-48 (2025)................................................................................13

24

25

McCutcheon v. Fed. Election Comm'n,
 572 U.S. 185, 223 (2014) ........................................................................................19

26

Mendocino Env't Ctr. v. Mendocino Cnty.,
 192 F.3d 1283, 1300 (1999) ...................................................................................18

27

28

iii

*Merrill v. Town of Addison*,
  763 F.2d 80, 82 (2d Cir. 1985) .........................................................................16

*Nat'l Ass'n for Gun Rights, Inc. v. Mangan*,
  933 F.3d 1102, 1116 (2019) ..............................................................................20

*New York Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ("Bruen") .....................................................................1, 3, 13

*People v. Alexander*,
  91 Cal. App. 5th 469 (2023), *review denied* (July 26, 2023) ..........................14

*People v. Thompson*,
  --- N.E.3d ---- (2025)........................................................................................14

*Peruta v. Cnty. of San Diego*,
  771 F.3d 570, 574 (9th Cir. 2014) ....................................................................15

*Silva v. San Pablo Police Dep't*,
  805 F. App'x 482, 484 (9th Cir. 2020)..............................................................11

*Streit v. Cnty. of Los Angeles*,
  236 F.3d 552, 563 (2001) ..................................................................................11

*Vann v. City and Cnty. of San Francisco*,
  97 Cal. App. 5th 1013, 1022 (2023)..................................................................11

*Wilson v. Cook*,
  327 U.S. 474, 480–82 (1946) ............................................................................12

*Wolford v. Lopez*,
  116 F.4th 959 (2024) ........................................................................................1, 8

*Wolford v. Lopez*, --- S.Ct. ---,
  2025 WEL 2808808 (Mem), 222 L. Ed. 2d 1241 (Oct. 3, 2025).........................8

*Yamada v. Snipes*,
  786 F.3d 1182, 1194 (2015) ..............................................................................19

## CALIFORNIA GOVERNMENT CODE

Section 84308 ....................................................................................................2, 18

## CALIFORNIA PENAL CODE

Section 16400 .........................................................................................................4

Section 25250 .........................................................................................................7

Section 26150 .........................................................................................1, 3, 4, 19

Section 26155 ....................................................................................................3, 4

iv

Section 26162 .................................................................................................................6

Section 26165 ...........................................................................................................4, 6, 7

Section 26170 .................................................................................................................3

Section 26175 ............................................................................................................4, 5

Section 26185 ...........................................................................................................5, 6

Section 26190 .....................................................................................................5, 7, 14, 15

Section 26190(b)(1) ........................................................................................................5

Section 26190(e)(1) .......................................................................................................16

Section 26190(e)(2) .......................................................................................................16

Section 26195 .................................................................................................................8

Section 26200 .................................................................................................................8

Section 26202 ...........................................................................................1, 4, 5, 6, 7, 17

Section 26202(a)(3) ........................................................................................................4

Section 26202(d)(1) ........................................................................................................6

Section 26205 .................................................................................................................8

Section 26206 ............................................................................................................7, 8

Section 26220 .................................................................................................................5

Section 26230 .................................................................................................................8

Section 273.5 ..................................................................................................................4

Section 31635 .................................................................................................................6

## CALIFORNIA WELFARE AND INSTITUTIONS CODE

Section 5150 ..................................................................................................................4

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 5.1(a)(1) ...............................................................................................................12

Rule 5.1(c) ...................................................................................................................12

Rule 5.1(d) ...................................................................................................................12

Rule 9 ..........................................................................................................................12

v

1

Rule 12(b)(7)....................................................................................................................2, 11

2

Rule 17(b)(3) ........................................................................................................................11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                **NOTICE OF MOTION**

2 TO THE COURT AND ALL PARTIES:

3      NOTICE IS HEREBY GIVEN that on a date to be determined, at 9:00 a.m. or as soon

4 thereafter as the Court permits, Defendants COUNTY OF SANTA CLARA and SHERIFF

5 ROBERT JONSEN will move the Court for an order on their Motion to Dismiss. This motion is

6 based on this notice, the Memorandum of Points and Authorities in Support of the motion, the

7 Notice of Claim of Constitutionality, and on such oral argument that might be presented at the

8 hearing.

9      Defendants file this motion to dismiss without prejudice pursuant to Federal Rule of Civil

10 Procedure 12(b)(7) on the ground that the California Attorney General is a party without whom

11 complete relief cannot be granted because the First Amended Complaint raises a constitutional

12 question and Plaintiff failed to give the required notice pursuant to 28 U.S.C. section 2403. The

13 County's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) of the Second

14 Claim is filed on the grounds that the claim alleging a violation of Plaintiffs First Amendment right

15 to political speech fails to state a claim. Defendants further request that the Court find that the

16 "Sheriff's Department" is not a party subject to suit in this matter.

17

18 Dated: December 30, 2025                   Respectfully submitted,

19                                       TONY LOPRESTI
                                      COUNTY COUNSEL

20

21                         By: _/s/ Aryn Paige Harris_

22                              ARYN PAIGE HARRIS
                             Deputy County Counsel

23                              Attorneys for Defendants

24                              COUNTY OF SANTA CLARA and SHERIFF
                             ROBERT JONSEN

25

26

27

28

## I.  INTRODUCTION

Plaintiffs claim that this action challenges the constitutionality of the County of Santa Clara (erroneously also sued as the "Santa Clara County Sheriff's Department[1]") and Sheriff Robert Jonsen's ("Defendants") concealed carry weapon ("CCW") permit issuance policies and practices. In fact, this lawsuit challenges California Senate Bill 2 ("SB 2").  Following the Supreme Court's decision in *New York Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022) ("*Bruen*"), California passed SB 2, which amended its Concealed Carry Weapons statutory scheme under Penal Code § 26150, et seq.  SB 2, which became effective January 1, 2024, removed the unconstitutional "good cause" requirement and replaced it with the requirement that licensing authorities determine whether a CCW applicant is a "disqualified person" before issuing a CCW license.  Penal Code § 26202 sets forth considerations for determining whether an applicant is deemed a "disqualified person" based on factors such as criminal history, mental health, substance abuse, and restraining orders.  As part of conducting this analysis, public entities can seek cost recovery and require applicants to undergo a psychological test: the features of the statute at issue in this matter.

