United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT M. BLANK, et al.,<br>Plaintiffs,<br>v.<br>SANTA CLARA COUNTY SHERIFF'S DEPARTMENT, et al.,<br>Defendants. | Case No. 5:25-cv-08027-EJD<br>**ORDER GRANTING MOTION TO INTERVENE AS OF RIGHT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2)**<br>Re: ECF No. 47 |

Before the Court is Proposed Intervenor, the California Attorney General's, (the "Attorney General") motion to intervene in this suit as of right. Mot., ECF No. 47. For the reasons set forth below, the Court GRANTS the Attorney General's motion to intervene.

## I. BACKGROUND

Plaintiffs in this suit challenge the Carry Concealed Weapon ("CCW") permit issuance policies and practices of the Santa Clara County Sheriff's Department, Sheriff Robert Jonsen (the "Sheriff"), in his official capacity as the Santa Clara County Sheriff, and Santa Clara County ("the County") (collectively, "Defendants"). Am. Compl. ¶¶ 1, 38–41, ECF No. 11. The Plaintiffs, Robert M. Blank, Antonio Ramos Rodriguez, Kyle Hoang Truong, Charles Koon Chiu Young, Jonathan Young, the California Rifle and Pistol Association, and the Second Amendment Foundation (collectively, "Plaintiffs"), allege that both the Santa Clara County Sheriff's Department's CCW permit fee schedule and its requirement that initial CCW permit applicants undergo a psychological examination are unconstitutional restraints on Plaintiffs' Second Amendment Rights. *See generally* Am. Compl. Plaintiffs also challenge parts of "Defendants' website [portions of which] strongly imply that campaign contribution disclosures are part of the

licensing process, by suggesting that CCW permit applicants are required to comply with Government Code § 84308 (the Levine Act)" while their application is pending. *Id.* ¶¶ 7–8. Plaintiffs allege that this "policy . . . manages to leverage an abridgment of the First Amendment to infringe on the Second." *Id.* ¶ 13.

As to Defendants' CCW permit fees, Plaintiffs argue that "Defendants must process applications without charging any fees, aside from the state-mandated fee of $93, leaving applicants responsible for any training courses and Live Scan charges." *Id.* ¶ 52. Plaintiffs contend that "for the purposes of this lawsuit, the expenses mandated by state law are not at issue." *Id.* ¶ 114. Plaintiffs also argue that the page of the CCW permit website that reflects the necessity of compliance with the Levine Act must be stricken because it has "a chilling effect on both the First Amendment *and* Second Amendment rights of Plaintiffs." *Id.* ¶ 74–75 (emphasis in original).

Finally, as to the mandatory psychological testing—which Plaintiffs emphasize is not mandated by state law—Plaintiffs argue that the County's requirement is a constitutionally intolerable barrier to applicants' exercise of their Second Amendment rights. *See id.* ¶¶ 102–06. Plaintiffs further contend that the testing requirement violates the Fourteenth Amendment's procedural due process safeguards because it deprives Plaintiffs of another constitutional right. *Id.* ¶ 108.

As relevant to this Motion, Plaintiffs request that the Court enter an order "enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from charging applicants any additional local fee for their CCW Permit applications or renewal applications, with the applicant paying only state law-mandated expenses including the $93 application fee as well as the cost of the training course and Live Scan service." *Id.* at Prayer ¶ 8. Plaintiffs also seek an order "enjoining all Defendants and all other officers, agents, servants, employees, and persons" under the State's authority from requiring psychological examinations of all initial CCW applicants or from passing the cost of any such examinations onto the applicants without a good cause finding. *Id.* at Prayer ¶ 9.

On December 31, 2025, the County of Santa Clara and Sheriff Robert Jonsen filed a Notice of Claim of Unconstitutionality pursuant to Civil Local Rule 3-8.[1] Not., ECF No. 28. Defendants explained that Plaintiffs' First Amended Complaint "draws into question the constitutionality of (1) California Senate Bill 2 . . . that . . . amended California's Concealed Carry Weapons statutory scheme, Penal Code 26150, et seq.; and (2) potentially the Levine Act." Not. 1–2. Thereafter, Defendants were in contact with the Attorney General's Office regarding whether the Attorney General intended to join the case. *See* Joint Status Report, ECF No. 42. The Attorney General filed the present motion to intervene on July 10, 2026. *See* Mot. The Attorney General moves to intervene as a matter of right under Federal Rules of Civil Procedure 5.1 and 24(a), as well as pursuant to 28 U.S.C. § 2403. *Id.* at 2. The Attorney General seeks intervention only "for the limited purpose of defending against the facial challenges to the Constitutionality of California law." *Id.* at 2–3. Plaintiffs consent to permissive intervention by the Attorney General pursuant to Federal Rule of Civil Procedure 24(b) but oppose intervention as a matter of right under Rule 24(a). Opp'n 1, ECF No. 49.