One of the co-plaintiffs here brought a legal challenge to SB 2's sensitive places restrictions—the portion of SB 2 that limits where concealed weapons can be carried—by filing a lawsuit against the State, thereby involving the California Attorney General, in *Wolford v. Lopez*, 116 F.4th 959 (2024), a case that consolidated challenges to both California's and Hawaii's sensitive places laws enacted after *Bruen*.  Now, Plaintiffs claim Defendants' implementation of SB 2 violates the Second and Fourteenth Amendments because Defendants' cost recovery is too high—albeit authorized—and that the psychological test is unconstitutional.  Because both cost recovery and psychological testing are permitted under SB 2, a challenge to Defendants' use of the discretion

---

[1] Plaintiffs name the "Sheriff's Department."  The actual name is the "Office of the Sheriff."  For reasons discussed below, Defendants take the position that the Sheriff's Office is not a separate legal entity subject to suit.  The term Defendants used throughout is collective of all properly named Defendants.

1   authorized by SB 2 is merely a claim that the State authorizes unconstitutional conduct misdirected

2   at Defendants.  For this reason, the Court should certify the case for the California Attorney General

3   and/or wait for 60 days to allow the Attorney General to intervene so as not to prematurely decide

4   the constitutional questions presented by this lawsuit.  On this ground, Defendants bring a motion to

5   dismiss (without prejudice) pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to notify

6   the Attorney General, who is an absent party without whom complete relief cannot be granted in this

7   dispute.

8          Plaintiffs also claim that Defendants' inclusion of a notice on its website landing page to

9   CCW applicants—that applicants for CCWs may be required to disclose any campaign contributions

10  they make to Sheriff Jonsen under the Levine Act (Cal. Gov't Code § 84308), a disclosure law

11  designed to improve transparency—is an impermissible regulation of political speech under the First

12  Amendment.  Plaintiffs claim that Defendants misinterpret the Levine Act's applicability to CCW

13  licenses, which is an argument that does not draw into question the constitutionality of the Levine

14  Act.  But Plaintiffs also claim that, if the Levine Act applies to CCW licenses, it constitutes an

15  unconstitutional regulation of protected speech in violation of the First Amendment.  The Levine Act

16  is, however, only a disclosure statute and, thus, Plaintiffs' allegations lack merit because disclosure

17  requirements are constitutionally permissible under the First Amendment.  Thus, a motion to dismiss

18  for failure to state a claim is warranted.

19                                    **II.   PARTIES**

20         Three individual Plaintiffs—Kyle Truong, Antonio Rodriguez, and Robert Blank—are

21  residents of Santa Clara County who desire to carry a firearm in public and would apply for CCW

22  permits but for the expense of doing so, or already have a CCW permit issued by the Sheriff's Office

23  and seek a refund or will face expenses to renew those permits.  First Amended Complaint ("FAC")

24  ¶¶ 14-16.  California Rifle & Pistol Association and the Second Amendment Foundation are non-

25  profit organizations dedicated to the preservation of the Second Amendment.  *Id.* ¶¶ 34-25.  The

26  Complaint names the County, the Sheriff's Office, and Sheriff Jonsen.  *Id.* ¶¶ 38-39.

27  / /

28  / /

1

### III.    LEGAL BACKGROUND ON CCWs

2

**A.    THE *BRUEN* DECISION**

3   The 2022 United States Supreme Court decision in *Bruen* established a new legal test for

4   Second Amendment cases, holding that current firearm regulations must be consistent with the

5   nation's historical tradition of firearm regulation.  *Bruen*, 597 U.S. at 24-29; FAC ¶¶ 46-49.  The

6   decision struck down New York's discretionary "proper cause" requirement for concealed carry

7   permits, affirming an individual's right to carry a handgun in public for self-defense without

8   demonstrating a special need.  *Id*. at 71.  This new historical-based test replaced previous two-step

9   frameworks that balanced current public safety interests with constitutional rights.  *Id*. at 19.  At the

10  same time, the Court made clear that various gun regulation laws would withstand scrutiny under

11  this newly announced test.  *Id*. at 30, fn. 9.  The ruling did not invalidate "shall-issue" states, where

12  permits are granted if an applicant meets objective, statutorily imposed criteria.  *Id*.

13  **B.    SENATE BILL 2 WAS PASSED TO COMPLY WITH *BRUEN***

14   1.    SB 2 Legislation is Expansive and, as Anticipated, Costly to Administer

15   Senate Bill 2 (Cal. Penal Code §§ 26150, 26155, and 26170) was California's legislative

16  response to *Bruen*.  SB 2 created new requirements for evaluating CCW applications, including

17  additional background and verifications checks, additional interviews, an investigation to determine

18  whether the applicant is a disqualified person, and additional status notifications to the applicant.

19  These new requirements were in addition to existing requirements, such as background checks,

20  psychological assessments, and training courses.  Cal. Pen. Code § 26150 et. seq.  In issuing

21  regulations to implement SB 2, the California Department of Justice (DOJ) recognized that the new

22  SB 2 requirements may increase local costs to process applications for CCW licenses.  *See*, CA DOJ

23  Economic and Fiscal Impact Statement (STD 399).

24   2.    CCW Licensing Requirements (Cal. Penal Code § 26150)

25   Consistent with *Bruen*, SB 2 removed the general "good cause" and "good moral character"

26  requirements from CCW application assessments.  Under the new law, a sheriff must issue or renew

27  a CCW license if the applicant provides proof of **all of the following**:

28  / /

Notice of Motion to Dismiss; Memorandum of Points and Authorities

25CV08027 EJD

1.  The applicant is not a "disqualified person" to receive a CCW license under Penal Code § 26202;
2.  The applicant is at least 21 years old;
3.  The applicant presents clear evidence of the applicant's identity and age as defined in Penal Code § 16400 (i.e., a valid California driver's license or valid California identification card issued by the California Department of Motor Vehicles);
4.  The applicant is either (1) a resident (as detailed in the statute) of the county or a city within the county, or (2) their principal place of employment or business is in the county and they spend a substantial period of time in that place of employment or business;
5.  The applicant has completed a qualifying training course as described in Penal Code § 26165; and
6.  The applicant is the recorded owner with the California DOJ of the specific firearm for which the license will be issued.

Cal. Penal Code §§ 26150, 26155, 26170; *see also* FAC ¶ 57.