## II. LEGAL STANDARD

A court must permit a nonparty to intervene in a pending lawsuit and to gain party status if (1) it is given an unconditional right to intervene by a federal statute (Rule 24(a)(1)); or (2) it claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest (Rule 24(a)(2)). Fed. R. Civ. P. 24(a)(1)–(2).

Where the right to intervene is not provided by a federal statute, the proposed intervenor must show that:

> (1) it has a significant protectable interest relating to the property or

[1] Civil Local Rule 3-8(b) states, "In any action in which the constitutionality of a state statute is questioned and neither the state nor an agency, officer or employee of the state is a party, counsel raising the question must file notice of such claim with the assigned Judge (or, if no assignment has been made, the Chief Judge) and serve a copy of such notice on the State Attorney General. The notice must identify the statute and describe the basis for the claim that it is unconstitutional."

> transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (citing *Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050, 1061 (9th Cir.1997), *cert. denied,* 524 U.S. 926 (1998)) (quotation marks omitted). If any one of these four elements is not met, it is "fatal to the application, and a court need not reach the remaining elements." *Sierra Club v. United States Env't Prot. Agency*, No. 13-CV-2809-YGR, 2013 WL 5568253, at *2 (N.D. Cal. Oct. 9, 2013) (citing *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009)). But "[i]n evaluating whether Rule 24(a)(2)'s requirements are met, [courts in the Ninth Circuit] normally follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citation omitted).

## III. DISCUSSION

The Attorney General argues that his interest in defending the facial constitutionality of California affords a mandatory right to intervene under Rule 24(a)(2). Mot. 5. Alternatively, the Attorney General argues that he is provided with an unconditional right to intervene by federal statute 28 U.S.C. § 2403(b), which is effectuated by the combination of the Northern District's Local Rule 3-8 and Federal Rule of Civil Procedure 5.1. *Id.* at 4.

### A. Rule 24(a)(2): Four-Part Test

The Attorney General argues that intervention as of right is warranted because all four requirements that courts in the Ninth Circuit evaluate when considering a motion to intervene favor the Attorney General's intervention. *See id.* at 5–6. Plaintiffs concede that two of the four requirements are met: the timeliness of the motion and that the Attorney General "*may* have a protectable . . . interest in the outcome" of the action. Opp'n 5. Plaintiffs argue that the remaining two requirements, however, are not. *Id.* According to Plaintiffs, the disposition of this action will not impair California's ability to enforce its licensing regime, and the Defendants can adequately represent the Attorney General's interest. *Id.* at 5–6. The Court considers each of the four

United States District Court
Northern District of California

requirements in turn.

**1. Legally Protectable Interest**

The Court must consider "(i) whether the interest is protectable under some law; and (ii) whether there is a relationship between the legally protected interest and the claims at issue" to determine if the Attorney General has a "significantly protectable" interest. *Wilderness Soc.*, 630 F.3d at 1176. The proposed intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'" *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 837 (9th Cir. 1996) *as amended on denial of reh'g* (May 30, 1996)).

Here, the Attorney General argues that, because Plaintiffs' lawsuit "risks the facial invalidation of multiple provisions of California law," the Attorney General has the requisite protected interest. Mot. 6 (citing *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981); *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022)). The Attorney General explains that he is the chief law enforcement officer in California and is vested with the duty to see that the State's laws are uniformly and adequately enforced. *Id.* (citing Cal. Const., art. V, § 13). Among these laws are the Penal Code sections which "explicitly authorize[] local licensing authorities to require that CCW applicants pay a fee that covers the administrative costs [of] processing an application and issuing a license," and which provide that these local authorities "may also require that first-time CCW applicants submit to a psychological examination and pay for the cost of that assessment" to determine whether that applicant should be deemed a disqualified person." *Id.* at 4–5; Cal. Pen. Code §§ 26190(b)(1), 26190(e)(1), 26202(a)(1).