3. <u>CCW Application Form (Cal. Penal Code § 26175)</u>

Licensing authorities must use a standard statewide application form. Cal. Penal Code § 26175; FAC ¶ 58 & Exh. A. The standard application must include the following new information that was not required before the enactment of SB 2:

1.  Prior detentions, arrests, and criminal convictions;
2.  Whether the applicant has been the subject of either:
    a.  A court order listed in Cal. Penal Code § 26202(a)(3) (see below), unless that order expired, was vacated, or was canceled more than five years ago; or
    b.  A valid restraining, protective, or stay-away order issued by an out-of-state jurisdiction pursuant to laws concerning domestic violence, family law, protection of children or elderly persons, stalking, harassment, witness intimidation, or firearm possession;
3.  Whether the applicant has previously been subject to the LPS Act (Cal. Welf. & Inst. Code § 5150 et. seq.):
4.  Prior denials or revocations of CCW licenses;
5.  Names and contacts of three references (at least one must be a cohabitant and one a person described in Cal. Penal Code § 273.5, if applicable); and
6.  Other information sufficient to determine whether the applicant is a disqualified person under Cal. Penal Code § 26202.

Cal. Penal Code § 26175; FAC ¶ 59. An application is considered "completed" if it is filed in writing, signed by the applicant, and contains all information required by the application, as determined by the licensing authority. *Id.*

4. <u>CCW Licenses (Cal. Penal Code § 26175)</u>

Effective March 1, 2024, a CCW license must set forth the following information: licensee's full name; driver's license or identification number; Criminal Identification and Information (CII)

4

1   number; occupation; residence and business address; date of birth, height, weight, eye and hair color;

2   type of license issued under Cal. Penal Code § 26220; license issuance and expiration dates;

3   fingerprints; photo of the licensee (which would be added by SB 918); and the weapon's

4   manufacturer, model, serial number, and caliber.  Cal. Penal Code § 26175.

5          5.     CCW License Fees and Psychological Assessment (Cal. Penal Code § 26190)

6          SB 2 has a detailed fee recovery statute that allows the licensing authority to collect 50% (up

7   from 20%) of the processing fee upon the filing of a new or renewal application.  Cal. Penal Code §

8   26190.  In addition, it eliminates the not-to-exceed caps on the processing fees for renewal and

9   amended license applications (previously $25 and $10, respectively), instead allowing licensing

10  authorities to charge their "reasonable costs" of processing these applications.  *Id*. § 26190(b)(1);

11  *compare* 2019 Cal. Legis. Serv. Ch. 732 (A.B. 1297).  The licensing authority may also now

12  increase its fees to reflect increases in the reasonable costs in issuing the licenses and enforcing the

13  licenses, including any required notices.  *Id*. § 26190(b)(1).

14         SB 2 also eliminates the previous not-to-exceed fee cap for initial and additional

15  psychological assessments.  *Id*. § 26190(e)(1); *compare* 2019 Cal. Legis. Serv. Ch. 732 (A.B. 1297).

16  The applicant may now be charged for the actual cost of the assessments.  *Id*. § 26190(e)(1).  The

17  licensing authority may not charge more than the reasonable costs incurred by the licensing authority

18  for obtaining these assessments.  *Id*.  In addition, if the licensing authority requires a psychological

19  assessment with the initial application, the licensing authority must refer the applicant to a licensed

20  psychologist that is acceptable to the licensing authority.  *Id*.

21         6.     California DOJ Background Checks (Cal. Penal Code §§ 26185, 26202)

22         Penal Code § 26185 requires the licensing authority to submit the applicant's fingerprints to

23  the California DOJ after the licensing authority makes its initial determination that the applicant is

24  not a disqualified person under Penal Code § 26202 (described below), along with other information

25  required by the California DOJ.

26         After the applicant's fingerprints and/or renewal notification are forwarded to the California

27  DOJ, the California DOJ must promptly provide all information pertaining to whether the applicant

28  is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

1   Cal. Penal Code § 26185.  A licensing authority may issue or renew a CCW license only if the

2   California DOJ report confirms the applicant's eligibility to possess, receive, own, or purchase a

3   firearm.  *Id.*

4          7.     Recorded Owner of the Licensed Firearm (Cal. Penal Code § 26162)

5          Before issuing, renewing, or amending a CCW license, the licensing authority must

6   determine, using the designated California DOJ system, if the applicant is the recorded owner of the

7   firearm for which they are seeking the CCW license.  Cal. Penal Code § 26162.  The agency must

8   confirm the applicant's information with firearm ownership information maintained in the system.

9   *Id.*

10         8.     Training Courses (Cal. Penal Code § 26165)

11         SB 2 revises the minimum training requirements applicable to CCW license applicants,

12  including requirements relating to the length, topics, instructors, and assessments for training

13  courses.  Except for the mental health component, the course must be taught and supervised by

14  firearms instructors certified by the California DOJ under Penal Code § 31635 or in a manner

15  prescribed by regulation.

16         The course must require participants to pass a written exam demonstrating their

17  understanding of the covered topics.  The applicant cannot be required to pay for any training

18  courses prior to the initial determination of whether the applicant is a qualified person under Penal

19  Code § 26202(d)(1).

20         9.     Disqualified Person Investigation (Cal. Penal Code § 26202)

21         To determine if a CCW applicant is a disqualified person who cannot receive or renew a CCW

22  license, the licensing authority must complete the following minimum requirements:

23      1.  An in-person applicant for initial (and optional for renewal) interview.
    2.  In-person, virtual, or telephonic interviews with at least three character references from

24         specific demographics (e.g., former/current spouse, cohabitant) for initial application
       (and optional for renewal).  The licensing authority may elect to forgo this requirement

25         for renewal applications, but not for initial applications.
    3.  A review of publicly available information about the applicant, including publicly

26         available statements published or posted by the applicant.
    4.  A review of all information provided in the application for a license.

27      5.  A review of all information provided by the California DOJ after the licensing authority
       submits the applicant's fingerprints, as well as any firearms eligibility notices or any

28         other information provided by the California DOJ.

6

6.  A review of the California Restraining and Protective Order System (CARPOS) through the California Law Enforcement Telecommunications System (CLETS).

The licensing authority may engage in investigative efforts beyond these minimum requirements.

Cal. Penal Code § 26202.