The Court finds that the Attorney General has a legally protectable interest in enforcing the State's laws, as set forth in the California constitution, and that there is a relationship between that

interest and the claims at issue. *See cf. Pangilinan*, 651 F.2d at 1324 ("Clearly, the Attorney General, who is charged with administration and enforcement of the laws relating to immigration and naturalization, has an interest in a case in which people seek to have it determined that they are persons who will be entitled to become United States citizens."). By way of illustration, if the Court granted the relief that Plaintiffs seek, Defendants as well as *all other* persons under the authority of the State would be enjoined from charging applicants *any* additional local fee for their CCW permit or renewal applications. Am. Compl. at Prayer ¶ 8. Such an outcome would be contrary to the State's law, which the Attorney General is charged with enforcing, and which provides among other things that, "[t]he licensing authority of any city, city and county, or county *shall* charge an additional fee in an amount equal to the reasonable costs for processing the application for a new license or a license renewal, issuing the license, and enforcing the license." Cal. Pen. Code § 26190(b)(1) (emphasis added).

**2. Impairment**

For the same reasons as discussed immediately above, the Court finds that the Attorney General's ability to protect its interest would be impaired or impeded by the disposition of this action. A finding of impairment often "dovetails with a finding of a 'significantly protectable interest,' [with the Ninth Circuit] often citing to the advisory committee notes to Rule 24." *Twitch Interactive, Inc. v. Fishwoodco GmbH*, No. 5:22-CV-03218-EJD, 2023 WL 7458374, at *4 (N.D. Cal. Nov. 9, 2023) (citing *Citizens for Balanced Use*, 647 F.3d at 898). Plaintiffs' arguments to the contrary are unpersuasive, artificially constraining the scope of the Attorney General's interests to the "limited role [it has] in issuing CCW permits." Opp'n 5. And rather than directly address the Attorney General's interest in protecting the State's laws, Plaintiffs suggest that the Penal Code section providing local municipalities with authority to impose additional CCW permitting fees and to require psychological testing allow for the "*non-uniform* application of the state's law." *See id.* at 5–6 ("If California is contending that it has a prima facie interest in the *non-uniform* application of the state's law in its 58 different counties . . ."). Although presented in opposition to the Attorney General's Motion, Plaintiffs' position underscores that the discretion

authorized by California's Penal Code is at issue in this action. Further, the Amended Complaint seeks permanent injunctive relief which would undercut the State's statutory scheme and vitiate sections of the Penal Code that explicitly delegate to municipalities certain discretionary authority. *See* Am. Compl. at Prayer. Accordingly, the Court finds that the Attorney General's ability to protect his interest in the continued enforcement of the State's law would be impaired or impeded by the disposition of this action.

**3. Timeliness**

Next, the Court considers the timeliness of the Attorney General's Motion. "Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). "A motion to intervene is timely when the court has not yet ruled on any substantive motions and when the intervenor has not unnecessarily delayed its intervention." *Langell v. Ideal Homes LLC*, No. 16-CV-00821-HRL, 2016 WL 6804604, at *4 (N.D. Cal. Nov. 17, 2016) (citing *Nw. Forest Res. Council*, 82 F.3d at 837).

The first and third factors—the early stage of the proceedings and the reason for and length of the delay—weigh in favor of permitting intervention. The Attorney General contends that he has acted with "appropriate expediency," and that "under the timeline outlined in Federal Rule of Civil Procedure 5.1" and because of this Court's stay, this Motion fits "well within the Attorney General's 60-day window to seek intervention." Mot. 6. Defendants served a notice of claim unconstitutionality ("the Notice") on the Attorney General on December 31, 2025, and the Court issued a stay of deadlines related to Defendants' motion to dismiss and the initial case management conference to provide Defendants with time to confer with the Attorney General regarding his participation in this action on January 6, 2026. *See* ECF Nos. 28, 35. Approximately seven months have passed since Defendants served the Notice and the filing of this Motion, during which time the Attorney General reviewed the pleadings, conferred with existing counsel, and conducted an internal decision-making process. Mot. 6; *see also Kalbers v. United*

*States Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) ("A party seeking to intervene must act as soon as 'he knows or has reason to know that his interests might be adversely affected by the outcome of this litigation.'" (citations omitted)). Further, this case is still in the early stages. The Court has not yet ruled on any substantive motions, and, because Plaintiffs do not oppose *permissive* intervention such that the Attorney General will be joined in some manner, "Plaintiffs have indicated that they would seek leave to amend the operative complaint in this matter," such that the currently pending motion to dismiss shall be moot. *See* Stip. for Leave to File Second Am. Compl. 3, ECF No. 53.