10.    Disqualified Person Determination (Cal. Penal Code § 26202)

Absent a contrary determination by a court (pursuant to Penal Code § 26206, as described below), an applicant is a disqualified person who cannot receive or renew a CCW license if any of the following apply:

1.  The applicant has been subject to any restraining order, protective order, or other types of court order;
2.  In the 10 years prior, the applicant has been charged with or convicted of certain criminal offenses;
3.  The applicant has engaged in an unlawful or reckless use, display, or brandishing of a firearm;
4.  In the five years prior to the licensing authority receiving a completed application, the applicant has been committed to or incarcerated in a county jail or state prison for, or on probation, parole, post-release community supervision, or mandatory supervision as a result of, a conviction of an offense an element of which involves controlled substances or alcohol;
5.  The applicant is currently abusing controlled substances or alcohol;
6.  In the 10 years prior to the licensing authority receiving a completed application, the applicant has experienced the loss or theft of multiple firearms due to the applicant's lack of compliance with federal, state, or local law regarding storing, transporting, or securing the firearm;
7.  The applicant failed to report the loss of a firearm as required by Penal Code § 25250 or any other state, federal, or local law requiring the reporting of the loss of a firearm;
8.  The applicant has been or is reasonably likely to be a danger to self, others, or the community at large, as shown by an indication from the results of any psychological testing, including but not limited to testing under Penal Code § 26190; or
9.  The applicant has been convicted of contempt of court under Penal Code § 166.

Cal. Penal Code § 26202.

11.    Initial Notice to Applicant (Cal. Penal Code §§ 26202, 26205, 26206)

Within 90 days of receiving the completed application for a new or renewal license, the licensing authority must provide the applicant with written notice as follows:

1.  If the licensing authority determines that the applicant is a disqualified person, the notice must inform the applicant that the request for a license has been denied.  The notice must also include the information listed below for notices of denial based on a determination that the applicant is a disqualified person.
2.  If the licensing authority makes an initial determination, based on its investigation thus far, that the applicant is not a disqualified person, the notice must tell the applicant to proceed with the training requirements in Penal Code § 26165 (described above).

7

1  Cal. Penal Code § 26205.  The licensing authority must issue a written notice to the applicant

2  indicating whether the license has been approved or denied within specified time frames.  *Id*.  If the

3  licensing authority denies a license, the notice must state which requirement was not satisfied.  In

4  addition, if the license is denied or revoked because the applicant is a disqualified person, the written

5  notice must provide a description of the reason the determination was made; inform the applicant of

6  their rights to court review; and provide the applicant with specific information used in the analysis.

7  *Id*.

8      The statutory scheme also sets forth a statutory process for appealing license denials and

9  revocations.  Cal. Penal Code §§ 26206, 26195.  Like the process for application and approval, that

10  process is equally detailed but not at issue in this matter.  *Id*.

11      12.    Prohibited Activities (Cal. Penal Code §§ 26200, 26230)

12      The statutory scheme also sets forth limitations on those carrying a firearm subject to a CCW

13  license (e.g., prohibition on being under the influence) and identifies "sensitive locations" into which

14  firearms may not be carried by those granted a CCW license.  Cal. Penal Code §§ 26200, 26230.

15  These restrictions have been challenged in *Wolford,* 116 F.4th 959, where the court partially upheld

16  a preliminary injunction against those portions of California's SB 2, determining that firearm bans

17  on parks, bars, and restaurants are constitutional, but bans on financial institutions and places of

18  worship are likely unconstitutional.  *Id*. at 983-1000.  The Supreme Court has granted a writ of

19  certiorari.  *Wolford v. Lopez*, --- S.Ct. ---, 2025 WEL 2808808 (Mem), 222 L. Ed. 2d 1241 (Oct. 3,

20  2025) (certiorari granted in part).

21      **IV.   DEFENDANTS' CCW PROCESS IS DICTATED BY STATE LAWS**

22  **A.    PLAINTIFFS ALLEGE DEFENDANTS' FEES ARE HIGH BUT DO NOT DISPUTE**
   **THAT THE FEES REFLECT COST RECOVERY AUTHORIZED BY LAW**

23

24      Plaintiffs allege that *Bruen* forced all state actors to issue permits to regular citizens using

25  objective criteria.  FAC ¶ 78.  According to Plaintiffs, "Santa Clara's fee structure frustrates the right

26  to carry as much as possible by erecting financial burdens and other hurdles to its exercise."  *Id*. ¶

27  78.  Defendants charge $1,996 for a two-year concealed carry permit.  *Id*. ¶ 5.  Renewal permits cost

28  / /

8

1   $447 and an application fee of $976.  *Id.* ¶ 2.  As detailed in the FAC, these costs are based on fees

2   tethered to application and renewal processes detailed in SB 2.  *Id*. ¶¶ 2-5.

3            Plaintiffs allege that Defendants are an outlier when considering the fees charged in other

4   states.  FAC ¶¶ 82-91.  Plaintiffs further allege that Defendants' costs are higher than the costs

5   charged by other counties within California.  *Id*. ¶ 92.  Some counties charge less than Defendants.

6   *Id*. ¶¶ 93-99.  Some jurisdictions also have high fees, like the City of San José.  *Id*. ¶ 100.  But

7   nowhere do Plaintiffs allege that the County charges fees for costs not associated with the CCW

8   application and renewal process.  *See*, FAC.

9   **B.    A PSYCHOLOGICAL TEST IS AUTHORIZED BY LAW**

10           Consistent with the statutory authority in SB 2, Defendants require CCW applicants to

11  submit to a psychological examination.  FAC ¶ 3.  Plaintiffs allege that there is no statutory authority

12  (nor any constitutional authority) for conditioning the exercise of a fundamental right on submission

13  to psychological testing for every applicant without evidence and good cause.  *Id.* ¶ 3.  Plaintiffs then

14  allege that Defendants' policies and procedures are improper because they require a psychological

15  test for all applicants "without an individual finding of the need for such an invasive and intrusive

16  procedure."  *Id*. ¶ 103.