As to the second factor, Plaintiffs concede that they will not be prejudiced by the Attorney General's intervention. Opp'n 5.

In summary, the Court finds that the timeliness factors weigh in favor of permitting intervention.

**4. Adequate Representation by Existing Parties**

Finally, the Court addresses whether the Attorney General's interests are adequately represented by existing Defendants, a closer question than that presented by the other three requirements. Courts in the Ninth Circuit consider three factors to determine the adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003). This requirement is "satisfied if the applicant shows that representation of his interest *may* be inadequate—a 'minimal' burden." *Kalbers*, 22 F.4th at 828 (quoting *Legal Aid Soc'y of Alameda Cnty. v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) (per curiam)) (internal quotation marks omitted).

The Attorney General argues that his interest in defending California's law in response to the facial relief that Plaintiffs seek is distinct from the County's interest such that he will be "best positioned to make a limited defense against the facial-challenge aspects of Plaintiffs' complaint."

Reply 5–6; Mot. 5–7. Defendants are faced with a different task than the Attorney General: defending their specific policies. *Id.* Plaintiffs, on the other hand, argue that because "there is already a state-actor defendant (i.e., Santa Clara County), California must 'show that it brings a distinct state interest to bear in this litigation.'" Opp'n 7. Plaintiffs further argue that the typically "minimal burden" that proposed intervenors face in establishing that the existing Defendants' representation is inadequate should be heightened here, where the County is already a Defendant. In support of this position, Plaintiffs rely on *Chiglo v. City of Preston*, 104 F.3d 185 (8th Cir. 1997) and *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 984 (2d Cir. 1984). Both cases, which the Court discusses briefly below, involved motions to intervene by private entities, however, and denial of the motion for intervention was based on the notion that the existing governmental party adequately represented the proposed intervenors' interests. Because these cases involve scenarios markedly different from the one before the Court, the Court is not persuaded that it should deviate from the general principle that this requirement is "satisfied if the applicant shows that representation of his interest 'may be' inadequate; and [that] the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see cf. Sierra Club*, 2013 WL 5568253, at *4 ("[t]here is an assumption of adequacy *when the government is acting on behalf of a constituency that it represents*" (emphasis added)).

In *Chiglo*, the Eighth Circuit considered individual city residents' motion to intervene as defendants in an action brought by a merchant challenging the City of Preston's tobacco regulation ordinance. 104 F.3d at 186–187. The proposed intervenors stated that "they had an interest in the enforcement of [the challenged ordinance] and the City of Preston had failed to protect their interest because it neglected to file a timely appeal." *Id.* at 187. The district court denied the motion to intervene, finding that "the proposed intervenors had not proven that they had a legally protectable interest at stake in the litigation" because the only stated interest was in protecting minors from tobacco advertising, which was an interest shared with the greater public. *Id.* On appeal, the Eighth Circuit affirmed and explained that "if an existing party to the suit is charged

with the responsibility of representing the intervenor's interests, a presumption of adequate representation arises." *Id.*

In a similarly positioned appeal, four environmental organizations sought review of a district court's denial of the organizations' motion to intervene in an action brought by the United States against Hooker Chemicals & Plastics Corporation, related corporate entities, and the City of Niagara Falls. *Hooker Chemicals & Plastics Corp.*, 749 F.2d at 970. New York State was subsequently joined as a plaintiff pursuant to Federal Rule of Civil Procedure 19 and filed its own complaint against Hooker and Niagara Falls. *Id.* The action related to Hooker's disposal of hazardous waste on the bank of the Niagara River. *Id.* The district court denied intervention by the organizations finding that they had failed to demonstrate that their interests might be inadequately represented by the existing parties. *Id.* at 984. In particular, the district court relied on the fact that the governmental entities that were parties to the suit were "suing on behalf of their citizens" and that the state or the United States "present[ed] itself in the attitude of *parens patriae*." *Id.* (citation omitted). Thus, the court explained that, because a state that is party to the suit is "presumed to represent the interests of all its citizens," the applicant for intervention must show that its interest will not be represented by the state. *Id.* at 985.