17  **C.    LEVINE ACT NOTICE**

18           Applicants can access the Office of the Sheriff's website to apply for a CCW permit.  FAC,

19  Exh. B.  At the bottom of the webpage, there is a notice entitled, "Disclosure of campaign

20  contributions," wherein the disclosure explains that the Levine Act applies to government

21  proceedings involving licenses and describing that local elected officials—like the Sheriff—are not

22  permitted to accept or solicit a contribution of more than $250 from a party while a proceeding

23  involving a license is pending or for 12 months after a decision.  *Id*., Exh. B.  Where the elected

24  official has received a donation in the past 12 months, they must disclose and refrain from

25  participating in the decision.  *Id*.  Plaintiffs allege that the presence of this language is "hinting that

26  public disclosure of politically protected speech is required to exercise a fundamental right" and is

27  therefore unconstitutional.  *Id*. ¶ 9.

28  / /

1  Plaintiffs thus allege that "the Levine Act requirements on the CCW introductory webpage

2  strongly implies that campaign finance disclosures are part of the CCW application process."  FAC ¶

3  72.  Plaintiffs further claim that it is doubtful that CCW permits are triggered by the Levine Act.  *Id*.

4  ¶¶ 73-75.  Plaintiffs request that the language be stricken from the website.  *Id*. ¶ 74.

5  **V.   CLAIMS FOR RELIEF**

6  Plaintiffs bring three claims for relief pursuant to 42 U.S.C § 1983.  Plaintiffs' first claim

7  alleges that Defendants have violated the Second Amendment, and as incorporated to the states

8  through the Fourteenth Amendment, the right to bear arms in three ways.  FAC ¶ 115.  First,

9  Plaintiffs claim that Defendants have violated and continued to violate the rights of gun owners by

10 charging nearly $1,000 in fees, in addition to the cost of training, live scan, and psychological

11 testing, in order to obtain CCW a permit.  *Id*.  Second, Plaintiffs assert that psychological testing

12 without good cause is unconstitutional "on its face and as applied to any applicant without a history

13 of mental illness."  *Id*. ¶ 118.  Third, Plaintiffs claim that Defendants' suggestion that "campaign

14 finance disclosures are a perpetual requirement of the CCW application process to exercise Second

15 Amendment rights is unconstitutional both on its face and as applied to plaintiffs."  *Id*. ¶ 119.

16 Plaintiffs' second claim alleges that "Defendants' policy, practice, and custom of imposing

17 campaign finance disclosure requirements, as an implied condition of exercising Second

18 Amendment rights, violates the First Amendment."  FAC ¶¶ 124-127.

19 Plaintiffs' third claim alleges a violation of the Fourteenth Amendment procedural due

20 process right.  Specifically, Plaintiffs claim that Defendants' mandatory requirement of

21 psychological testing for all CCW applicants without good cause is unconstitutional, both facially

22 and as applied, to any applicant without a history of mental illness.  FAC ¶¶ 128-131.  Plaintiffs

23 assert that to mandate psychological testing, there must be an individualized showing supported by

24 probable cause, admissible evidence, notice, opportunity to be heard, right to counsel, right to cross

25 examine a witness, and appellate rights before psychological testing should be authorized.  *Id*. ¶ 130.

26 / /

27 / /

28 / /

# VI.   LEGAL ARGUMENT

## A.    THE SHERIFF'S OFFICE IS NOT A PARTY

Plaintiffs name the Sheriff's Office as well as the County of Santa Clara.  Recent Ninth Circuit case law indicates that whether a local law enforcement agency is a separate suable entity depends on state law.  *Silva v. San Pablo Police Dep't*, 805 F. App'x 482, 484 (9th Cir. 2020) (citations omitted); Fed. R. Civ. P. 17(b)(3) (for parties other than individuals or corporations, the capacity to be sued is determined "by the law of the state where the court is located").  The law of the state here is California, which has determined that departments are not independent from the entity.  In *Vann v. City and Cnty. of San Francisco*, 97 Cal. App. 5th 1013, 1022 (2023), the court explained that subsidiary entities, such as boards or departments, are not independent and cannot be sued separately from the parent entity.  Pre-*Vann* decisions by the Ninth Circuit, interpreting state law, have held that police departments can be sued separately, but those decisions acknowledged that holding is true provided there is no contrary state court decision.  *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 563 (2001); *but see Garcia v. City of Merced*, 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008) (sheriff's departments are not separate municipal entities).

In this matter, Plaintiffs sue the Sheriff's Office.  Post-*Vann*, California courts have made it generally clear that the Sheriff's Office is not a separate legal entity from the County subject to suit.

## B.    PLAINTIFFS CHALLENGE THE CONSTITUTIONALITY OF SB 2.

### 1.    Dismissal with Leave to Amend is Warranted.

Defendants note that the case law setting forth the procedure to challenge the failure to join the Attorney General in a lawsuit challenging the constitutionality of a state statute is not clear.  Defendants have filed a Notice of Claim of Constitutionality, as required by Local Rule, concurrently with this motion, but the procedure for challenging this defect in the complaint is not specified.  Defendants acknowledge this defect can be cured and dismissal with prejudice is not warranted.

This case should not proceed with the constitutionality of SB 2 or the Levine Act decided without the involvement of the California Attorney General.  Federal Rule of Civil Procedure 12(b)(7) permits a defendant to challenge the complaint's failure to join "persons whose presence is

11

1    needed for a just adjudication" under Federal Rule of Civil Procedure 9.  To that end, the California

2    Attorney General has the right to defend a challenge to the constitutionality of a California state

3    statute.  28 U.S.C. § 2403(b).

4         Federal Rule of Civil Procedure 5.1(a)(1) requires "[a] party that files a . . . paper drawing

5    into question the constitutionality of a . . . state statute [to] promptly . . . file a notice of constitutional

6    question stating the question and identifying the paper that raises it . . . and serve the notice and

7    paper on the . . . state attorney general . . . ."  In addition, under Rule 5.1(b), the Court also must

8    "certify to the appropriate attorney general that a statute has been questioned" pursuant to 28 U.S.C.

9    § 2403(b).  The attorney general may then intervene within 60 days after the notice or certification.

10   Fed. R. Civ. Proc. 5.1(c).  The court "may not enter final judgment holding the statute

11   unconstitutional" before the time to intervene expires, and "may reject the constitutional challenge"

12   prior to expiration of the period.  *Id*.  Thus, at this time, the presence of the Attorney General is

13   needed and a Rule 12(b)(7) motion should be granted, but without prejudice, given that under Rule

14   5.1(d), "[a] party's failure to file and serve the notice, or the court's failure to certify, does not forfeit

15   a constitutional claim or defense that is otherwise timely asserted."  Fed. R. Civ. Proc. 5.1(d).