Here, the Attorney General is not a private entity, nor can the Court reasonably presume that the County represents the same interests as the Attorney General. In fact, whereas the County has an interest in defending its CCW permitting process and fees, the Attorney General seeks to distance itself from any as-applied challenge to these policies. *See* Mot. 5 ("While an as-applied challenge to local policies like those at issue here may be viable (a topic on which the Attorney General will take no position in this specific case),"); Reply 5–6 ("Counsel for the County Defendants . . . face different considerations when defending their clients against Plaintiffs' as-applied challenge to the County's justifications for its specific exercises of discretion."). Further, to the extent that Plaintiffs seek relief, such as the requested injunctions, which will affect counties well beyond Santa Clara, the Court agrees that the Attorney General's obligation to defend and enforce its laws more broadly would not be adequately represented by the County. *See* Reply 6.

Plaintiffs otherwise argue that this Court should apply the reasoning of the court in *United States v. Idaho*, where the United States sued Idaho over its Total Abortion Ban Act. *United States v. Idaho*, 342 F.R.D. 144, 146–47 (D. Idaho 2022). There, the court considered and denied a motion to intervene as of right by the Idaho Legislature, instead granting permissive intervention "on a limited basis." *Id.* at 148. The court found that the Legislature failed to show that it brought a "distinct state interest to bear on [the] litigation that the State [of Idaho]" could not adequately represent. *Id.* at 150. Further, the court was unpersuaded by the Legislature's attempts to manufacture a unique legally protectable interest in "its unique power and authority and duty to answer the hard questions posed by abortion, such as 'What is the moral value of a preborn child?'" *Id.* The court emphasized that the Legislature "presented no credible argument that it itself is distinct from the 'the State,' either formally or functionally for purposes this litigation." *Id.* By Contrast, here, the Attorney General's asserted interest—in ensuring that it may continue to enforce its laws and protect against any challenges alleging that the laws are unconstitutional—is much more concrete and one that has been recognized by courts previously, a stark contrast to the interest asserted by the Idaho Legislature. Further, Plaintiffs do not—and indeed could not—make a viable argument that the County is indistinguishable from the California Attorney General.

***

In sum, the Court finds the Attorney General's motion is timely, he has demonstrated a legally protectable interest, his ability to protect that interest would be impaired if not permitted to intervene, and the present Defendants would be inadequate representatives of the Attorney General's interest. Accordingly, the Court **GRANTS** the Attorney General's motion to intervene as a matter of right.

**B. Unconditional Right to Intervene Provided by Federal Statute**

Alternatively, the Attorney General argues that he may intervene as a matter of right because an unconditional right to intervene is afforded to the Attorney General by 28 U.S.C. §

2403(b) which is effectuated by Federal Rule of Civil Procedure 5.1.[2] Mot. 3. § 2403(b) provides that, "[i]n any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court . . . shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality." Though the Court need not address this alternative basis for intervention as of right, having found the Attorney General may intervene as of right pursuant to Rule 24(a)(2), the Court briefly considers the Parties' arguments.

The Attorney General interprets Plaintiffs' Amended Complaint as "directly implicat[ing] the facial constitutionality of California law," such that the Court must permit the Attorney General to intervene on behalf of the State. Mot. 4. The California laws that the Attorney General argues are implicated are those that authorize local licensing authorities to (1) charge additional processing-related fees; and (2) require that first-time applicants submit to a psychological examination. *Id.* at 2. Because Plaintiffs seek sweeping injunctions that bar Defendants and other State actors from charging additional fees, and that would place restrictions on licensing authorities' ability to perform psychological assessments, claiming that these practices infringe on Plaintiffs' Second and Fourteenth Amendment rights, the Attorney General argues that § 2403(b) "clearly applies." *Id.* at 5. The right provided by this section is "unconditional." *Id.*

---

[2] This conclusion relies on the Court finding that Northern District Local Rule 3-8 works sufficiently "hand-in-hand" with Federal Rule of Civil Procedure 5.1 such that the Attorney General may invoke the right to intervene contemplated in Rule 5.1. *See* Mot. 4. In support of his position, the Attorney General relies upon *"Amy" v. Curtis*, 2020 WL 6271046, at *8 (N.D. Cal. Oct. 26, 2020). There, the court considered defendant's arguments in support of his affirmative defenses: that 18 U.S.C. § 2255 violated the Fifth, Eighth and Seventh Amendments. In response to these purported affirmative defenses, plaintiffs pointed out that the defendant had not complied with Federal Rule of Civil Procedure 5.1 which requires the party that files a pleading that calls into question the constitutionality of a state or federal statute to file notice of the constitutional question and serve the notice on the Attorney General, *nor* had the defendant complied with Local Rule 3-8(a) which "also requires defendant to serve notice on the United States Attorney for this district." *Id.* The court agreed and found that defendant's non-compliance was one reason to strike the defendant's affirmative defenses. Although not entirely persuaded that the court's commentary in *"Amy"* extends to the situation here, Local Rule 3-8 explicitly cross-references 28 U.S.C. § 2403.