16        2.    The Attorney General Must Be Notified Where the Constitutionality of a State Statute
               is "Drawn In Question."

17

18        By law, the Attorney General of California must be notified where the constitutionality of a

19   state statute is "drawn in question":

20        In any action, suit, or proceeding in a court of the United States to which a State or
          any agency, officer, or employee thereof is not a party, *wherein the constitutionality*
21        *of any statute of that State* affecting the public interest *is drawn in question,* the
          court shall certify such fact to the attorney general of the State, and shall permit the
22        State to intervene for presentation of evidence, if evidence is otherwise admissible
          in the case, and for argument on the question of constitutionality. The State shall,
23        subject to the applicable provisions of law, have all the rights of a party and be
          subject to all liabilities of a party as to court costs to the extent necessary for a
24        proper presentation of the facts and law relating to the question of constitutionality.

25   28 U.S.C. § 2403(b) (emphasis added).  To "draw in question" the constitutionality of a statute

26   requires more than "the mere objection to an exercise of authority under a statute, whose validity is

27   not attacked."  *Jett Bros. Distilling Co. v. City of Carrollton,* 252 U.S. 1, 6, (1920); *see also Wilson*

28   *v. Cook,* 327 U.S. 474, 480–82 (1946) (explaining that suit challenging official's interpretation of

                                           12

1  state statute as applying to timber collected from U.S. land did not challenge the validity of the

2  statute and thus the statute's constitutionality was not "drawn in question") (citing *Jett Brothers*); *see*

3  *also Ariz . Libertarian Party, Inc. v. Bd. of Supervisors of Pima Cnty.,* 216 F. Supp. 2d 1007, 1009

4  (D. Ariz. 2002) **(**county not a proper party to a facial challenge to the open primary election law)

5  (district court decision reversed and remanded on other grounds).

6          3.    <u>Plaintiffs' Claims "Draw In Question" SB 2's Authorization for Cost Recovery and
              Psychological Tests.</u>

7

8          As Plaintiffs note, the Supreme Court in *Bruen* confirmed and reiterated *Heller's* approach to

9  analyzing Second Amendment questions: "[w]hen the Second Amendment's plain text covers an

10  individual's conduct, the Constitution presumptively protects that conduct.  The government must

11  then justify ***its*** regulation by demonstrating that it is consistent with the Nation's historical tradition

12  of firearm regulation."  *Bruen*, 597 U.S. at 24 (emphasis added), FAC ¶ 49.  Here, there can be no

13  dispute that Defendants are following SB 2.

14          Defendants explicitly do not attempt to argue the constitutionality of fee recovery or the

15  psychological assessment under SB 2 (or generally) at this juncture in light of the request to wait for

16  the Attorney General to be notified of the case.  Notably, cases since *Bruen* addressing cost recovery

17  for concealed carry permits underscore that statutory challenges of this nature should include the

18  attorney general.  *See e.g.*, *Koons v. Att'y General New Jersey*, 156 F.4th 210, 2477-48 (2025)

19  (finding that state residents and firearm advocacy organizations were likely to succeed on their claim

20  that a New Jersey statute requiring handgun carry permit applicants to pay a $50 fee to the Victims

21  of Crime Compensation account violated First and Second Amendment principles because that fee

22  did not connect to either administration of the permitting scheme itself or maintenance of public

23  order created by licensed conduct, and thus charged applicants for costs neither incidental to nor

24  necessarily caused by their bearing arms) (vacated en banc on other grounds by *Koons v. Att'y*

25  *General of New Jersey*, 156 F.4th 210 (2025)).

26          As the case law supports, post-*Bruen* CCW statutory schemes are being challenged across the

27  country but with the knowledge and involvement of the respective states' attorneys general.  The

28  most directly relevant case is *California Rifle & Pistol Ass'n, Inc. v. Los Angeles County Sheriff's*

1   *Department*, where a federal district court in California held that firearms advocacy organizations,

2   challenging a psychological exam requirement for CCW licenses, were not likely to succeed on their

3   Second Amendment claim. *California Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's*

4   *Dep't*, 745 F. Supp. 3d 1037, 1044 (C.D. Cal. 2024). In that case, the California Attorney General

5   has appeared in the matter. The same is true for other cases in California where the Attorney

6   General is defending the law before the district court. *See e.g.*, *Brownstein v. Orange Cnty. Sheriff's*

7   *Dep't* (C.D. Cal., Case No. 8:24-cv-00970) (plaintiff alleges that the denial of his CCW license

8   application based on Penal Code § 26202, subdivision (a)(3) (subject to restraining, protective, or

9   other specified order), amounts to constitutional violations); *Hoffman v. Bonta* (S.D. Cal., Case No.

10  3:24-cv-00664) (out-of-state residents challenge the constitutionality of California's prohibition on

11  concealed carry by non-residents). The same is true in other jurisdictions. *See*, *Antonyuk v. James*,

12  120 F.4th 941, 951 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900, 221 L. Ed. 2d 646 (2025)

13  (appearance of attorney general in case finding and summarizing other jurisdictions' finding that

14  many "shall-issue" jurisdictions approved in *Bruen* include provisions allowing licensing authorities

15  to deny permits based on mental health concerns or dangerousness assessments); *People v.*

16  *Thompson*, --- N.E.3d ---- (2025) (attorney general party to decision challenging mental health

17  checks where Illinois Supreme Court found that mental health checks to ensure applicants do not

18  pose threats to themselves or others are permitted under *Bruen*, so long as they do not require

19  applicants to show a special need for armed self-defense); *People v. Alexander*, 91 Cal. App. 5th 469

20  (2023), *review denied* (July 26, 2023) (State Attorney General defended constitutional challenge

21  following a criminal conviction for possession of firearm and ammunition in public).