United States District Court
Northern District of California

Plaintiffs contend that the Attorney General "read[s] far too much into [the First Amended Complaint]," and that Plaintiffs are challenging only local discretionary policy choices by the County. Opp'n 2–3. As to the permitting fees, Plaintiffs suggest that "[t]he amount of the fee is left to the local issuing agency," and that the state law is capable of constitutionally valid implementation when the fee charged is not "abusive" or "exorbitant." *Id.* at 3. Plaintiffs make a similar argument with respect to the psychological testing, namely that the state law does not mandate testing for all new CCW applicants, but only contains language allowing recovery of costs for psychological testing *if the local issuing agency requires such a test. Id.*

As set forth above, the Court agrees with the Attorney General that the relief Plaintiffs seek implicates their ability to continue to enforce California's law—a legally protectable interest—but the Court is not persuaded that § 2403(b) "clearly applies." Fundamental to § 2403 is whether the constitutionality of the State's statute is "drawn in question." *See, e.g.*, *Warren v. Warren,* 2025 WL 1094858, at *2 (D. Or. Apr. 11, 2025). The Attorney General does not address the limits of this phrase, as Plaintiffs point out, and while the Attorney General emphasizes Plaintiffs' injunction request, he cites no authority for the proposition that relief undercutting the enforcement of a state's law should be treated the same way as a complaint that expressly challenges the constitutionality of a statute in the § 2403(b) context, the more common scenario where the Court observes § 2403(b) being applied. *See, e.g.*, *Schwier v. Cox*, 340 F.3d 1284, 1286 (11th Cir. 2003) ("Because Cox argues that if section 7 of the Privacy Act is enforceable via a private right of action brought under § 1983, then section 7 of the Privacy Act is unconstitutional, the United States . . . intervened as a matter of right pursuant to 28 U.S.C. § 2403(a)."); *Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 210–11 (2d Cir. 1990) ("Strong initiated this suit in December 1988, alleging that the School District's actions violated her constitutional rights to privacy and due process and challenging the constitutionality of Education Law section 913.").

Instead, the Attorney General relies heavily on *Cameron v. EMW Women's Surgical Center,* in which EMW Women' Surgical Center and two of its doctors sought to enjoin

enforcement of a Kentucky Law that regulated the dilation and evacuation abortion procedure, claiming that the law unconstitutionally burdened women's rights to abortions. *EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. at 271. There, plaintiffs' complaint named the attorney general and the cabinet secretary for Health and Family Services. *Id.* Plaintiffs subsequently dismissed all claims against the attorney general without prejudice, but the attorney general reserved all rights relating to his propriety as a party to the action and in any appeals. *Id.* at 272. The secretary remained a party to defendant the suit, and the district court ultimately held that the state's law unconstitutionally burdened a woman's right to abortion, granting plaintiffs' request for a permanent injunction against enforcement of the law. *Id.* The Sixth Circuit affirmed the district court's judgment, and thereafter the attorney general moved to intervene and to file a petition for rehearing en banc. *Id.* at 273. Plaintiffs opposed the attorney general's motion, and the Sixth Circuit denied the motion to intervene. *Id.* Noting that there is no rule governing appellate intervention, the Supreme Court considered the policies underling intervention in the district courts. *Id.* at 277. In its analysis, the Court commented that Congress, through 28 U.S.C. § 2403(b), has recognized "[t]he importance of ensuring that States have a fair opportunity to defend their laws in federal court." *Id.* at 278. This statute, however, was not directly applicable in the action. *Id.* While this case certainly underscores the importance of allowing States to defend their laws when their constitutionality is challenged, without more, the Attorney General's reliance on it does not persuade this Court that 28 U.S.C. § 2403(b) is applicable here.

## IV. CONCLUSION

For the foregoing reasons, the Attorney General's motion to intervene as of right is **GRANTED**. This Order should not be construed as making any implied findings with respect to Plaintiffs' theory of the case.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: September 30, 2026

EDWARD J. DAVILA
United States District Judge