22         a.   *Challenge to Defendants' Cost Recovery is a Challenge to the Constitutionality of SB 2*

23         As detailed above, Cal. Penal Code § 26190 governs the application and processing fees for

24  CCW permits. The statute explicitly provides that "the licensing authority of any city, city and

25  county, or county may charge a fee" for processing applications. Cal. Penal Code § 26190. This

26  permissive and detailed authorization to charge on a cost recovery basis for various elements of the

27  licensing authority's processing efforts appears throughout the fee provisions, including subdivision

28  (d)(1), which states that "the licensing authority of any city, city and county, or county may charge a

14

1   fee" for amended licenses.  *Id.*  Section 26190 provides that fees "may be increased to reflect

2   increases in the licensing authority's reasonable costs" but explicitly states that "in no case shall the

3   local fees exceed the reasonable costs to the licensing authority."  Cal. Penal Code § 26190.  The fee

4   structure for psychological testing is also permitted by SB 2.  Section 26190(e)(1) states that "the

5   applicant may be charged for the actual cost of the assessment" when a psychological assessment is

6   required on the initial application.  Cal. Penal Code § 26190.  Similarly, subdivision (e)(2) provides

7   that for renewal applications requiring additional psychological assessment, "the applicant may be

8   charged for the actual cost of the assessment."  The statute similarly imposes the5 same cost

9   limitation on psychological assessment fees as it does for other permit fees, explicitly providing that

10  "in no case shall the amount charged to the applicant for the psychological assessment exceed the

11  reasonable costs to the licensing authority."  Cal. Penal Code § 26190.

12          SB 2 specifically eliminated the not-to-exceed caps on the processing fees for renewal and

13  amended license applications in favor of cost recovery.  These provisions establish that while

14  charging fees are optional, any fees that are charged must be reasonable and based on actual costs to

15  the licensing authority.  It makes no difference that fees and the psychological test are permissive.

16  The statute requires certification when "the constitutionality of any statute of that State affecting the

17  public interest is drawn in question."  28 U.S.C. § 2403; *see also Fordyce v. City of Seattle,* 55 F.3d

18  436, 442 (9th Cir. 1995) (failure to allow state attorney general "to participate fully" where

19  constitutionality of state statute was challenged was abuse of discretion).

20          The language in § 2403 focuses on whether a constitutional challenge has been raised, not

21  whether the statute uses mandatory or permissive terms.  Courts apply § 2403(b) whenever a party

22  files a pleading or motion challenging a statute's constitutionality, regardless of the statute's internal

23  language structure.  *Peruta v. Cnty. of San Diego*, 771 F.3d 570, 574 (9th Cir. 2014) (the Attorney

24  General sought to intervene in a lawsuit against the County of San Diego for its County-specific

25  requirements surrounding a good cause requirement for issuance, which the court denied noting that

26  no "law or regulation other than the county-specific good cause requirement was in jeopardy.")

27  (rehearing en banc granted but not decided); *Merrill v. Town of Addison*, 763 F.2d 80, 82 (2d Cir.

28  / /

1   1985) (New York statute permitting local governmental units to use either partial or full value

2   assessment for real property taxation implicated 28 U.S.C. § 2403(b)).

3        The fact that other states, counties, or cities subsidize the cost of CCW licensing is of no

4   relevance to whether Defendants are engaging in cost-recovery authorized by SB 2, nor should it be

5   surprising that costs in Santa Clara County—one of the most expensive places in the United States to

6   live—are higher than other jurisdictions.  Here, there is no allegation that Defendants' costs are not

7   based on statutorily authorized cost-recovery, and although Plaintiffs claim they are high, they are

8   still permitted by SB 2.  Importantly, SB 2 specifically departed from fee caps, which is essentially

9   what Plaintiffs suggest are required to not run afoul of the Second Amendment.  If there is a

10  constitutional fee cap to CCW charges—an approach SB 2 ended—and a jurisdiction must subsidize

11  individuals' exercise of their Second Amendment rights or run afoul of the Constitution, that

12  position would be contrary to the authorization of SB 2.  Thus, Plaintiffs' position is a direct

13  challenge to the constitutionality of SB 2.

14       b.  *Psychological Tests on Initial Application is Authorized by SB 2*

15       Plaintiffs assert that psychological testing is not statutorily authorized.  FAC ¶ 3.  Plaintiffs

16  further assert that psychological testing without good cause is unconstitutional "***on its face*** and as

17  applied to any applicant without a history of mental illness."  FAC ¶ 115 (emphasis added).  On its

18  face, Penal Code § 26190(e)(1) explicitly authorizes licensing authorities to require psychological

19  assessments for initial applications, stating that "***if a psychological assessment on the initial***

20  ***application is required by the licensing authority***, the license applicant shall be referred to a

21  licensed psychologist" acceptable to the licensing authority.  Cal. Penal Code § 26190, subd. (e)(1)

22  (emphasis added).  And SB 2 considered when good cause should be required finding it necessary

23  for license renewals only: "[a]dditional psychological assessment of an applicant seeking license

24  renewal shall be required only if there is compelling evidence of a public safety concern to indicate

25  that . . . an assessment is necessary."  Cal. Penal Code § 26190(e)(2).  Thus, SB 2—not

26  Defendants—authorized different thresholds for requiring psychological testing upon renewal

27  compared to initial applications.  Plaintiffs' claim that good cause is required for both is contrary to

28  the text of SB 2 and, thus, constitutes a direct attack on that state statute.

16

1    California Penal Code § 26202(a)(1) establishes how psychological assessment results factor

2    into licensing decisions: an applicant "shall be deemed to be a disqualified person and cannot receive

3    or renew a license" based on the "results of any psychological assessment, including, but not limited

4    to, the assessment described in subdivision (e) of Section 26190."  Cal. Penal Code § 26202.  This

5    provision makes clear that psychological assessment results constitute one basis upon which a

6    licensing authority may determine if an applicant poses a danger and is therefore a disqualified

7    person ineligible for a CCW permit.  In sum, SB 2 specifically authorizes licensing authorities to

8    require psychological assessments for initial CCW applications and establishes that such

9    assessments may be required for renewals only when compelling public safety concerns exist, with

10   the results serving as potential grounds for disqualification if they demonstrate the applicant poses a

11   danger.  If Plaintiffs' constitutional challenge on good cause were successful, it would invalidate SB

12   2's language establishing different thresholds.

13          c.   *Summary of Legal Position*

14          To summarize, Plaintiffs do not concede that SB 2 is otherwise constitutional (e.g., cost-

15   based fee recovery and no psychological testing).  And Plaintiffs are not alleging that Defendants

16   abused their discretion under the statute, acted arbitrarily, or made bad policy choices—within a

17   concededly constitutional statute—but rather, that Defendants acted within that discretion (by

18   charging cost recovery or implementing psychological testing).  Accordingly, Plaintiffs are claiming

19   that SB 2 authorizes unconstitutional outcomes or is facially invalid because of the discretion it

20   grants to local governments.  That argument squarely "draws in question" the constitutionality of the

21   statute.

22          4.   Plaintiffs Also Challenge the Constitutionality of the Levine Act

23          Plaintiffs also seek declaratory relief that the Levine Act is not triggered by the CCW license

24   process and, thus, it should be removed from the Sheriff's webpage on CCW applications.  FAC ¶

25   127.  While ***this*** allegation does not challenge the constitutionality of the Levine Act, Plaintiffs also

26   allege that "because political campaign contributions are protected speech under the First

27   Amendment," Defendants' "policy, practice, and custom of **imposing campaign finance disclosure**

28   **requirements**, as an implied condition of exercising Second Amendment rights, violates the First

17

Amendment." FAC ¶ 125 (emphasis added). This allegation is a direct attack on the Levine Act because Plaintiffs' claim is that, even if the Levine Act is applicable to CCW licenses, simply *notifying* applicants of the disclosure requirements under the Levine Act infringes on the exercise of Second Amendment rights. Thus, Plaintiffs argue, the Levine Act's disclosure requirements violate the Second Amendment. For this reason, notice to the Attorney General under 28 U.S.C. § 2403(b) is required on this issue as well.

**C.   PLAINTIFFS' SECOND CLAIM, ALLEGEING THAT A LEVINE ACT NOTICE ON THE CCW APPLICATION PAGE VIOLATES THE FIRST AMENDMENT, FAILS AS A MATTER OF LAW**

The standard on a motion to dismiss for failure to state a claim under Rule 12(b)(6) is the plausibility standard established by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 544, 561-62 (2009). Under this standard, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 676. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 664.

Plaintiffs claim that the placement of a Levine Act notice on the CCW application page violates First Amendment protections of political speech. FAC ¶ 125. The Levine Act establishes comprehensive requirements governing campaign contributions and disclosure obligations when a person has a pending application for a license, permit, or other entitlement for use before an agency. Cal. Gov't Code § 84308. To establish a First Amendment violation based on discouraged political speech, a plaintiff must provide evidence showing that the defendant deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in (the defendant's) conduct. *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (1999). Here, however, Plaintiffs' concern with the Levine Act language on the CCW application page is merely an issue of disclosure: "As described previously, and because political campaign contributions are protected speech under the First Amendment, **Defendants' policy, practice, and custom of**

/ /

/ /

1  **imposing campaign finance disclosure requirements**, as an implied condition of exercising

2  Second Amendment rights, violates the First Amendment."  FAC ¶ 125 (emphasis added).[2]

3          To that end, courts have consistently upheld disclosure and notification requirements in

4  campaign finance contexts under the framework established in *Buckley v. Valeo*, 424 U.S. 1, 13

5  (1976), which recognizes that to the extent such requirements might burden speech, they serve

6  compelling governmental interests and are substantially less restrictive than outright bans on

7  contributions or expenditures.  The Supreme Court in *Citizens United v. Fed. Election Comm'n*, 558

8  U.S. 310, 366-67 (2010) also distinguished between contribution limits and disclosure requirements,

9  noting that disclosure requirements "may burden the ability to speak, but they impose no ceiling on

10  campaign-related activities" and "do not prevent anyone from speaking."  The Court emphasized

11  that disclosure requirements can be justified based on the governmental interest in providing the

12  electorate with information about the sources of election-related spending.  *Id*.  Similarly,

13  in *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 223 (2014), the Court determined that

14  disclosure requirements represent a less restrictive alternative to flat bans on certain types or

15  quantities of speech because they burden speech without imposing a ceiling on it.

16          The Ninth Circuit has repeatedly upheld disclosure requirements for campaign contributions

17  against First Amendment challenges.  In *Yamada v. Snipes*, 786 F.3d 1182, 1194 (2015), the court

18  sustained Hawaii's ban on political contributions by government contractors and various disclosure

19  requirements, finding them constitutional even as applied to contributions to legislators.  The Ninth

20  Circuit in *Family PAC v. McKenna*, 685 F.3d 800, 806 (2012) upheld Washington's disclosure

21

22  _____

23  [2] Plaintiffs' contention that the Levine Act and/or Defendants' online notice of its requirements

24  constitute "a broad daylight constitutionally corrupt grift" and "strongly imply that campaign

25  contribution disclosures are part of the licensing process", FAC ¶ 7, are patently absurd; the Levine

26  Act and Defendants' notice are intended to *prevent* elected officials like the Sheriff from engaging in

27  political favoritism.  *See, e.g.*, Cal. Gov't Code § 84308(b)(1), (c)(1), (d) (imposing strict

28  prohibitions on elected officers).

requirements for contributions to ballot measure committees, finding that while disclosure requirements have some deterrent effect on contributions, the burden was not substantial enough to outweigh the state's important interests in informing the electorate.  The Ninth Circuit further held in *Nat'l Ass'n for Gun Rights, Inc. v. Mangan*, 933 F.3d 1102, 1116 (2019) that once electioneering reporting requirements are triggered, states may constitutionally mandate disclosure of even small contributions because knowing the source of donations is informative in the aggregate and prevents evasion of disclosure.

For the reasons stated above, it is unnecessary to determine if the Levine Act applies to CCW permits or if the disclosures required by the Levine Act raises a constitutional issue requiring notice to the Attorney General because there is no viable constitutional claim in the first place.

## VII.   CONCLUSION

For the reasons stated above, the Court should certify that this matter "draws in question" the constitutionality of SB 2.  Further, the Court should also certify that, in part, the matter "draws in question" the Levine Act's alleged impact on political speech, unless the Court determines that the issue is moot because the constitutional challenge lacks merit.

Dated: December 30, 2025                              Respectfully submitted,

                                                     TONY LOPRESTI
                                                     COUNTY COUNSEL


                                                By: */s/ Aryn Paige Harris*
                                                     ARYN PAIGE HARRIS
                                                     Deputy County Counsel

                                                     Attorneys for Defendants
                                                     COUNTY OF SANTA CLARA and SHERIFF
                                                     ROBERT JONSEN

3453461

20