C. D. Michel – SBN 144258
cmichel@michellawyers.com
Anna M. Barvir – SBN 268728
abarvir@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444

Attorneys for Plaintiffs Robert M. Blank, Antonio Ramos Rodriguez, Kyle Hoang Truong, Charles Koon Chiu Young, Jonathan Young, and California Rifle & Pistol Association, Incorporated

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff The Second Amendment Foundation

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ROBERT M. BLANK, an individual; ANTONIO RAMOS RODRIGUEZ, an individual; KYLE HOANG TRUONG, an individual; CHARLES KOON CHIU YOUNG, an individual; JONATHAN YOUNG, an individual; CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; and THE SECOND AMENDMENT FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA CLARA COUNTY; SANTA CLARA COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT JONSEN, in his official capacity; ATTORNEY GENERAL ROB | **Case No.: 5:25-cv-08027-EJD**<br><br>**SECOND AMENDED COMPLAINT[1] FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(1) VIOLATION OF 42 U.S.C § 1983 [RIGHT TO BEAR ARMS];**<br><br>**(2) VIOLATION OF 42 U.S.C § 1983 [FREE SPEECH];**<br><br>**(3) VIOLATION OF 42 U.S.C § 1983 [PROCEDURAL DUE PROCESS];**<br><br>**(4) VIOLATON OF 42 U.S.C. § 1983 [EQUAL PROTECTION]** |

[1] This Second Amended Complaint (SAC) adds California Attorney General Rob Bonta as a defendant based on his request for intervention under Fed. R. Civ. P. 24, and adds claims against the State of California. This SAC also adds a First Amendment and Equal Protection claim against the Santa Clara County Defendants based on new information. A redlined version of the First Amended Complaint (FAC), as modified to create this SAC, is attached as **Exhibit F** (displacing Exhibit F attached to the FAC).

| | |
|---|---|
| BONTA, in his official capacity; and DOES 1-10,<br><br>Defendants. | **DEMAND FOR JURY TRIAL** |

NOW COME Plaintiffs Robert M. Blank, Antonio Ramos Rodriguez, Kyle Hoang Truong, Charles Koon Chiu Young, Jonathan Young, California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, and bring this action against Defendants Santa Clara County, Santa Clara County Sheriff's Department, Sheriff Robert Jonsen, in his official capacity as Santa Clara County Sheriff, California Attorney General Rob Bonta, and Does 1-10, inclusive, and make the following allegations:

## INTRODUCTION

1. This action challenges the concealed carry weapon ("CCW license") permit issuance policies and practices of the Defendants. Plaintiffs' rights to obtain licenses to carry a concealed firearm in public and therefore to exercise their right to be armed in public is guaranteed by the Second Amendment's text "bear arms." This right was recognized more than three years ago by the U.S. Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and more recently affirmed by that Court in *Wolford v. Lopez*, __ U.S. __, 225 L. Ed. 2d 494 (June 25, 2026) (Government policies designed to perpetuate unconstitutional practices are not valid regulations of the Second Amendment "right to keep and bear arms.")

2. The Santa Clara County Sheriff's Department (the "Department") and the County of Santa Clara (the "County") (together, the "County Defendants") already charged high fees for a CCW Permit—recently amended its fee schedule and now charges an application fee of $976.00 ($488 initial fee + $488 issuance fee), up from $662.00. This amount does not include the additional expense borne by the applicant of a required training course (typically $250-$400).

3. In addition to the cost barrier of the permit itself, Defendants insist that all applicants submit to an intrusive psychological examination (costing about $500) to determine if the applicant is "mentally fit" to exercise a fundamental right. Though statutory authority exists for allocating the costs of such an examination (presumably—and only—in appropriate

circumstances), there is no statutory authority (nor any constitutional authority) for conditioning the exercise of a fundamental right on submission to psychological testing for every applicant without evidence and good cause.

4. An additional cost is imposed for a Live Scan fingerprinting service. According to the County of Santa Clara's website, Live Scan fees include a $20.00 "local fingerprint roll fee" plus an additional $10.00 – $158.00 service fee. The California Department of Justice charges $71.00 for a Live Scan to obtain a Certificate of Eligibility (a COE is required to work in the firearm retail industry). The Live Scan process adds a typical cost of approximately $100.00 to the process of obtaining a CCW permit in Santa Clara County.

5. That's $996.00 (for the permit) + $400 (for training) + $500 (for psychological testing) + $100 (for Live Scan)—or $1,996.00 for a three-year permit to exercise a fundamental right. Applicants seeking to renew a permit will have to pay another $447.00 application fee *every three years*, plus the cost of another training course (again between $250-$400), putting the cost of renewal close to $850. Over a 10-year period, a law-abiding resident of Santa Clara County can expect to pay approximately $3,396.00 to exercise the "right" of self-defense.[2]

6. The County Defendants have a history of abusing their power to issue CCW permits. Former Sheriff Laurie Smith was sanctioned for her corruption and willful misconduct of issuing CCW Permits in a "pay-to-play" scheme to those who donated money to her political campaign. Even for those CCW permits that were not part of Smith's corrupt patronage scheme, the overwhelming majority of the permits that were issued went only to Santa Clara County's elite and powerful residents (e.g., judges, district attorneys, elected politicians).

7. The County Defendants' new CCW policies have merely substituted an underground "pay-to-play" grift, for a broad daylight constitutionally corrupt grift, that is intended to dissuade most people from exercising a fundamental right. Ironically (or maybe unironically),

[2] On June 30, 2026, California's governor signed into law AB 1948. Starting January 1, 2027, CCW permits will be good for three years from that point forward. But what California giveth, California also taketh away. The state has also increased the training course from a one-day, 8-hour course to a two-day, 16-hour course. As of date this SAC was prepared, the market has not yet reflected any price increase for the multi-session classes.

Defendants' website has a page titled "Apply for concealed carry weapon license." That introductory page contains language and links to other websites which strongly imply that campaign contribution disclosures are part of the licensing process, by suggesting that CCW permit applicants are required to comply with Government Code § 84308 (the Levine Act) while their applications are pending.

8. For the County Defendants to suggest that the CCW permit process in their county requires disclosure of campaign contributions shows how little they have learned from the debacle involving Sheriff Smith's pay-for-play schemes. How is it less corrupt to nudge people into filling out forms saying how much they contribute to a sheriff's campaign in lieu of the previous, less public forms of graft? The suggestion that disclosure of campaign finance activities is necessary to comply with state law as part of the CCW application process simply transmutes the hidden pay-to-play system from de facto corruption to de jure corruption.

9. Even hinting that a public disclosure of politically protected speech is required to exercise a fundamental right to the means of self-defense demonstrates the Defendants' habit, pattern, and practice of imposing unlawful requirements to a licensing process that regulates a fundamental right.

10. Penal Code section 26202(b)(3) authorizes the standardless review of CCW applicants' public statements based on their content and viewpoint in violation of the First Amendment. The County Defendants, under this statutory authority, conduct such investigations of CCW applicants.

11. The County Defendants' policies (and the State's ratification of those policies) of taxing a right out of the reach of citizens with modest means, imposing political speech regulations, and requiring intrusive psychological testing have just as much power to destroy a fundamental right as the pre-*Bruen* may-issue policies that laid the foundation for holding those rights hostage to political patronage. These unconstitutional practices are subject to the acid test of the Second Amendment "because any permitting scheme can be put toward abusing ends" thus the Supreme Court in its *Bruen decision* invited "constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny

ordinary citizens their right to public carry." *Bruen*, 597 U.S. at 38 n.9.

12. After engaging in substantive discussions with the County Defendants, and failing to take corrective action against Santa Clara County, the State of California elected to waive its 11th Amendment immunity and moved to intervene in this action to defend the County's CCW policy choices (which is itself a policy choice by the State) thus ratifying the County Defendants' unconstitutional policies, practices, procedures, and customs. And while Attorney General Bonta's office has appeared to disclaim some practices by the Santa Clara County Defendants (see ECF No. 47-1, at 7 n. 2), this footnote disclaimer in a motion to intervene under Federal Rule of Civil Procedure 24, is insufficient to relieve the State of California of its duties under the Constitution.[3]

13. Federal law and the California Constitution vest the Attorney General of this state with a duty "to see that the laws of the State are uniformly and adequately enforced." To accomplish this, the Attorney General has "direct supervision over every … sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, …." California Constitution Art. V, Sec. 13. A mere disclaimer of known unconstitutional practices by a county cannot absolve the State of its duty to uphold the fundamental rights of all Californians. *See also* Cal. Gov't Code § 53071.

14. This suit does not challenge simple and objective regulations, like requiring permits to ensure order (e.g., for parades and demonstrations) or registration to document qualifications and compliance (e.g., for voting and lobbying) for exercising fundamental rights. Rather, this suit challenges the Defendants' onerous financial barrier, psychological testing, and the chilling of First Amendment rights because those policies and practices impose an unconscionable and

[3] Plaintiffs have no concrete facts to allege claims under 42 U.S.C. § 1985(3) (conspiracy to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law) and 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, … shall be liable to the party injured, … for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; ….") But if, after discovery is concluded in this matter, good faith allegations under 42 U.S.C. §§ 1985 and/or 1986 can be made, Plaintiffs may seek further amendment to this complaint under Federal Rules of Civil Procedure 8 and 15.

unconstitutional burden—and not merely a regulation—on a fundamental right.[4]

15. As noted, the *Bruen* Court anticipated this kind of obstruction. The relevant metric should not be whether fees reflect the true cost of processing applications, but whether they have the effect of denying ordinary citizens their right to carry arms for self-defense. By imposing such high licensing fees for a CCW permit application and mandating psychological testing without good cause, the Defendants are merely substituting an unconstitutional wealth qualification for a corrupt political patronage scheme that has the same effect of suppressing its residents' Second Amendment rights. *See People v. Moyer*, 94 Cal. App. 5th 999, *rev denied*, 2023 Cal. LEXIS 6405 (2023).

16. Santa Clara County is an outlier. Its licensing costs are a barrier to less wealthy citizens, amounting to a wealth test. Its mandatory psychological testing (without good cause) of all applicants is an unconstitutional qualification for exercising a fundamental right. Its exception to mandatory psychological testing for judicial officers violates equal protection under the laws. Its policy of insisting[5] that political speech disclosures are part of the process for obtaining a CCW

---

[4] "[C]onstitutional rights would be of little value if they could be ... indirectly denied," *Smith v. Allwright*, 321 U.S. 649, 664 (1944), or "manipulated out of existence," *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "[T]he Twenty-Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Like the Fifteenth, the Twenty-Fourth Amendment "nullifies sophisticated as well as simple-minded modes" of impairing fundamental rights. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). "'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.'" *Harman*, 380 U.S. at 540-41(quoting *Lane*, at 275). *See also Black v. Vill. of Park Forest*, 20 F. Supp. 2d 1218, 1230 (N.D. Ill. 1998) (striking down $60 fee for warrant reimbursement explaining "plaintiffs need not establish that the fee is unreasonable or that it has already chilled the exercise of Fourth Amendment rights.") The same kinds of abuses heaped upon the right to vote resulted in the ratification of the Twenty-Fourth Amendment, abolishing poll taxes. Santa Clara County's attempt to price less-wealthy citizens out of exercising their Second Amendment rights does not require a new amendment, just enforcement of the existing one.

[5] When Plaintiffs first alleged that Santa Clara County's process appeared to include campaign disclosure requirements to apply for a CCW permit, Plaintiffs assumed it was a gaffe that would be promptly corrected to moot that claim. The original complaint and the FAC thus alleged that when Santa Clara County directs a CCW applicant to the county's website to make such disclosures, the procedure was an "implied" First Amendment violation. But as of the date of this SAC, the County Defendants still have not removed the requirement from their website (https://sheriff.santaclaracounty.gov/services/other-services/ccw), making the alleged violation—

permit, and its policy of investigating public statements by CCW applicants without objective guidelines, manages to leverage an abridgment of the First Amendment to infringe on the Second Amendment.

17. The State, despite having supervisory power (and a constitutional obligation) to correct abuses of the CCW process by local issuing authorities, did not seek to intervene in this case to uphold Plaintiffs' Second Amendment rights, but now seeks to ratify those abuses by defending the known policies, practices, customs, and procedures of the County Defendants, laying the foundation for its own violations of the Constitution.

18. This Court should enjoin Defendants' unconstitutional practices, uphold Plaintiffs' constitutional rights and make them whole.

## PARTIES

### Plaintiffs

19. The individual plaintiffs are ordinary, law-abiding, adult residents of Santa Clara County who desire to carry a firearm in public for lawful self-defense and (1) would apply for CCW Permits but for the prohibitive expense of doing so or (2) already have CCW Permits issued by the Santa Clara County Sheriff's Department and seek a refund, or (3) will face considerable unlawful expenses to renew those permits.

20. The individual plaintiffs are natural persons and citizens of the United States and are eligible to possess firearms under state and federal law and currently own at least one firearm.

21. Each individual plaintiff wishes to carry a firearm in public for lawful self-defense and would do so, but for the challenged, regulations, policies, procedures, and practices.

22. Plaintiff Kyle Hoang Truong is a resident of Santa Clara County and a law-abiding citizen of the United States. He would like to exercise his right to carry a firearm in public for self-defense, but he has not been able to do so due to the prohibitive expense of the application process.

23. Mr. Truong desires a CCW Permit, but he cannot afford one. He lives paycheck to paycheck, and his bank account balance often averages less than the $2,000 in total expenses that obtaining a CCW Permit from Santa Clara County would cost him.

---

at this late date—intentional rather than just misguided.

24. Mr. Truong does not wish to undergo an unnecessary and intrusive psychological test as part of the CCW application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

25. Plaintiff Antonio Ramos Rodriguez is a resident of Santa Clara County and a law-abiding citizen of the United States. He would like to exercise his right to carry a firearm in public for self-defense, but he has not been able to do so due to the prohibitive expense of the application process.

26. Mr. Rodriguez is a transplant recipient of both a kidney and a pancreas and has retinal detachment in his right eye. Due to his medical condition, Mr. Rodriguez receives social security benefits of approximately $1,800 per month, which, for now, is his only source of income. Very little is left over for him to live on after his bills are covered, and certainly not enough for the added $2,000 expense of a Santa Clara CCW Permit.

27. Mr. Rodriguez does not wish to undergo an unnecessary and intrusive psychological test as part of the CCW application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

28. Plaintiff Jonathan Young is a resident of Santa Clara County and a law-abiding citizen of the United States. He would like to exercise his right to carry a firearm in public for self-defense but has not been able to do so due to the prohibitive expense of the application process.

29. Mr. Young's budget cannot easily absorb an additional $2,000 expense, because he is raising a family and the cost of living in the County is high. Mr. Young accordingly seeks relief from this Court against Santa Clara's exorbitant fees.

30. Mr. Young does not wish to undergo an unnecessary and intrusive psychological test as part of the CCW application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

31. Plaintiff Charles Koon Chiu Young is a resident of Santa Clara County and a law-abiding citizen of the United States. He has an active CCW Permit issued by the Santa Clara County Sheriff's Department that was recently renewed. He had to pay $447 plus the cost of another training course for that renewal, even though he was thoroughly vetted and received

training less than two years ago, when he first applied for his current permit.

32. When factoring in the expense of the training course, Mr. Young will have to pay roughly $500 - $850 to renew his CCW permit and continue exercising his Second Amendment right to carry. This is a considerable expense. Mr. Young has recently retired, and his income is just his social security check of $3,582 per month, or $42,984 per year. Considering the very high cost of living in the County, the additional expense of a CCW permit places a hefty financial burden on Mr. Young, especially given that he will face this expense not just once, but biennially.

33. Mr. Young seeks relief from the exorbitant expense of renewing his permit every two years, or if a ruling comes after his renewal, he seeks reimbursement of his renewal fees and prospective relief ensuring that future biennial renewals will not be subject to this exorbitant expense.

34. Mr. Young also seeks reimbursement for the cost of the psychological tests he underwent for his initial CCW permit, and an order requiring the destruction of the records from that test currently in possession of the Defendants.

35. Mr. Young does not wish to undergo an unnecessary and intrusive psychological test if required as part of the CCW renewal application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

36. Plaintiff Robert M. Blank is a resident of Santa Clara County and a law-abiding citizen of the United States. He has a CCW Permit issued by the Santa Clara County Sheriff's Department that is due to be renewed this year. He will have to pay $447 plus the cost of a training course for that renewal, even though he was already thoroughly vetted and trained when he first applied for the original permit.

37. While, unlike the other Plaintiffs, Mr. Blank can comfortably afford the expense of renewing his permit, he objects to paying an exorbitant and unreasonable fee to continue to exercise his enumerated constitutional right to bear arms. He therefore seeks relief from the Court, or if a ruling comes after his renewal, he seeks reimbursement of his renewal fees and prospective relief ensuring that future biennial renewals will not be subject to this exorbitant expense.

38. Mr. Blank does not wish to undergo an unnecessary and intrusive psychological test

if required as part of the CCW renewal application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

39. The associational plaintiffs are non-profit organizations dedicated to the preservation of the Second Amendment and other enumerated constitutional rights. The associational plaintiffs use their resources and economies of scale to ensure the broadest possible protection for their members and supporters by bringing suits on behalf of individual plaintiffs—who are also members—who otherwise may lack the financial resources and litigation experience to bring cases like this themselves. The associational plaintiffs are representing their members and supporters who reside in Santa Clara County who either (1) cannot afford to pay the approximately $2,000 in expenses to apply for a permit, or (2) will need to renew their permit in 2025 and will face the exorbitant expense of at least $750 to do so. The associational plaintiffs thus bring this action to vindicate their members' and supporters' Second Amendment rights to publicly bear arms for self-defense.

40. All of the individual plaintiffs reside in Santa Clara County and have elected to apply for their CCW permit within its jurisdiction, as is their right. They further allege that the State of California, by ratifying the County Defendants' unconstitutional and unconscionable fees, it is treating them differently from residents of other counties and is thus denying them equal protection under state law in violation of the 14th Amendment.

41. All individual plaintiffs are members of each of the associational Plaintiffs, California Rifle & Pistol Association, Incorporated, and The Second Amendment Foundation.

42. Plaintiff CRPA is a non-profit membership and donor-supported organization qualified as tax-exempt under Section 501(c)(4) of the Internal Revenue Code, with its headquarters in Fullerton, California. Founded in 1875, CRPA seeks to defend the civil rights of all law-abiding individuals, including the enumerated right to bear firearms for lawful purposes like self-defense. CRPA regularly participates as a party or amicus in litigation challenging unlawful restrictions on the right to keep and bear arms. It also provides guidance to California gun owners regarding their legal rights and responsibilities. CRPA members include law enforcement officers, prosecutors, professionals, firearm experts, and the general public. CRPA

members who wish to obtain or renew CCW permits but reside in Santa Clara County are subject to exorbitant fees, unconstitutional psychological testing without good cause, and apparent campaign finance disclosure requirements.

43. Plaintiff The Second Amendment Foundation ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 720,000 members and supporters nationwide, including thousands of members in Santa Clara County. SAF is dedicated to promoting a better understanding of the nation's constitutional heritage and tradition of privately owning, possessing, and carrying firearms, through educational and legal action programs designed to better inform the public. SAF is a pioneer and innovator in defending the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. SAF also incurs significant expenses to sponsor public interest litigation to defend its interests and to disseminate information to like-minded individuals. SAF's policies specifically include the dedication of its resources, litigation experience, and economies of scale for the purpose of representing people who would otherwise lack the means and access to resources to successfully bring lawsuits to compel state and local governments to comply with the Constitution, as intended by the Fourteenth Amendment, its enforcement provisions, and Congressional statutes enabling the enforcement of the Constitution by private actors. *See* 42 U.S.C. §§ 1983, 1988. Other SAF members who are not named plaintiffs, may also wish to obtain or renew CCW permits while residing in Santa Clara County, and are thus also subject to unconstitutional fees, unnecessary and unconstitutional psychological testing, apparent campaign finance disclosure requirements, and other violations of civil rights as condition of exercising their Second Amendment rights. These other SAF members who reside in Santa Clara County would have standing in their own right, their interests align with SAF, and SAF's interests align with those members, and neither the claims asserted herein, nor the relief requested, requires participation of these other SAF members.

**Defendants**

44. Defendant Santa Clara County is a political subdivision of the State of California, incorporated under state law and subordinate to state law. The County is named as a Defendant to

the extent its policies, practices, procedures, and customs as a policy-making body contribute to the unconstitutional conduct alleged herein; and because the boards and departments of local governments are not independent from their parent entity. See generally: *Vann v. City and County of San Francisco*, 97 Cal.App.5th 1013 (2023).

45. Defendant Santa Clara County Sheriff's Department is a local government entity created under the laws of the state of California. It exists as an agency and political subdivision of Santa Clara County. Through the elected Sheriff of Santa Clara County, Defendant Robert Jensen, the Department is responsible for issuing CCW permits. The Department is sued to the extent its policies, practices, procedures, and customs as a policy-making body and its operation as an executive agency contribute to the unconstitutional conduct alleged herein.

46. Defendant Robert Jonsen is the elected Sheriff of Santa Clara County. Defendant Jensen is and, at all times relevant to this complaint, was one of the ultimate policymakers for Defendant Department and by extension the County. He has authority and responsibility under California Penal Code section 26150 to issue CCW permits within the county. He is directly responsible for promulgating, enforcing, and continuing the policies of the Department, including the unlawful policies and procedures complained about herein. Defendant Jonsen is sued solely in his official capacity.

47. Defendant Rob Bonta, is the Attorney General of the State of California. Reading (and stretching) Plaintiffs' First Amended Complaint (ECF No. 11, at 30) as a facial challenge to state law, his office moved to intervene in this matter. (ECF No. 47-1, at 5). Ironically, the Attorney General insisted on intervening in this matter, alleging (correctly) that his office has a duty under the state constitution to "see that the laws of the State are *uniformly* [sic] and adequately enforced." (ECF No. 47-1, at 6) (emphasis added) (citing Cal. Const., art. V, § 13). He did not, however, note that the constitution also gives the Attorney General direct supervisory control over the issuing authorities for CCW permits—in this case a county sheriff. Knowing the allegations made in this case against the County Defendants already named, and by failing to ensure statewide uniform enforcement of state law, the Attorney General, having the power to correct such abuses, has opted to ratify Santa Clara County's unconstitutional policies, practices,

customs and procedures, and has made adoptive admissions that his office will endorse the County Defendants' unequal enforcement of a law regulating a fundamental right in California. Whether this Court ultimately grants (or defers for later determination or trial) the State's mandatory intervention under Federal Rule of Civil Procedure 24(a), or permissive intervention under Rule 24(b), California's chief law enforcement officer has volunteered the State's resources in defending this case and thus the State has waived sovereign immunity under the 11th Amendment.[6]

48. The true names or capacities—whether individual, corporate, associate or otherwise—of the Defendants named herein as Does 1 through 10 are presently unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of these Defendants if and when they have been determined.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

49. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

50. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202.

51. Plaintiffs' claims for attorney's fees and costs are authorized by 42 U.S.C. § 1988.

52. Because waivers of sovereign immunity are jurisdictional, Plaintiffs allege that

---

[6] During conversations with counsel for the Attorney General, it was pointed out that his office had several options to address the issues in this case without intervening as a party, including filing an amicus brief in this matter. None of these options would have put the State's Treasury at risk. The Attorney General seeking to intervene in this case, in lieu of other options, invites (at least for pleading and discovery purposes) the negative pregnant implied by this voluntary exposure.

California has waived 11th Amendment immunity by seeking to intervene in this case by and through the Attorney General's motion to intervene under Federal Rule of Civil Procedure 24.

53. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district and its San Jose Division. The Santa Clara County Sheriff's Department is located within this district and its San Jose division.

## GENERAL ALLEGATIONS

54. The Supreme Court has recognized that the Second Amendment protects the individual right to keep and bear arms including, *inter alia*, the right of the people to "possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

55. The Supreme Court has also held that the Second Amendment right to keep and bear arms is incorporated by the Fourteenth Amendment, applying equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep **and bear** arms among those fundamental rights necessary to our system of ordered liberty.") (emphasis added).

56. *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 597 U.S. at 20-23 (citing *Heller*, 554 U.S. at 634). Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that a District of Columbia statute that prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

57. In *Bruen*, the Supreme Court confirmed and reiterated *Heller*'s historical approach to analyzing Second Amendment questions:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only

> then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

58. In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10.

59. Plaintiffs' proposed course of conduct is the same as the proposed course of conduct in *Bruen*: "carrying handguns publicly for self-defense." 597 U.S. at 32. In *Bruen*, New York argued that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a nonspeculative need for armed self-defense in those areas." *Id*. at 33. The Supreme Court did not say that "carrying handguns publicly for self-defense without a showing of nonspeculative need" was the proposed course of conduct because that "showing of nonspeculative need" was the <u>*burden* on the Second Amendment right</u>. The burden is not part of the proposed course of conduct; the law or practice that is being challenged is the burden. *See United States v. Martinez*, No. 23-cr-114, slip op. at 3 (E.D. Tex. Apr. 14, 2025) ("The Government next suggests that the 'conduct' covered by the text of the Second Amendment should be defined narrowly to fit the precise conduct regulated by § 922(d)(10)—something like 'selling a firearm to a drug trafficker.' . . . But this impermissibly conflates the two steps of *Bruen*.") In the same way, Plaintiffs here need not define their proposed course of conduct as, for example, "carrying handguns publicly for self-defense without paying exorbitant fees." *Bruen*'s simpler "carrying handguns publicly for self-defense" applies in this case.

60. Plaintiffs concede, for purposes of this action only, that the state-mandated and state-level performed tasks with a fee of $93 (for an exhaustive background check, Live Scan, and firearm cross-reference check for the firearm that will be listed on the actual license), are legitimate state costs for the state's role in CCW licensing, leaving applicants responsible for the cost of a training course.

61. Plaintiffs also concede, for purposes of this action only, that the county-level processes/investigation legitimately include:

a. an in person or virtual interview of the applicant (pursuant to § 26202(b)(1));

b. a telephonic interview of the applicant's three references (pursuant to § 26202(b)(2));

c. verification of the residency information provided on the application (pursuant to § 26202(b)(4)).

But even if a Santa Clara County deputy sheriff (earning about $60 per hour) took two hours per application to conduct four interviews and a verification of residency and completion of a training course, the County's costs should be closer to the fees charged by San Diego and Orange county. *See* ¶¶ 115-116, *infra.*

62. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditioned the exercise of the right to carry arms for self-defense upon payment of like sums for law-abiding citizens.

63. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditioned the exercise of the right to carry firearms for self-defense purposes on submission to a psychological test, with or without good cause.

64. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditions the exercise of the right to carry arms for self-defense upon a standardless review of public statements made by a law-abiding citizen.

65. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditions the exercise of the right to carry firearms for self-defense on the disclosure of campaign finance donations.

66. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditions the exercise of the right to carry arms for self-defense on making arbitrary and capricious statements against interest that are constitutionally irrelevant to granting a CCW license.

67. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditions the exercise of the right to carry arms for self-defense on law-abiding citizens waiving civil tort defenses and requiring individuals seeking to obtain a CCW license to become an open ended indemnifier of government actors and/or government

entities.

68. Most recently, the Supreme Court affirmed in *Wolford v. Lopez,* __ U.S. __, 225 L. Ed. 2d 494 (June 25, 2026), that government policies designed to perpetuate unconstitutional practices are not valid regulations of the Second Amendment "right to keep and bear arms." The County Defendants' history of tolerating corrupt, politically driven, invidious discrimination against the right to keep and bear arms as part of its CCW permit process, is evidence of a custom and practice of violating constitutional rights. The State Defendant's ratification (through its intervention in this case) of that continuing corruption is thus also actionable.

69. The burden to prove that historically relevant and constitutionally valid laws that burden the Plaintiffs' right to obtain a CCW permit in Santa Clara County lies with Defendants..

**California's Law for CCW Permit Issuance**

70. California State law sets forth some objective and some non-objective requirements for a licensing scheme to issue CCW permits. State law also sets forth some constitutionally legitimate and some constitutionally illegitimate requirements for permit issuance. The constitutionally valid and objective requirements are not challenged herein.

71. California Penal Code sections 26150, 26155, and 26170 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the applicant meets the statutory qualifications, shall issue or renew a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (CCW license).

72. California Penal Code § 26175 mandates a state-wide uniform application process for issuance of CCW permits and requires the Attorney General to issue a statewide standard application form for CCW licenses. Those qualifications and standards are set forth in form BOF-4012 (includes the standardized application usually filled out online), which is published by the California Department of Justice and is available at: https://oag.ca.gov/system/files/media/bof-4012.pdf. A true and correct copy of BOF-4012 is attached as **Exhibit A** to this complaint.

73. Generally, California law imposes the following CCW permit application requirements:

> (a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:
>
> (1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.
>
> (2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.
>
> (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.
>
> (4) The applicant has completed a course of training as described in Section 26165.
>
> (5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

Cal. Penal Code § 26150(a); *see id.* § 26155(a) (listing the same requirements for when a city's Police Department conducts permit issuance). *See also* § 26170 (listing requirements for deputized persons).

74. With regard to application fees to obtain a CCW permit, Penal Code section 26190(b)(1) only authorizes "[t]he licensing authority of any city, city and county, or county shall charge an additional fee in an amount equal to the reasonable costs for processing the application for a new license or a license renewal, issuing the license, and enforcing the license, including any required notices, excluding fingerprint and training costs, and shall transmit the additional fee, if any, to the city, city and county, or county treasury."

75. With regard to psychological testing, California law neither mandates nor expressly authorizes mandatory psychological testing for all applicants seeking an initial CCW permit or renewal. The term "psychological" (or any of that word's roots or variants) does not even appear in Penal Code sections 26150, 26155, or 26170, which list the sole qualifications for obtaining a

CCW permit.

76. California law already requires that the applicant disclose if they have previously been taken into custody as a danger to self or others under section 5150 or Part 1.5 (commencing with Section 5585) of Division 5 of the Welfare and Institutions Code, assessed under Section 5151 of the Welfare and Institutions Code, admitted to a mental health facility under Section 5151 or 5152 of the Welfare and Institutions Code, or certified under Section 5250, 5260, or 5270.15 of the Welfare and Institutions Code. *See* Penal Code § 26175(c)(1).

77. Penal Code section 26185 also requires a mandatory background check to ensure that the applicant is eligible to possess, receive, own, or purchase a firearm. The state's background check system is comprehensive, and it includes a search of the state's mental health database, which contains a list of all persons who have been admitted to a mental health facility under Welfare and Institutional Code sections 5150, 5151, 5152, 5150, 5260, and 5270.15.

78. Furthermore, Penal Code section 26190(e)(1) authorizes the allocation of the cost of psychological testing upon initial application—but only "if required by the licensing authority." In other words, state law does not mandate psychological testing for *every* applicant. Notably, section 26190(e)(2) authorizes allocation of costs for a renewal "*only* if there is compelling evidence of a public safety concern to indicate that an assessment is necessary."

79. Even BOF 4012 (Exhibit A) does not contend that psychological testing is mandatory for issuance of a license, only that licensing authorities "may also require psychological assessment for each initial application" and then sets forth how to allocate those costs under section 26190, subdivision (e).

80. In other words, the County Defendants are using a discretionary power about the allocation of costs to bootstrap universal mandatory psychological testing before issuing a CCW permit to everyone who applies for a license.[7]

[7] Plaintiffs had previously assumed that the plain text of the state law only allowed for psychological examination if there was prima facie good cause to impose such an examination, and thus also impose those costs. Now that California has intervened in support of Santa Clara's policy of mandating psychological testing for *all* new CCW applicants, California's ratification of this violation of the Constitution makes them liable too.

81. Plaintiffs further allege that the County Defendants have an express policy of exempting judges who apply for CCW permits from psychological testing, thus compounding a Second Amendment violation with a Fourteenth Amendment equal protection violation.[8]

82. The vast majority of California's issuing authorities do not mandate such testing. The County Defendants' requirement of psychological testing for a CCW permit violates more than just the Second Amendment. It violates the presumption of sanity, infringes on the exercise of an enumerated right, and violates the procedural due process guarantees of the Fourteenth Amendment.

83. State law also provides for the review of publicly available information about the applicant, including publicly available statements published by or posted by the applicant.[9] *See* Cal. Penal Code § 26202(b)(3).

84. On information and belief, Plaintiffs allege that neither California, nor the County Defendants, have promulgated objective criteria, that would be valid under the First Amendment, for reviewing content-based or viewpoint-based public statements by CCW applicants as part of the process for licensing a fundamental right. This is both a facial and as-applied violation of the First Amendment. Furthermore, by seeking intervention, the State of California has ratified the Santa Clara County Defendants' as-applied violations of the Constitution.

85. California Penal Code section 26175 sets forth the statutory basis for the State's Attorney General to create a uniform statewide application to obtain a CCW license. The current state-wide uniform application created by the Attorney General has deficiencies that either violate the U.S. Constitution or exceed the statutory authority under § 26175. *See infra*.

---

[8] After the filing of the FAC, Plaintiffs obtained a Public Records Act response from Santa Clara County documenting this express policy of exempting judicial officers from the psychological test for securing a CCW Permit.

[9] Plaintiffs had anticipated that the County Defendants would try to defend their unconscionably high fees and costs by blaming the costs on the interviews required by Penal Code section 26202(b)(1) & (2), and this one investigative task listed at § 26202(b)(3), as all of the other verifications are automated and conducted by outside contractors utilized by other counties and jurisdictions whose fees are far more reasonable. However, in the Public Records Act response noted in footnote 8, *supra*, Santa Clara County disclosed that it also uses an outside contractor to conduct standardless social media searches of CCW applicants and to evaluate the applicants' public statements, which also violates the First Amendment.

## Santa Clara County's Unconstitutional CCW Application and Issuance Policies

**<u>First Amendment Violations – Campaign Disclosures</u>**

86. Like many other coastal municipalities and counties in California, Santa Clara County did not historically issue CCW Permits to ordinary persons; instead, it granted permits only to the wealthy and well-connected. This practice came to a head under former Sheriff Laurie Smith, who would eventually be sanctioned for issuing CCW Permits on a "pay-to-play" basis, because she disproportionately granted permits to those who donated money to her campaign.

87. The webpage maintained by the Defendants titled "Apply for concealed carry weapon license" is found at https://sheriff.santaclaracounty.gov/services/other-services/ccw. A true and correct copy is attached at **Exhibit B** to this complaint.

88. The bottom of that introductory page for applying for a CCW Permit contains a section titled "Disclosure of campaign contributions" – along with a link to another website that requires entry of relevant personal information to comply with the County of Santa Clara Levine Act Disclosure requirements pursuant to Government Code Section 84308, et seq.

89. These financial disclosures are required to be filed 12 months before any covered agency decision (presumably the granting or denial of a CCW permit) and 12 months following the agency's decision. This means, if Plaintiffs seek an initial CCW permit, they must make campaign financial disclosures 12 months before submitting their CCW application, and 12 months after receiving it. And since the CCW permit is only issued for two years before the renewal process starts, a CCW permit applicant finds themselves in a perpetual state of filing financial disclosures as a condition of exercising Second Amendment rights. This is absurd.

90. The County Defendants' Levine Act disclosures as a requirement to process a CCW application, as set forth on their introductory webpage (especially since the county has had nearly a year to correct this, after it was brought to their attention with this action was first filed) is a de facto requirement that campaign finance disclosures are part of the CCW application process in Santa Clara county.

91. In point of fact, it is highly unlikely that a CCW permit is the kind of license or

permit covered by the Levine Act, which according the plain text of the statute refers only to "business, professional, trade, and land use licenses and permits and all other entitlements for use, including all entitlements for land use, all contracts, and all franchises." Cal. Govt. Code § 84308(a)(5)(A).

92. A CCW permit fits none of those categories. Defendants' insistence that a CCW permit application triggers Government Code § 84308, making such disclosures a requirement for consideration of a CCW permit, has a chilling effect on both the First Amendment ***and*** Second Amendment rights of the Plaintiffs.

93. The Attorney General has direct supervisory control over county sheriffs. Unless Rob Bonta officially, and publicly, repudiates this Santa Clara County policy, his office is ratifying that policy and is thus also in violation of the Constitution.

94. This "campaign disclosure" web page must be stricken from the Defendants' CCW permit website on how to obtain a permit, or to start the application process, and the Defendants must be enjoined—forever—from even suggesting that campaign financial activities or any such informational disclosure protected by the First Amendment is part of the CCW issuance process.

**First Amendment Violations – Standardless Review of Public Statements**

95. California Penal Code section 26202(b)(3) provides for a "review" of CCW applicants' public statements.

96. On information and belief, Plaintiffs allege that neither California nor the County Defendants have promulgated objective criteria, that would be valid under the First Amendment, for reviewing content-based or viewpoint-based public statements by CCW applicants as part of the process for licensing a fundamental right. This is both a facial and as-applied violation of the First Amendment. Furthermore, by failing to correct this abuse, and by seeking intervention, the State of California has ratified the Santa Clara County Defendant's as-applied violation.

**Second Amendment Violations - Costs**

97. Santa Clara County's Policy (207) for issuance of a CCW permit is found at https://files.santaclaracounty.gov/exjcpb1376/2025-02/207-license-to-carry-a-firearm.pdf?VersionId=Y2TKgtfkJLPoFZ1yfPuXvRUuDof0HT3b. A true and correct copy is

attached as **Exhibit C** to this complaint.

98. Schedule A, referred to in Policy 207, is found at: https://files.santaclaracounty.gov/exjcpb1376/2025-02/ccw-policy.schedule-a.pdf?VersionId=1XnoOEt1eT9GB28NLg0aVuZQIHWuDL81. A true and correct copy is attached as **Exhibit D** to this complaint.

99. The Fee Schedule for a Santa Clara County CCW Permit can be found at https://scso.permitium.com/ccw/start. A true and correct copy is attached as **Exhibit E** to this complaint.

100. While *Bruen* finally forced all state actors to issue permits to regular citizens using objective criteria, Defendants responded by seeking to frustrate the right to carry as much as possible by erecting financial burdens and other hurdles to its exercise. Indeed, Santa Clara County is pricing a fundamental right out of the reach of many (if not most) residents of the County.

101. Until this year, Defendants' fees totaled an already exorbitant outlier amount of $662. That has now been raised to $996, together with an additional $500 for psychological testing, another $400 for a 16-hour training course, and another $100 for Live Scan fingerprinting service. This brings the total cost of obtaining a CCW Permit in Santa Clara County close to *$2,000.00 for a three-year permit*. (See fn. 2 supra.)

102. After the cost of the initial permit, renewals still cost close to $500, plus the cost of an 8-hour refresher course. *See* Ex. E, p. 3.

103. Santa Clara County is an outlier even when considering the fees charged in other states. For example, in Arizona—where applying for a permit is optional because Arizona is a constitutional carry state—the CCW Permit Application fee is $60 plus the cost of fingerprinting. The fee for CCW Permit Renewal Application is just $43.[10]

104. In Texas, the "standard condition" "Original Application Fee" is $40, while applicants "may be eligible for a discount and/or certain exemption(s)."[11]

---

[10] Arizona Department of Public Safety, *Concealed Weapons Permit Unit – Applications and Fees*, https://www.azdps.gov/services/public/cwp (last visited Mar. 19, 2025).

[11] Texas Dep't of Public Safety, *Texas License to Carry (LTC) Fee Table*, https://www.dps.texas.gov/sites/default/files/documents/rsd/ltc/documents/ltcfeeschedule.pdf (last

105. Florida charges $55 for its issuance fee and $42 for fingerprinting.[12]

106. In Utah, "[t]he fees to apply for a concealed firearm permit are $52 for Utah residents and $62 for non-residents."[13]

107. In Minnesota, "[t]he fee for a new permit to carry will be determined by the county sheriff, not to exceed $100." "A fee for a renewal permit (applied for before the expiration date of a current permit to carry) will be determined by the county sheriff, not to exceed $75."[14]

108. For its concealed pistol license, Washington State charges $36 plus fingerprinting fees for the initial application, and only $32 for a renewal.[15]

109. The Las Vegas Metropolitan Police Department charges $60 for a New Application and an additional $39 for an FBI Background Check, while a Renewal Application costs just $25 plus the cost of a background check.[16]

110. In the Commonwealth of Virginia, the processing fee for a county clerk is $10, the fee to the State Police is $5, and the fee that "may" be charged by local law enforcement for a background check is "not to exceed" $35, for a "total amount" that, by statute, "shall not exceed $50." Va. Code. § 18.2-308.03.

111. California's short three-year permit period is also an outlier that makes the average

---

visited Mar. 19, 2025).

[12] Florida Dep't of Agriculture & Consumer Services, *Fee Schedule: Concealed Weapon or Firearm: Section 790.06, Florida Statutes*, https://www.fdacs.gov/content/download/7438/file/Concealed-Weapons-License-Fees-06-26-2017.pdf (last visited Mar. 19, 2025).

[13] Utah Dep't of Public Safety, Criminal Identification (BCI), *How Do I Apply for a Concealed Firearm Permit?*, https://bci.utah.gov/concealed-firearm/how-do-i-apply-for-a-concealed-firearm-permit (last visited Mar. 19, 2025).

[14] Minnesota Dep't of Public Services, Bureau of Criminal Apprehension, *Permit to Carry Frequently Asked Questions, What Is the Cost for a Permit to Carry?*, https://dps.mn.gov/divisions/bca/bca-divisions/administrative/Pages/Permit-to-Carry-FAQ.aspx (last visited Mar. 19, 2025).

[15] Washington State Dep't of Licensing, *Fees: Firearms*, https://www.dol.wa.gov/business/firearms/fafees.html (last visited Mar. 19, 2025).

[16]Las Vegas Metropolitan Police Dep't, *Concealed Carry Firearm Permits (CCW) – Non-refundable Fees – Effective January 1, 2025*, https://www.lvmpd.com/about/bureaus/records-and-fingerprint-bureau/concealed-firearm-permits (last visited Mar. 19, 2025).

annual cost to exercise the right to carry much greater than other states. (*Cf.,* fn. 2 supra.)

112. An Arizona CCW Permit, for example, is good for five years and costs only $60.[17] Thus, an Arizona permit costs roughly $12 a year, whereas a Santa Clara County permit costs around $1,000 per year when all expenses are considered.

113. The fees that Defendants charge eclipse even other issuing authorities *within California*. Ironically, out-of-state residents who can now apply for a California CCW permit from any county that they plan to spend time in can probably get a permit with less hassle than a Santa Clara County resident. For instance, a full-time resident of Nevada, who regularly spends time in Shasta County, has a less onerous CCW permit process than a full-time resident of Santa Clara County because state law requires California residents to apply for permits in their county of lawful residence. Cal. Penal Code § 26150.

114. The Los Angeles Sheriff's Department, for example, charges a $43 initial fee and a $173 issuance fee,[18] plus the cost of training and Live Scan fingerprinting, which applicants contract for on their own through a third party.

115. Effective July 14, 2024, San Diego County Sheriff's Department charges a $35.20 initial fee,[19] a $93 Live Scan fee, and a $140.80 final fee, with the training provider chosen and contracted with by the applicant. CCW renewals cost just $77.

116. The Orange County Sheriff's Department's fees total $169 for the application,[20] with applicants completing the Live Scan and training through third parties they choose and contract with.

---

[17] Arizona Department of Public Safety, *Concealed Weapons Permit Unit – Applications and Fees*, https://www.azdps.gov/services/public/cwp (last visited Mar. 19, 2025).

[18] Los Angeles County Sheriff's Dep't, *Concealed Carry Weapon License*, https://lasd.permitium.com/entry (last visited Mar. 19, 2025).

[19] San Diego County Sheriff's Office, *Carry Concealed Weapons (CCW) License, CCW Fee Breakdown*, https://www.sdsheriff.gov/i-want-to/get-a-permit-or-license/regulatory-licenses-and-fees/concealed-weapons-license (last visited Mar. 19, 2025).

[20] Orange County Sheriff's Dep't, *Fee Schedule: CCW Licensing Fee Information*, https://www.ocsheriff.gov/commands-divisions/professional-services-command/professional-standards/ccw-licensing/fee-schedule (last visited Mar. 19 2025).

117. None of the above jurisdictions requires a psychological examination, further lowering the expense relative to Santa Clara County.

118. The San Francisco Police Department charges applicants $144, which includes the Live Scan, with the applicant paying for the psychological examination and training separately. Renewals cost $52.[21]

119. The Alameda County Sheriff's Department charges $195 for a New Concealed Carry Weapon License and $77 for a Standard Renewal, plus the cost of training, Live Scan, and the psychological examination.[22]

120. The San Mateo County Sheriff's Department charges $210 (inclusive of the DOJ Live Scan Fee, DOJ Live Scan "Rolling" Fee, and the Sheriff's Fee), plus the cost of training and the psychological examination. Renewals are $77.[23]

121. Santa Clara County is not the only issuing authority gouging applicants. A few other jurisdictions within California charge astronomically high fees, but none quite match Santa Clara. For example, the San Jose Police Department charges $1,328 before the additional expenses of Live Scan fingerprinting, training, and psychological examination.[24] Yet San Jose charges $25 for renewal applications, far short of the $447 charged by Santa Clara. So, in the longer term, Santa Clara is still costlier. That said, the fact that even worse abuse may exist in other jurisdictions does not excuse Defendants' unconscionable policies and unconstitutional fees.

122. In general, most applicants in California can expect to spend around $500-$700 (still too high by national standards) to get their CCW Permits in order to be able to exercise their constitutional rights, but residents in Santa Clara pay around four times that amount.

---

[21] San Francisco Police Dep't, *Concealed Carry Weapon License – Processing Fees*, https://sanfranciscopd.permitium.com/entry (last visited Mar. 19, 2025).

[22] Alameda County, CA Sheriff's Office, *Concealed Carry Weapons License – Pricing*, https://alamedaca.permitium.com/entry (last visited Mar. 19, 2025).

[23] San Mateo County Sheriff's Office, *Concealed Carry Weapons License – Pricing*, https://sanmateoca.permitium.com/ccw/start (last visited Mar. 19, 2025).

[24] San Jose Police Dep't, *Permit Fees – Concealable Firearms*, https://www.sjpd.org/records/fees/permit-fees (last visited Mar. 19, 2025).

**Second Amendment Violations – Psychological Testing**

123. As noted above, state law does not mandate psychological testing.[25] California law only creates a statutory scheme for reimbursement if a licensing authority (in this case, a sheriff) requires such a test.

124. The Defendants' wrongful policies and procedures stem from requiring a test for *all* applicants without an individualized finding of the need for such an invasive and intrusive procedure. *See* Policy 207.4(f) (Ex. C, p. 3). *See also* Schedule A, Step 1, part 7 and 8 (Ex. D, pp. 3-4).

125. Why might a sheriff rationally require such a test? There are a number of good reasons to make such a discretionary decision on a person-by-person basis. For instance, a history of mentally unstable conduct as evidenced by the applicant's detention under the applicable Welfare and Institutions Code, which itself must be disclosed as part of the application process and is part of the background check, *might* support an individualized requirement for psychological testing. Or a Post-Traumatic-Stress Disorder diagnosis that is revealed during any of the other statutorily authorized investigations that are part of the CCW licensing process (e.g., during the interview of the applicant). With such an individualized finding, a sheriff at least has a rationale for seeking expert help in deciding whether to issue or withhold a permit. Without an individualized finding of a need for testing, a sheriff is engaging in a dangerous presumption that weaponizes psychology to burden the fundamental rights of all who seek to exercise those rights.

126. If Santa Clara County employed such an ad hoc approach, based upon a showing—supported by evidence—of the mental instability of a particular applicant before imposing psychological testing, then at least a rational (though perhaps still not constitutional) basis would exist for mandating such an intrusive procedure and the attendant costs. But that is not what Santa Clara County does. The Defendants impose the cost and the false presumption of mental instability

---

[25] Which is why neither California nor the California Attorney General were originally named as defendants in this suit. But since California, by and through its Attorney General's office, has signaled its desire to ratify these abuses (while having the power to rectify them) this SAC became necessary to add the State as a defendant after its chief law enforcement officer filed a motion to intervene.

on everyone seeking to exercise a fundamental right, who must then be subjected to intrusive, privacy-invading psychological screening to enjoy the full franchise of citizenship. This is constitutionally intolerable.

127. The *Bruen* decision mandates that barriers to exercising Second Amendment rights—like the right to carry a weapon in public for self-defense—must have historical analogs that do not otherwise violate any other fundamental rights. There is no valid, historically relevant law that conditioned the right to be armed in public on a psychological test, let alone mandating it for people who have no history of psychological illness or impairment. Without that *Bruen* pedigree for restricting the right to carry arms in public, the Defendants' imposition of such a requirement violates the Second Amendment. *See also Wolford*, 225 L. Ed. 2d 494; *United States v. Hemani*, __ U.S. __, 225 L. Ed. 2d 314 (June 18, 2026).

**Fourteenth Amendment Violation – Due Process – Psychological Testing**

128. The imposition of mandatory psychological testing as a condition for exercising a fundamental right flies in the face of bedrock principles of procedural due process. By mandating submission to psychological testing as part of the CCW process, without some individualized evidentiary showing that the applicant is prone to a disqualifying psychological impairment, the Defendants violate both the Second and Fourteenth Amendments.

129. Deprivation of a constitutional right is itself subject to procedural due process safeguards. *Addington v. Texas*, 441 U.S. 418 (1979). Here, the Defendants are assuming, without proof, that every CCW permit applicant is an undiscovered psychotic or sociopath. "[T]he psychological test [is to] determine[] if you are mentally fit to handle a concealed weapon." Ex. D, p. 4.

130. This test is ordered and conducted without any evidentiary standards, without evidentiary presumptions, without evidentiary burdens defined, without evidentiary privileges defined, or without procedural safeguards. Every CCW permit applicant is required to submit to a psychological test without exception or individualized finding merely because they have expressed a desire to exercise a fundamental right.

131. This unprecedented burden on an enumerated right cannot stand; it cuts against

centuries of the common law presumption of sanity and constitutional limits on an overreaching government.

**Fourteenth Amendment Violation – Equal Protection – Psychological Testing**

132. As noted above, the County Defendants mandate psychological testing for all new CCW applicants.

133. The County Defendants, however, have an express policy of exempting any judicial officer applying for a CCW permit from this requirement, thereby violating the Equal Protection Clause of the Fourteenth Amendment.

**California's Unconstitutional CCW Application and Issuance Policies**

**Fourteenth Amendment – Ratification of County's Equal Protection Violations**

134. As noted in footnote 6, *supra*, California did not have to risk waiving sovereign immunity to weigh in on this controversy. It had plenty of options other than intervening in this case as a party. The negative pregnant is "Why this now?" Recalcitrant states with histories of ignoring their duty to protect all of the constitutional rights of all of their citizens is not something new. *See generally*, *United States v. Cruikshank,* 92 U.S. 542 (1876), *United States v. Stanley (The Civil Rights Cases),* 109 U.S. 3 (1883), *Plessy v. Ferguson,* 163 U.S. 537 (1896), and *Cooper v. Aaron,* 358 U.S. 1 (1958). And even if the violation of fundamental rights seems less repulsive today than the cases cited above, one protocol that has consistently emerged over the course of this nation's history of protecting rights is that, once established as fundamental, no enumerated constitutional right is second-class. *Bruen*, 597 U.S. at 70-71 (citing *McDonald*, 561 U.S. at 780 (plurality op.).

135. In *Bruen*, the Supreme Court signaled to lower courts that they must begin imposing strict, objective requirements on states to justify laws and policies that infringe Second Amendment rights. And in its most recent decision, the Court signaled that it is prepared to entertain allegations that a state-actor's justification for gun control may, in fact, be a pretext for tainted policies, i.e., invidious discrimination against a class. In the Second Amendment context, that would be the class of people insisting on exercising their "right to keep and bear arms." *Wolford*, 225 L. Ed. 2d at 508-10, 516-17 (majority op.); *id.* at 519-525 (concurring op.); *id.* at

543, n. 17 (dissenting op.) (confirming that the majority and concurring opinions are indeed authorizing inquiries of illicit objectives by jurisdictions hostile to Second Amendment.)

136. California's intervention wager (i.e., risking a waiver of sovereign immunity) may be circumstantial evidence of a coordinated illicit policy (*see* n. 3, *supra*) with the County Defendants (or others). But at this time, Plaintiffs lack the facts necessary to satisfy the stricter pleading requirements for those allegations. At a minimum, however, after presumably conducting their own due diligence investigation into the County Defendants' public policies, California has elected to ratify those policies by joining this lawsuit. Having admitted they have the state constitutional power to regulate the CCW issuing agencies to prevent such abuses (Cal Const. art V, § 13), and by failing to take any remedial measures, California is sanctioning the County Defendants' unconstitutional abuses and the unequal application of state law inflicted on the Plaintiffs. Thus, California must endure and defend against the same allegations made against the County Defendants. The State's disclaimer that it takes no position on some of the County Defendants' policies cannot relieve them of joint liability for those policies under a theory of ratification, especially when the Attorney General has the power—and the duty—to regulate the CCW issuing agencies (county sheriffs and chiefs of police) to ensure compliance with the U.S. Constitution and uniform application of state law to all California residents.

137. Therefore, all of the allegations made against the County Defendants are re-alleged and incorporated against the State of California through its Attorney General Rob Bonta, who, having the power to stop the constitutional abuses alleged herein, has elected to defend those unconstitutional policies, procedures, and customs, thus ratifying these violations of the Constitution.

**First Amendment Violations – Ratification of County's Campaign Finance Disclosure Policy**

138. The facts alleged against the County Defendants (¶¶ 86-94) are realleged here against the State Defendant.

139. That having knowledge that the County Defendants are compelling political campaign finance disclosures as a condition to obtain a CCW permit, and having failed to exercise his duty under the California Constitution to halt such practices, the State Defendant is ratifying

these violations of the First Amendment.

**First Amendment Violations – Public Statements**

**<u>Ratification of County's Standardless Review of Public Statements</u>**

140. The facts alleged against the County Defendants (¶¶ 93-94) are realleged here against the State Defendant.

141. That having knowledge that the Santa Clara County Defendants are evaluating content-based and viewpoint based public statements made by CCW applicants, that violate the First Amendment, and having failed to exercise his duty under the California Constitution to halt such practices, Defendant Bonta is ratifying these violations of the U.S. Constitution.

**<u>Penal Code § 26202(b)(3) Facially Violates the First Amendment</u>**

142. The facts alleged against the County Defendants (¶¶ 95-96) are realleged here against the California Attorney General.

143. There are no set of circumstances under which a person applying for a CCW permit to exercise a Second Amendment right to carry arms in public for self-defense must be subjected to a non-objective, discretionary review, of their public statements. This constitutes a facial violation of the First Amendment.

**Second & Fourteenth Amendment Violations – Ratification of County's Fees**

144. The facts alleged against the County Defendants (¶¶ 97-122) are realleged here against the State Defendant.

145. The California legislature could solve this problem by mandating a uniform fee for CCW permits statewide. State law already preempts local regulation of firearms. Cal. Gov't Code § 53071.

146. And while imposing a cost to exercise a fundamental right, like voting, marching in a parade, seeking public office, might seem intuitively wrong, for now, the Supreme Court has countenanced some form of fee collection for licensing the right to be armed in public, notwithstanding a reinvigorated Second Amendment right of self-defense. *See Bruen*, 594 U.S. at 38-39, n. 9, ("[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in

processing licenses applications for exorbitant fees deny ordinary citizens their right to public carry.")

147. That the State Defendant has elected to ratify the County Defendants' abusive permitting process instead of invoking the several tools at his disposal to prevent those abuses is a policy choice. Though he has not, Attorney General Bonta could:

a. Invoke his state constitutional power as the chief law officer of the state to comply with the state constitutional mandate "to see that the laws of the State are uniformly and adequately enforced." Cal. Const. art. V, § 13.

b. Separately, or in conjunction with the power enumerated above, invoke his ***direct*** supervisory authority over all "sheriff[s] and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices" to ensure statewide uniformity in regulating a statewide permit to exercise a fundamental right. *Id.*

c. Promulgate regulations under California's Administrative Procedures Act (Gov't Code § 11340 et seq.) to stop a statewide license for exercising a fundamental right from costing less than $200 in some counties (Placer, Orange, Los Angeles, Riverside) to a high that is just shy of $2,000 in Santa Clara County.[26]

d. Issue formal written opinions "to any Member of the Legislature, the Governor, Lieutenant Governor, Secretary of State, Controller, Treasurer, State Lands Commission, Superintendent of Public Instruction, Insurance Commissioner, any state agency, and any county counsel, district attorney, or sheriff when requested, upon any question of law relating to their respective offices." Cal. Gov't Code § 12519.

148. By failing to exercise his duty to see to the uniform application of California law or a statewide permit that regulates a fundamental right, Attorney General Rob Bonta is violating the Plaintiffs' Second Amendment rights and the right to equal protection under the law pursuant to

---

[26] A regulatory scheme promulgated by the Attorney General's office providing guidelines and objective criteria for investigations under § 26202 would have the effect of ensuring a methodology for setting fees for a statewide license that regulates a fundamental right that conforms to constitutional norms.

the 14th Amendment.

**Second & Fourteenth Amendment Violations - Ratification of County's Psychological Testing Requirement**

149. The facts alleged against the County Defendants (¶¶ 123-127) are realleged here against the State Defendant.

150. By failing to exercise his duty to see to the uniform application of California law for a statewide permit that regulates a fundamental right, Attorney General Rob Bonta is ratifying the County Defendants' violation of Plaintiffs' Second Amendment rights (mandating psychological testing for all applicants) and Fourteenth Amendment rights to equal protection under the law (exempting judges from psychological testing) and to procedural due process of law (presumption of sanity).

**California's Statewide Uniform CCW Application Form**

151. California Penal Code section 26175 sets forth the statutory basis for the Attorney General to create a uniform statewide application to obtain a CCW license.

152. The current uniform statewide application created by the Attorney General has the following deficiencies that either violate the Constitution or exceed the statutory authority under section 26175:

a. Question #14 on page 7 of 17 violates medical privacy laws, lacks objective definitions, lacks procedural due process safeguards, is not directly authorized by section 26175, and is therefore unconstitutional.[27]

b. Question #16 on page 7 of 17 is constitutionally obsolete as currently worded in light of *Hemani*, 146 S. Ct. 1677.

c. Question #18 on page 7 of 17 asks a CCW applicant to admit, under oath, whether they have "ever been involved in an incident involving firearms" without defining "incident" and therefore constitutes a vague, arbitrary, capricious, and ambiguous qualification for exercising a fundamental right.

[27] Questions #13 and #15 already address presumptively valid questions about mental illness with procedural safeguards recognized by statute and case law.

d. Section 7 of the CCW Application contains a hold harmless agreement that requires the CCW licensee (if/when the permit is issued) to assume all responsibility and liability "In the event any claim, suit or action is brought against the licensing authority, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the licensing authority, its chief officer or any of its employees from such claim, suit, or action." And further requires the CCW applicant to acknowledge their understanding and agreement to "Hold Harmless" provisions of the CCW Application. This indemnification and Hold Harmless provision is not authorized by Penal Code section 26175. More importantly, it is an unconstitutional condition. The government may not force a person to surrender one constitutional right to exercise another. *Simmons v. United States*, 390 U.S. 377, 394 (1968) (holding that a defendant cannot be compelled to waive Fifth Amendment rights to invoke Fourth Amendment rights). Yet the California Attorney has imposed exactly that choice when it will not grant a CCW permit, unless an applicant waives important civil tort defenses and agrees to indemnify the government against any and all civil actions arising out of the CCW licensee's exercise of fundamental rights.

## DECLARATORY AND INJUNCTIVE RELIEF

153. Under *Bruen*, Defendants bear the heavy burden of proving their policies comply with the Second and Fourteenth Amendments. They will fail to do so, because their practices are entirely atextual and ahistorical, representing novel schemes developed in recent years or decades, and completely without any historical analogue.

154. Accordingly, Plaintiffs seek declaratory relief confirming that the County Defendants' CCW Permit application regime and fee schedule violates the Second Amendment, as they are entirely without any relevant historical precedent. The County Defendants' fees are both facially unconstitutional and unconstitutional as applied to the Plaintiffs and the members and supporters of the associational Plaintiffs. Furthermore, the State's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void and addressed by appropriate injunctive (mandate or prohibition) relief.

155. Furthermore, the County Defendants' violation of procedural due process safeguards by mandating psychological testing for all CCW applicants, without *a priori* individualized findings of psychological instability, violates the Fourteenth Amendment. Furthermore, the State's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void and addressed by appropriate injunctive (mandate or prohibition) relief.

156. Furthermore, the County Defendants' violation of the Equal Protection Clause, by mandating psychological testing for all CCW applicants, but exempting judicial officers, violates the Fourteenth Amendment. Furthermore, the State's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void and addressed by appropriate injunctive (mandate or prohibition) relief.

157. Although Plaintiffs do not concede that *any* fee to exercise an enumerated right passes constitutional muster, especially a fee that is on its face abusive and exorbitant, for the purposes of this lawsuit only, the expenses mandated by state law are not at issue. That includes the $93 California Department of Justice charges for comprehensive background checks, Live Scan fingerprinting expenses, and the cost of a training course. Until or unless the County Defendants can promulgate a constitutionally valid local fee, Santa Clara County's fee for issuing a CCW permit should be set at $0.00.

158. Plaintiffs seek injunctive relief to compel Defendants to comply with the Second Amendment, as clarified by *Bruen*, and the Fourteenth Amendment's procedural due process guarantees. Santa Clara County's CCW permit must be affordable to all citizens and must not impose unwarranted psychological testing, First Amendment violations, or wealth restrictions as a condition to exercising Second Amendment rights. Furthermore, the State's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void and addressed by appropriate injunctive (mandate or prohibition) relief.

159. Plaintiffs also seek declaratory and injunctive relief against both the County and State defendants for violations of the First Amendment relating to campaign disclosure requirements and investigations related to CCW applicants' public statements.

160. Plaintiffs seek additional injunctive relief specifically against Attorney General Rob Bonta, ordering his office to promulgate regulations or issue a formal opinion that abusive and exorbitant fees for CCW licenses will not be tolerated in California.

161. Furthermore, Plaintiffs seek an order that the Attorney General revise the stateside uniform CCW Application Form to comply with the U.S. Constitution and California Penal Code § 26175.

**FIRST CLAIM: DAMAGES & DECLARATORY & INJUNCTIVE RELIEF**
**U.S. Const. Amends. II, XIV**
**Right to Bear Arms**
**42 U.S.C. § 1983**
(By All Plaintiffs Against All Defendants)

162. Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

163. As described previously, Defendants have violated, or have ratified the violation, and continue to violate, or continue to ratify the violation of, the rights of gun owners, charging nearly $1,000 in fees, in addition to the cost of training, Live Scan, and psychological testing, to obtain a CCW Permit. Such exorbitant costs are unconstitutional, both on their face and as applied to Plaintiffs.

164. As described previously, the County Defendants' mandatory requirement of psychological testing for all CCW applicants without good cause is unconstitutional, both on its face and as applied to any applicant without a history of mental illness. Furthermore, the State Defendant's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void, and addressed by appropriate injunctive (mandate or prohibition) relief.

165. As described previously, the County Defendants' insistence that campaign finance disclosures are a perpetual requirement of the CCW application process to exercise Second Amendment rights is unconstitutional, both on its face and as applied to Plaintiffs. Furthermore, the State Defendant's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void, and addressed by appropriate injunctive

(mandate or prohibition) relief.

166. As described previously, the statewide CCW Application Form promulgated by the State Defendant violates the Second Amendment through arbitrary and capricious questions, and by imposing an unconstitutional condition as defined by *Simmons v. United States,* 390 U.S. 377 (1968).

167. As a result, Plaintiffs' Second Amendment rights, as applied to California under the Fourteenth Amendment, as well as the rights of the associational plaintiffs' members and supporters, are violated.

168. Defendants are thus propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, and thereby infringe their constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

169. Defendants cannot satisfy their burden to justify these customs, policies, and practices that preclude or inhibit and therefore infringe Plaintiffs' exercise of enumerated rights.

170. Plaintiffs are thus entitled to damages and declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

## SECOND CLAIM: DAMAGES & DECLARATORY & INJUNCTIVE RELIEF
**U.S. Const. Amends. I, XIV**
**Free Speech**
**42 U.S.C. § 1983**
(By All Plaintiffs Against All Defendants)

171. Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

172. As described previously, and because political campaign contributions are protected speech under the First Amendment, the County Defendants' policy, practice, and custom of imposing campaign finance disclosure requirements, as an express condition of exercising Second Amendment rights, violates the First Amendment. Furthermore, the State's knowing ratification of these county-level unconstitutional practices, policies, customs, and procedures is actionable, and must be addressed by appropriate injunctive (mandate or prohibition) relief.

173. As described above, Penal Code section 26202(b)(3) authorizes a content- and viewpoint-based evaluation of public statements as a condition to exercise Second Amendment rights. The County Defendants' policy, practice, and custom of investigating CCW applicants' public statements, as an express condition of exercising Second Amendment rights, violates the First Amendment. The State Defendant's knowing ratification of these county-level unconstitutional practices, policies, customs, and procedures is actionable, and must be addressed by appropriate injunctive (mandate or prohibition) relief. Moreover, Penal Code section 26202(b)(3) violates the First Amendment on its face.

174. As a result, Plaintiffs' First Amendment rights, as applied to California under the Fourteenth Amendment, as well as the rights of the associational plaintiffs' members and supporters, are violated.

175. Plaintiffs seek declaratory and/or injunctive relief requiring the removal of the Levine Act notices from the County Defendant's CCW application website and clarification that the procedures for issuances of CCW licenses do not trigger Levine Act disclosures in any county in California.

176. Plaintiffs also seek declaratory and/or injunctive relief that Penal Code section 26202(b)(3) is unconstitutional and therefore void.

**THIRD CLAIM: DAMAGES & DECLARATORY & INJUNCTIVE RELIEF**
**U.S. Const. Amends. XIV**
**Procedural Due Process**
**42 U.S.C. § 1983**
(By All Plaintiffs Against All Defendants)

177. Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

178. As described previously, the County Defendants' mandatory requirement of psychological testing for all CCW applicants without good cause is unconstitutional, both facially and as applied to any applicant without a history of mental illness. Furthermore, the State's knowing ratification of these county-level unconstitutional practices, policies, customs, and procedures is actionable and must be addressed by appropriate injunctive (mandate or prohibition)

relief.

179. Imposing mandatory psychological testing as a condition for exercising fundamental rights, without an individualized showing supported by probable cause, admissible evidence, notice, opportunity to be heard, right to counsel, right to cross-examine a witness, and appellate rights, violates Plaintiffs' procedural due process rights under the Fourteenth Amendment.

180. Plaintiffs seek damages and declaratory and/or injunctive relief that Defendants cannot impose psychological testing as part of the CCW application process without good cause and procedural due process rights in accordance with existing law. Plaintiffs who have already undergone such testing seek an order for the destruction of those records.

**FOURTH CLAIM: DAMAGES & DECLARATORY & INJUNCTIVE RELIEF**
**U.S. Const. Amends. XIV**
**Equal Protection**
**42 U.S.C. § 1983**
(By All Plaintiffs Against Defendant California Attorney General Rob Bonta)

181. Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

182. Through ratification of the County Defendants' unconstitutional policies, practices, procedures, and customs, the State Defendant—having knowledge of those unconstitutional wrongs and the power to prevent, or aid in preventing, those wrongs—the State Defendant has, and has continued to, sanction the unequal enforcement of California's laws as they apply to a statewide license to exercise a fundamental right.

183. This has resulted in the Plaintiffs, as a class, being treated differently under the state's laws that regulate a fundamental right.

184. Plaintiffs seek a declaration that the State Defendant has waived California's sovereign immunity under the 11th Amendment and is thus liable to pay any money damages that naturally flow from these violations.

185. Plaintiffs also seek declaratory and/or injunctive relief, that the Attorney General must take all necessary steps, pursuant to his power under the State's Constitution, and statutory

authorities listed herein, to prevent abusive CCW license requirements and exorbitant fees from being imposed on law-abiding Californians throughout the state to ensure uniform application of the law in compliance with the 14th Amendment's Equal Protection Clause.

**PRAYER**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. A declaration that all Defendants (either directly or through ratification) charging approximately $2,000 for first-time CCW Permit applications (when all expenses are factored in) violates the constitutional right to carry under the Second Amendment;

2. A declaration that all Defendants (either directly or through ratification) charging approximately $447 plus the cost of a training course for the renewal of a CCW Permit violates the constitutional right to carry under the Second Amendment;

3. A declaration that the County Defendants' notice insisting that campaign finance disclosures are a requirement of the CCW application process violates the constitutional right to carry under the Second Amendment, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's Equal Protection Clause, in addition to violating the Second Amendment;

4. A declaration that the County Defendants' policy, practice, and custom of imposing campaign finance disclosure requirements, as a condition of exercising Second Amendment rights, violates the First Amendment, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's equal protection clause, in addition to violating the First Amendment;

5. A declaration that the County Defendants' mandatory requirement of psychological testing for all CCW applicants without good cause violates the constitutional right to carry under the Second Amendment, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's equal protection clause, in addition to violating the Second Amendment;

6. A declaration that the County Defendants' mandatory requirement of psychological

testing for all CCW applicants, while exempting judicial officers, violates the 14th Amendment's Equal Protection Clause, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's Equal Protection Clause, in addition to violating the 14th Amendment's Procedural Due Process Clause;

7. A declaration that the County Defendants' mandatory requirement of psychological testing for all CCW applicants without good cause violates the right to procedural due process under the Fourteenth Amendment, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's Equal Protection Clause, in addition to violating the 14th Amendment's Procedural Due Process Clause;

8. A declaration that the current CCW Application promulgated by the California Attorney General's office is constitutionally and statutorily deficient and must be made to conform to Penal Code section 26175 and the U.S. Constitution;

9. A declaration that investigating public statements made by CCW applicants violates the First Amendment;

10. A declaration that the associational plaintiffs' resources and litigation experience are necessary to vindicate the Second Amendment rights of individual Plaintiffs who lack the means and capacity to challenge the constitutionality of the practices of all Defendants;

11. An order enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from charging applicants abusive and exorbitant local fees for their CCW Permit applications or renewal applications, conceding only that the applicant shall pay state law-mandated expenses including the $93 application fee as well as the cost of the training course and Live Scan service;

12. An order enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from requiring psychological examinations of all CCW applications or from passing the cost of any such examination onto applicants, without a finding of good cause that such testing is objectively necessary;

13. An order enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from implying, suggesting, or imposing

campaign finance disclosure requirements on Plaintiffs as a condition of obtaining a CCW permit;

14. An order mandating the destruction of the records of psychological testing of those CCW applicants who have already undergone such testing, and who were granted a permit;

15. Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. § 1988;

16. Compensatory damages for Plaintiffs who paid the unconstitutional fees before the Court could provide relief;

17. Compensatory damages for Plaintiffs who have paid to undergo unconstitutional mandatory psychological testing as part of the CCW application process;

18. Nominal damages; and

19. All other relief the court deems appropriate.

Respectfully Submitted,

Dated: October 6, 2026

**MICHEL & ASSOCIATES, P.C.**

*/s/ Anna M. Barvir*
Anna M. Barvir
Counsel for Plaintiffs Robert M. Blank, Charles Koon Chiu Young, Antonio Ramos Rodriguez, Jonathan Young, Kyle Hoang Truong, California Rifle & Pistol Association, Incorporated, The Second Amendment

Dated: October 6, 2026

**LAW OFFICES OF DONALD KILMER, APC**

*/s/ Donald Kilmer*
Donald Kilmer
Counsel for Plaintiff The Second Amendment Foundation

**ATTESTATION OF E-FILED SIGNATURES**

I, Anna M. Barvir, am the ECF User whose ID and password are being used to file this SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. In compliance with Northern District of California L.R. 5-1(i)(3), I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: October 6, 2026

*s/ Anna M. Barvir*
Anna M. Barvir

# EXHIBIT A

# CALIFORNIA DEPARTMENT OF JUSTICE
# BUREAU OF FIREARMS
# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

## Authority
California Penal Code sections 26150, 26155, and 26170 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the applicant meets the statutory qualifications, shall issue or renew a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (CCW license). Penal Code section 26175 requires the Attorney General to issue a statewide standard application form for CCW licenses.

## Who Shall be Issued a CCW License
The licensing authority specified in Penal Code sections 26150 and 26155 (a sheriff or the chief, or other head of a municipal police department, or one of the two if there is an agreement between the relevant authorities under subdivision (c)) shall issue a license to persons who (1) are not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Penal Code section 26202; (2) are at least 21 years of age; (3) are residents of the county or a city within the county of the licensing authority, or have their principal place of employment or business in the county or a city within the county and spend a substantial amount of time in that place of employment or business; (4) have completed the required course of training, as described in Penal Code section 26165; and (5) are the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

The licensing authority specified in Penal Code section 26170 (a sheriff or the chief, or other head of a municipal police department) shall issue a license to persons who (1) are not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Penal Code section 26202; (2) are at least 21 years of age; (3) have been deputized or appointed as a peace officer pursuant to Penal Code section 830.6, subdivisions (a) or (b) by that sheriff or that chief of police or other head of a municipal police department; and (4) are the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued, or are authorized to carry a firearm that is registered to the agency for which the licensee has been deputized or appointed to serve as a peace officer.

Every applicant for an initial CCW license will be fingerprinted and state and federal records will be checked to determine if the applicant is eligible to possess, receive, own, or purchase firearms under state and federal law. For informational purposes only, provided along with this application is a separate enclosure which lists categories that prohibit a person from possessing firearms and thus from being granted a CCW license. Because the enclosure is updated periodically to reflect new legislation and other changes in the law, the most recent version should be reviewed.

## Disqualified Persons Who Cannot Receive or Renew a CCW License
Under Penal Code section 26202, unless a court makes a contrary determination pursuant to Penal Code section 26206, an applicant shall be deemed to be a disqualified person and cannot receive or renew a CCW license if the licensing authority determines that the applicant:

1. Is reasonably likely to be a danger to self, others, or the community at large;
2. Has been convicted of contempt of court under Penal Code section 166;
3. Has been subject to any restraining order, protective order, or other type of court order issued pursuant to the statutory provisions listed in Penal Code section 26202, subdivision (a)(3), unless that order expired or was vacated or otherwise canceled more than five years prior to the licensing authority receiving this completed application;
4. In the ten years prior to the licensing authority receiving this completed application, has been convicted of an offense listed in Penal Code sections 422.6, 422.7, 422.75, or 29805;
5. Has engaged in an unlawful or reckless use, display, or brandishing of a firearm;
6. In ten years prior to the licensing authority receiving this completed application, has been charged with any offense listed in Penal Code sections 290, 667.5, 1192.7, 1192.8, or 29805 that was dismissed pursuant to a plea or dismissed with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754;
7. In the five years prior to the licensing authority receiving this completed application, has been committed to or incarcerated in county jail or state prison for, or probation, parole, post release community supervision, or mandatory supervision as a result of, a conviction of an offense, an element of which involves controlled substances (as described in Health and Safety Code sections 11053 to 11058, inclusive) or alcohol;
8. Is currently abusing controlled substances (as described in Health and Safety Code sections 11053 to 11058, inclusive), or alcohol;

9. Within the ten years prior to the licensing authority receiving this completed application, has experienced the loss or theft of multiple firearms due to the applicant's lack of compliance with federal, state, or local law in storing, transporting, or securing the firearm; or
10. Failed to report a loss of a firearm as required by Penal Code section 25250 or any other state, federal, or local law requiring the reporting of the loss of a firearm.

**Format of CCW License**

A CCW license shall be issued in either of the following formats:

1. A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person; or
2. Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

**Training Required**

Penal Code sections 26150 and 26155 specify that new license applicants must complete a course of training. The training may consist of any course acceptable to the licensing authority and no less than 16 hours in length that meets the minimum criteria set forth in Penal Code section 26165, subdivision (a). Instead of a course described in Penal Code section 26165, subdivision (a), the licensing authority may require a community college course, not to exceed 24 hours, certified by the Commission on Peace Officer Standards and Training. If the licensing authority requires the community college course, it must be uniformly required for all CCW license applicants.

For license renewal applicants, the course of training may be any course acceptable to the licensing authority that is no less than eight hours in length, and that otherwise meets the minimum criteria set forth in Penal Code section 26165, subdivision (a).

A licensing authority must establish and make available to the public the live-fire exercise requirements it uses (including the minimum number of rounds to be fired and minimum passing scores from specified firing distances) when issuing licenses. (Penal Code § 26165, subd. (b).)

**Psychological Testing**

Under Penal Code section 26190, subdivision (e), licensing authorities may also require psychological assessment for each initial application. If required, the applicant shall be referred to a licensed psychologist acceptable to the licensing authority. The applicant may be charged for the actual cost of the assessment. An additional psychological assessment of an applicant seeking license renewal shall be required only if there is compelling evidence of a public safety concern to indicate that an assessment is necessary.

**Completing the Application**

Pursuant to Penal Code section 26160, each licensing authority, in addition to using the standard application form, is required to publish and make available a written policy summarizing the provisions of Penal Code sections 26150 and 26155.

The application on the following pages sets forth standardized questions to be used by the CCW licensing authority to determine whether a CCW license shall be issued. The applicant must certify under penalty of perjury that all answers provided are true and correct to the best of their knowledge and belief. The applicant must also acknowledge that information disclosed in this application may be subject to the public disclosure.

Pursuant to Penal Code section 26175, subdivision (c)(2), in lieu of residence or business address, an applicant who participates in the program described in Chapter 3.1 of Division 7 of Title I of the Government Code (allowing address confidentiality for victims of domestic violence, sexual assault, and stalking) may provide the address designated to the applicant by the Secretary of State. Pursuant to Penal Code section 26175, subdivision (c)(3), in lieu of a residence address, an applicant who falls within the categories described in Penal Code section 26220, subdivision (c) (listing judicial officers) may provide a business address or an alternative mailing address, such as a Post Office Box.

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**

# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

Answering all the questions on this standard application does not guarantee the issuance of a CCW license. Prior to issuing a CCW license, the licensing authority is required to determine whether the applicant meets all the statutory qualifications under Penal Code section 26202, subdivision (b), the licensing authority is also required to conduct an investigation to determine whether the applicant is a disqualified person and cannot receive or renew a CCW license. That investigation must, at a minimum, include a review of all information provided in this application, an in-person interview with the applicant, interviews with at least three character references, a review of publicly available information about the applicant, a review of information provided by the Department of Justice, and a review of information in the California Restraining and Protective Order System. Interviews of the applicant and character references are mandatory for initial license applications. The licensing authority may elect to require these interviews for renewal license applications. The licensing authority may engage in investigative efforts in addition to these minimum requirements.

**Important Instructions**

Complete, read, and sign Sections 1 through 5, as directed. Use additional pages if more space is required.

Review your answers before your in-person interview with the licensing authority investigator and be prepared to clarify the information provided upon request. You have an affirmative duty to inform the investigator of any changes to your answers. Note that under Penal Code section 26180, any person who files an application for a CCW license knowing that statements contained therein are false is guilty of a misdemeanor, and in some instances, a felony.

Sections 7 and 8 must be completed in the presence of an official of the licensing authority.

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**

# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

**Official Use Only**
**Type of License Requested**

☐ Standard ☐ Judge
☐ Reserve Peace Officer ☐ Employment ☐ Custodial Officer

☐ **Initial Application** ☐ **Renewal Application**

## Section 1 - Personal Information

Last Name | First Name | Middle Name

If Applicable, Maiden Name or Other Names(s) Used

CA Driver License / ID No. | CA Driver License Restrictions | Country of Citizenship

Date of Birth | Age | Place of Birth (City, County, State or City and County if outside the U.S.)

Height | Weight | Eye Color | Hair Color

Residence Address | City | State | Zip Code | Telephone Number (Day)

Mailing Address (if different) | City | State | Zip Code | Telephone Number (Evening)

Spouse/Domestic Partner Last Name | Spouse/Domestic Partner First Name | Spouse/Domestic Partner Middle Name

Spouse/Domestic Partner Physical Address (*if different than applicant*) | City | State | Zip Code

Applicant Occupation | Business/Employer Name

Business/Employer Address | City | State | Zip Code | Telephone Number

List all previous residence addresses for the past five years. Use additional pages if necessary.

Address | City | State | Zip Code

Address | City | State | Zip Code

Address | City | State | Zip Code

Address | City | State | Zip Code

## CALIFORNIA DEPARTMENT OF JUSTICE
## BUREAU OF FIREARMS
## STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

**Section 2 - Information Pertaining to Eligibility and Disqualification for CCW License**

1. Do you now have, or have you ever had, a license to carry a concealed weapon (CCW)? If yes, please enter the issuing agency name, issuing state, CCW license number, and issue date. Use additional pages if necessary. ☐ YES ☐ NO

Issuing Agency Name ____________ Issuing State ____________

CCW License Number ____________ Issue Date ____________

2. Have you ever been denied a CCW license or had a license revoked for any reason? If yes, please enter the agency name, date, and the reason for denial/revocation. ☐ YES ☐ NO

Agency Name ____________ Date ____________

Reason for Denial/Revocation ____________

3. Have you ever held and subsequently renounced your United States citizenship? If yes, please explain. ☐ YES ☐ NO

4. Have you ever been charged with any criminal offense (civilian or military) in the United States or any other country, even if such charges were dismissed? If yes, please explain including the date, agency, charges, and disposition. ☐ YES ☐ NO

5. Have you ever been detained or arrested in the United States or any other country? If yes, please explain including the date, agency, and whether the detention or arrest resulted in criminal charges, and if so, the disposition. ☐ YES ☐ NO

6. Are you now, or have you been, on probation, parole, post release community supervision, or mandatory supervision from any state for conviction of any offense including traffic? If yes, please explain. ☐ YES ☐ NO

7. Are you now, or have you been, a party to a lawsuit in the last five years? If yes, please explain. ☐ YES ☐ NO

# CALIFORNIA DEPARTMENT OF JUSTICE
# BUREAU OF FIREARMS
# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

8. If you served with the Armed Forces, was your discharge other than honorable? If yes, please explain. ☐ YES ☐ NO

9. Are you now, or have you been, subject to any restraining order, protective order, or other type of court order issued pursuant to Penal Code section 646.91 (stalking); Part 3, commencing with section 6240, or Part 4, commencing with section 6300, of Division 10 of the Family Code (domestic violence or abuse); Penal Code section 136.2 (victims and witnesses of crime); Penal Code section 18100 (gun violence restraining order); Code of Civil Procedure section 527.6 (civil harassment); Code of Civil Procedure section 527.8 (workplace violence); Code of Civil Procedure section 527.85 (school violence); Welfare and Institutions Code sections 213.5, 304, 362.4, or 726.5 (juvenile court orders); or Welfare and Institutions Code section 15657.03 (elder/dependent adult abuse)? If yes, please explain. ☐ YES ☐ NO

10. Are you now, or have you been, subject to a valid restraining, protective, or stay-away order issued by an out-of-state jurisdiction pursuant to laws concerning domestic violence, family law, protection of children or elderly persons, stalking, harassment, witness intimidation, or firearm possession? If yes, please explain. ☐ YES ☐ NO

11. Are you now, or have you been, subject to a valid restraining, protective, or stay-away order issued by any court within the United States or by any out-of-state jurisdiction? If yes, please explain. ☐ YES ☐ NO

12. List all traffic violations (moving violations only) and motor vehicle accidents you have had in the last five years. Use additional pages if necessary.

| Date | Violation/Accident | Agency | Citation No. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**
**STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED**

13. Have you ever been taken into custody as a danger to self or others for reasons related to mental health under Welfare and Institutions Code sections 5150 or 5585, or assessed under Welfare and Institutions Code section 5151, or admitted to a mental health facility under Welfare and Institutions Code sections 5150 or 5152, or certified for mental health treatment under Welfare and Institutions Code sections 5250, 5260, or 5270.15? If yes, please explain. ☐ YES ☐ NO

14. Have you ever otherwise been treated for mental illness? If yes, please explain. ☐ YES ☐ NO

15. Have you ever been found not guilty by a reason of insanity or mentally incompetent to stand trial? If yes, please explain. ☐ YES ☐ NO

16. Are you now, or have you ever been, addicted to a controlled substance or alcohol, or have you ever utilized an illegal controlled substance, or have you ever reported to a detoxification or drug treatment program? If yes, please explain. ☐ YES ☐ NO

17. Have you engaged in an unlawful or reckless use, display, or brandishing of a firearm ? If yes, please explain. ☐ YES ☐ NO

18. Have you ever been involved in an incident involving firearms? If yes, please explain. ☐ YES ☐ NO

19. Have you ever been involved in a domestic violence incident? If yes, please explain. ☐ YES ☐ NO

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**
**STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED**

20. Have you withheld any fact that might affect the decision to approve this license? If yes, please explain. ☐ YES ☐ NO

21. Have you ever lost a firearm, or had a firearm stolen? If yes, please explain and describe whether you reported the loss or theft of the firearm. ☐ YES ☐ NO

The licensing authority investigator should request clarification on any of the information provided by the applicant, as appropriate, and confirm that none of the applicant's answers have changed.

Investigator's notes. Use additional pages if necessary.

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**
# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

## Section 3 - Character References

Please list the names and contact information of three persons willing to serve as references. One of the three must be person described in Penal Code section 273.5, subdivision (b) (your spouse or former spouse, your cohabitant or former cohabitant, your fiancée, or someone with whom you have, or previously had, an engagement or dating relationship, or the mother or father of your child), if applicable. At least one of the three must be your cohabitant, if applicable.

| Name | Relationship | Phone Number |
|---|---|---|
| Name | Relationship | Phone Number |
| Name | Relationship | Phone Number |

## Section 4 - Description of Firearms

List below the firearms you desire to carry if granted a CCW license. You must be the recorded owner, with the Department of Justice, of any firearm listed below. You may use a CCW license granted in response to this application only for carrying the firearm(s) which you list and describe herein, unless you apply for and obtain an amendment. Any misuse will cause an automatic revocation under Penal Code section 26195, subdivision (b), and possible arrest. Use additional pages if necessary.

| Make | Model | Caliber | Serial Number |
|---|---|---|---|
| Make | Model | Caliber | Serial Number |
| Make | Model | Caliber | Serial Number |
| Make | Model | Caliber | Serial Number |
| Make | Model | Caliber | Serial Number |
| Make | Model | Caliber | Serial Number |
| Make | Model | Caliber | Serial Number |
| Make | Model | Caliber | Serial Number |
| Make | Model | Caliber | Serial Number |

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**
# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

## Section 5 - CCW License Conditions and Restrictions

The licensee is responsible for all liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the licensing authority. In the event any claim, suit, or action is brought against the licensing authority, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the licensing authority, its chief officer or any of its employees from such claim, suit, or action.

The licensee authorizes the licensing authority to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern their possible disqualifications to be issued a CCW license and release said issuing agency of any and all liability arising out of such investigation.

While exercising the privileges granted to the licensee under the terms of this license, the licensee shall not (pursuant to Penal Code section 26200), when carrying a concealable weapon as authorized by this license:

- Consume any alcoholic beverage, or controlled substance as described in Health and Safety Code sections 11053 to 11058, inclusive.
- Be in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption.
- Be under the influence of any alcoholic beverage, medication, or controlled substance as described in Health and Safety Code sections 11053 to 11058, inclusive.
- Carry a firearm not listed on the license or a firearm for which they are not the recorded owner (unless the licensee was issued a CCW under Penal Code section 26170 and has been authorized to carry a firearm that is registered to the agency for which the licensee has been deputized or appointed to serve as a peace officer).
- Falsely represent to a person that the licensee is a peace officer.
- Engage in unjustified display of a deadly weapon.
- Fail to carry the license on their person.
- Impede any peace officer in the performance of their activities.
- Refuse to display the license or provide the firearm to any peace officer upon demand for purposes of inspecting the firearm.
- Fail to comply with any reasonable restrictions or conditions the licensing authority imposes, including restrictions as to the time, place, manner, and circumstances under which a licensee may carry a pistol, revolver, or other firearm capable of being concealed on the person.
- Carry more than two firearms under the licensee's control at one time.
- Violate any federal, state, or local criminal law.

Title 49, section 46505 of the United States Code states that a license to carry a concealed weapon does not authorize a person to carry a firearm, tear gas, or any dangerous weapon aboard commercial airlines. Such violation can result in arrest by law enforcement.

Any violation of these restrictions or conditions may result in the CCW license being revoked, or may void any further use of the license until reinstated by the licensing authority.

CALIFORNIA DEPARTMENT OF JUSTICE
BUREAU OF FIREARMS
STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE
TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

## Section 6 - Applicable California Penal Code Sections for CCW Licensees

**Although license holders must obey all current federal, state, and local laws, the following Penal Code sections are of special importance to the holder of a CCW license regarding the use, carrying, and storage of firearms. Please note that the Penal Code excerpts provided below are for informational purposes only. To the extent these laws change over time, those changes have controlling effect.**

**Penal Code section 26180 - False Statement on Application Form**

(a) Any person who files an application required by Section 26175 knowing that statements contained therein are false is guilty of a misdemeanor.
(b) Any person who knowingly makes a false statement on the application regarding any of the following is guilty of a felony:
  (1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to this article.
  (2) A criminal conviction.
  (3) A finding of not guilty by reason of insanity.
  (4) The use of a controlled substance.
  (5) A dishonorable discharge from military service.
  (6) A commitment to a mental institution.
  (7) A renunciation of United States citizenship.

**Penal Code section 192 - Manslaughter [excerpt, subdivisions (c) - (f) not included]**

Manslaughter is the unlawful killing of a human being without malice.
(a) Voluntary - upon a sudden quarrel or heat of passion.
(b) Involuntary - in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall not apply to acts committed in the driving of a vehicle.

**Penal Code section 197 - Justifiable Homicide; Any Person**

Homicide is also justifiable when committed by any person in any of the following cases:
  (1) When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person.
  (2) When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous, or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein.
  (3) When committed in the lawful defense of such person, or of a spouse, parent, child, master, mistress or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he or she was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed.
  (4) When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

**Penal Code section 198 - Justifiable Homicide; Sufficiency of Fear**

A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

**Penal Code section 25100 - Criminal Storage of Firearm**

(a) Except as provided in Section 25105, a person commits the crime of "criminal storage of a firearm of the first degree" if all of the following conditions are satisfied:
  (1) The person keeps any firearm within any premises that are under the person's custody or control.
  (2) The person knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian, or that a person prohibited from possessing a firearm or deadly weapon pursuant to state or federal law is likely to gain access to the firearm.

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**
**STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED**

(3) The child obtains access to the firearm and thereby causes death or great bodily injury to the child or any other person, or the person prohibited from possessing a firearm or deadly weapon pursuant to state or federal law obtains access to the firearm and thereby causes death or great bodily injury to themselves or any other person.

(b) Except as provided in Section 25105, a person commits the crime of "criminal storage of a firearm of the second degree" if all of the following conditions are satisfied:
  (1) The person keeps any firearm within any premises that are under the person's custody or control.
  (2) The person knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian, or that a person prohibited from possessing a firearm or deadly weapon pursuant to state or federal law is likely to gain access to the firearm.
  (3) The child obtains access to the firearm and thereby causes injury, other than great bodily injury, to the child or any other person, or carries the firearm either to a public place or in violation of Section 417, or the person prohibited from possessing a firearm or deadly weapon pursuant to state or federal law obtains access to the firearm and thereby causes injury, other than great bodily injury, to themselves or any other person, or carries the firearm either to a public place or in violation of Section 417.

(c) Except as provided in Section 25105, a person commits the crime of “criminal storage of a firearm in the third degree” if the person keeps any firearm within any premises that are under the person's custody or control and negligently stores or leaves a firearm in a location where the person knows, or reasonably should know, that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian, unless reasonable action is taken by the person to secure the firearm against access by the child.

**Penal Code section 25105 - Exceptions to Criminal Storage of Firearm**

Section 25100 does not apply whenever any of the following occurs:

(a) The child obtains the firearm as a result of an illegal entry to any premises by any person.
(b) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
(c) The firearm is carried on the person or within close enough proximity thereto that the individual can readily retrieve and use the firearm as if carried on the person.
(d) The firearm is locked with a locking device, as defined in Section 16860, which has rendered the firearm inoperable.
(e) The person is a peace officer or a member of the Armed Forces or the National Guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
(f) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense for defense of another person.
(g) The person who keeps a loaded firearm on any premises that are under the person's custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

**Penal Code section 25200 - Storage of Firearm Accessed by Children or Prohibited Persons and Carried Off-Premises**

(a) If all of the following conditions are satisfied, a person shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine:
  (1) The person keeps a firearm, loaded or unloaded, within any premises that are under the person's custody or control.
  (2) The person knows or reasonably should know that a child is likely to gain access to that firearm without the permission of the child's parent or legal guardian, or that a person prohibited from possessing a firearm or deadly weapon pursuant to state or federal law is likely to gain access to the firearm.
  (3) The child or the prohibited person obtains access to that firearm and thereafter carries that firearm off-premises.

(b) If all of the following conditions are satisfied, a person shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding five thousand dollars ($5,000), or by both that imprisonment and fine:
  (1) The person keeps any firearm within any premises that are under the person's custody or control.
  (2) The person knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian, or that a person prohibited from possessing a firearm or deadly weapon pursuant to state or federal law is likely to gain access to the firearm.
  (3) The child or the prohibited person obtains access to the firearm and thereafter carries that firearm off-premises to any public or private preschool, elementary school, middle school, high school, or to any school-sponsored event, activity, or performance, whether occurring on school grounds or elsewhere.

(c) A firearm that a child gains access to and carries off-premises in violation of this section shall be deemed “used in the commission of any misdemeanor as provided in this code or any felony” for the purpose of Section 29300 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**
**STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED**

(d) As used in this section, "off-premises" means premises other than the premises where the firearm was stored.

**Penal Code section 25205 - Exceptions to Unlawful Storage of Firearm Accessed and Carried Off-Premises**
Section 25200 does not apply if any of the following are true:
(a) The child obtains the firearm as a result of an illegal entry into any premises by any person.
(b) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
(c) The firearm is locked with a locking device, as defined in Section 16860, which has rendered the firearm inoperable.
(d) The firearm is carried on the person within close enough range that the individual can readily retrieve and use the firearm as if carried on the person.
(e) The person is a peace officer or a member of the Armed Forces or National Guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
(f) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person.
(g) The person who keeps a firearm has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

**Penal Code section 626.9 - Schools [excerpt, subdivisions (f), (g), and (k) - (q) not included]**
(a) This section shall be known, and may be cited, as the Gun-Free School Zone Act of 1995.
(b) Any person who possesses a firearm in a place that the person knows, or reasonably should know, is a school zone as defined in paragraph (4) of subdivision (e), shall be punished as specified in subdivision (f).
(c) Subdivision (b) does not apply to the possession of a firearm under any of the following circumstances:
(1) Within a place of residence or place of business or on private property, if the place of residence, place of business, or private property is not part of the school grounds and the possession of the firearm is otherwise lawful.
(2) (A) When the firearm is an unloaded pistol, revolver, or other firearm capable of being concealed on the person is within a locked container in a motor vehicle or is within the locked trunk of a motor vehicle at all times.
(B) This section does not prohibit or limit the otherwise lawful transportation of any other firearm, other than a pistol, revolver, or other firearm capable of being concealed on the person, in accordance with state law.
(3) When the person possessing the firearm reasonably believes that they are in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to their life or safety. This subdivision does not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. Upon a trial for violating subdivision (b), the trier of a fact shall determine whether the defendant was acting out of a reasonable belief that they were in grave danger.
(4) When the person is exempt from the prohibition against carrying a concealed firearm pursuant to Section 25615, 25625, 25630, or 25645.
(5) When the person holds a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6, who is carrying that firearm in an area that is within a distance of 1,000 feet from the grounds of the public or private school, but is not within any building, real property, or parking area under the control of a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, or on a street or sidewalk immediately adjacent to a building, real property, or parking area under the control of that public or private school. Nothing in this paragraph shall prohibit a person holding a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6 from carrying a firearm in accordance with that license as provided in subdivisions (b), (c), or (e) of Section 26230.
(d) Except as provided in subdivision (b), it shall be unlawful for any person, with reckless disregard for the safety of another, to discharge, or attempt to discharge, a firearm in a school zone as defined in paragraph (4) of subdivision (e). The prohibition contained in this subdivision does not apply to the discharge of a firearm to the extent that the conditions of paragraph (1) of subdivision (c) are satisfied.
(e) As used in this section, the following definitions shall apply:
(1) “Concealed firearm” has the same meaning as that term is given in Sections 25400 and 25610.
(2) “Firearm” has the same meaning as that term is given in subdivisions (a) to (d), inclusive, of Section 16520.
(3) “Locked container” has the same meaning as that term is given in Section 16850.
(4) “School zone” means an area in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, or within a distance of 1,000 feet from the grounds of the public or private school.

**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**
**STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED**

(f) [not included here]
(g) [not included here]
(h) Notwithstanding Section 25605, any person who brings or possesses a loaded firearm upon the grounds of a campus of, or buildings owned or operated for student housing, teaching, research, or administration by, a public or private university or college, that are contiguous or are clearly marked university property, unless it is with the written permission of the university or college president, their designee, or equivalent university or college authority, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years. Notwithstanding subdivision (k), a university or college shall post a prominent notice at primary entrances on noncontiguous property stating that firearms are prohibited on that property pursuant to this subdivision.
(i) Notwithstanding Section 25605, any person who brings or possesses a firearm upon the grounds of a campus of, or buildings owned or operated for student housing, teaching, research, or administration by, a public or private university or college, that are contiguous or are clearly marked university property, unless it is with the written permission of the university or college president, their designee, or equivalent university or college authority, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for one, two, or three years. Notwithstanding subdivision (k), a university or college shall post a prominent notice at primary entrances on noncontiguous property stating that firearms are prohibited on that property pursuant to this subdivision.
(j) For purposes of this section, a firearm shall be deemed to be loaded when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm. A muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder.

**Penal Code section 26230 - Prohibited Places**

(a) A person granted a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person pursuant to Section 26150, 26155, or 26170 shall not carry a firearm on or into any of the following:
  (1) A place prohibited by Section 626.9.
  (2) A building, real property, or parking area under the control of a preschool or childcare facility, including a room or portion of a building under the control of a preschool or childcare facility. Nothing in this paragraph shall prevent the operator of a childcare facility in a family home from owning or possessing a firearm in the home if no child under child care at the home is present in the home or the firearm in the home is unloaded, stored in a locked container, and stored separately from ammunition when a child under child care at the home is present in the home so long as the childcare provider notifies clients that there is a firearm in the home.
  (3) A building, parking area, or portion of a building under the control of an officer of the executive or legislative branch of the state government, except as allowed pursuant to paragraph (2) of subdivision (b) of Section 171c.
  (4) A building designated for a court proceeding, including matters before a superior court, district court of appeal, or the California Supreme Court, parking area under the control of the owner or operator of that building, or a building or portion of a building under the control of the Supreme Court, unless the person is a justice, judge, or commissioner of that court.
  (5) A building, parking area, or portion of a building under the control of a unit of local government, unless the firearm is being carried for purposes of training pursuant to Section 26165.
  (6) A building, real property, and parking area under the control of an adult or juvenile detention or correctional institution, prison, or jail.
  (7) A building, real property, and parking area under the control of a public or private hospital or hospital affiliate, mental health facility, nursing home, medical office, urgent care facility, or other place at which medical services are customarily provided.
  (8) A bus, train, or other form of transportation paid for in whole or in part with public funds, and a building, real property, or parking area under the control of a transportation authority supported in whole or in part with public funds.
  (9) A building, real property, and parking area under the control of a vendor or an establishment where intoxicating liquor is sold for consumption on the premises.

# CALIFORNIA DEPARTMENT OF JUSTICE
# BUREAU OF FIREARMS
# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

(10) A public gathering or special event conducted on property open to the public that requires the issuance of a permit from a federal, state, or local government and sidewalk or street immediately adjacent to the public gathering or special event but is not more than 1,000 feet from the event or gathering, provided this prohibition shall not apply to a licensee who must walk through a public gathering in order to access their residence, place of business, or vehicle.
(11) A playground or public or private youth center, as defined in Section 626.95, and a street or sidewalk immediately adjacent to the playground or youth center.
(12) A park, athletic area, or athletic facility that is open to the public and a street or sidewalk immediately adjacent to those areas, provided this prohibition shall not apply to a licensee who must walk through such a place in order to access their residence, place of business, or vehicle.
(13) Real property under the control of the Department of Parks and Recreation or Department of Fish and Wildlife, except those areas designated for hunting pursuant to Section 5003.1 of the Public Resources Code, Section 4501 of Title 14 of the California Code of Regulations, or any other designated public hunting area, public shooting ground, or building where firearm possession is permitted by applicable law.
(14) Any area under the control of a public or private community college, college, or university, including, but not limited to, buildings, classrooms, laboratories, medical clinics, hospitals, artistic venues, athletic fields or venues, entertainment venues, officially recognized university-related organization properties, whether owned or leased, and any real property, including parking areas, sidewalks, and common areas.
(15) A building, real property, or parking area that is or would be used for gambling or gaming of any kind whatsoever, including, but not limited to, casinos, gambling establishments, gaming clubs, bingo operations, facilities licensed by the California Horse Racing Board, or a facility wherein banked or percentage games, any form of gambling device, or lotteries, other than the California State Lottery, are or will be played.
(16) A stadium, arena, or the real property or parking area under the control of a stadium, arena, or a collegiate or professional sporting or eSporting event.
(17) A building, real property, or parking area under the control of a public library.
(18) A building, real property, or parking area under the control of an airport or passenger vessel terminal, as those terms are defined in subdivision (a) of Section 171.5.
(19) A building, real property, or parking area under the control of an amusement park.
(20) A building, real property, or parking area under the control of a zoo or museum.
(21) A street, driveway, parking area, property, building, or facility, owned, leased, controlled, or used by a nuclear energy, storage, weapons, or development site or facility regulated by the federal Nuclear Regulatory Commission.
(22) A church, synagogue, mosque, or other place of worship, including in any parking area immediately adjacent thereto, unless the operator of the place of worship clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.
(23) A financial institution or parking area under the control of a financial institution.
(25) A police, sheriff, or highway patrol station or parking area under control of a law enforcement agency.
(25) A polling place, voting center, precinct, or other area or location where votes are being cast or cast ballots are being returned or counted, or the streets or sidewalks immediately adjacent to any of these places.
(26) Any other privately owned commercial establishment that is open to the public, unless the operator of the establishment clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.
(27) Any other place or area prohibited by other provisions of state law.
(28) Any other place or area prohibited by federal law.
(29) Any other place or area prohibited by local law.

# CALIFORNIA DEPARTMENT OF JUSTICE
# BUREAU OF FIREARMS
# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

(b) Notwithstanding subdivision (a), except under paragraph (21) or (28) of subdivision (a), a licensee may transport a firearm and ammunition within their vehicle so long as the firearm is locked in a lock box, as defined in subdivision (y) of Section 4082 and subdivision (b) of Section 4094 of Title 11 of the California Code of Regulations, and the lock box is a firearm safety device, as defined in Section 16540, that is listed on the department's Roster of Firearm Safety Devices Certified for Sale pursuant to Sections 23650 and 23655. Nothing in this subdivision is intended to preempt local laws placing more restrictive requirements upon the storage of firearms in vehicles.

(c) Notwithstanding subdivision (a), except under paragraph (21) or (28) of subdivision (a), a licensee prohibited from carrying a concealed firearm into the parking area of a prohibited location specified in subdivision (a) shall be allowed to:

(1) Transport a concealed firearm or ammunition within a vehicle into or out of the parking area so long as the firearm is locked in a lock box.

(2) Store ammunition or a firearm within a locked lock box and out of plain view within the vehicle in the parking area. Nothing in this paragraph is intended to preempt local laws placing more restrictive requirements upon the storage of firearms in vehicles.

(3) Transport a concealed firearm in the immediate area surrounding their vehicle within a prohibited parking lot area only for the limited purpose of storing or retrieving a firearm within a locked lock box in the vehicle's trunk or other place inside the vehicle that is out of plain view.

(d) For purposes of subdivision (c), a lock box is an item as defined in subdivision (b) of Section 4082 and subdivision (y) of Section 4094 of Title 11 of the California Code of Regulations, which is a firearm safety device, as defined in Section 16540, that is listed on the Department's Roster of Firearm Safety Devices Certified for Sale pursuant to Sections 23650 and 23655.

(e) Except in the places specified in paragraph (14) of subdivision (a), a licensee shall not be in violation of this section while they are traveling along a public right-of-way that touches or crosses any of the premises identified in subdivision (a) if the concealed firearm is carried on their person in accordance with the provisions of this act or is being transported in a vehicle by the licensee in accordance with all other applicable provisions of law. Nothing in this section allows a person to loiter or remain in a place longer than necessary to complete their travel.

(f) Nothing in this section shall prohibit the carrying of a firearm where it is otherwise expressly authorized by law.

CALIFORNIA DEPARTMENT OF JUSTICE
BUREAU OF FIREARMS

# STANDARD INITIAL AND RENEWAL APPLICATION FOR LICENSE TO CARRY A WEAPON CAPABLE OF BEING CONCEALED

## Section 7 - Agreement to Restrictions and to Hold Harmless

I accept and assume all responsibility and liability for, injury to, or death of any person, or damage to any property which may result through an act or omission of either the licensee or the licensing authority. In the event any claim, suit or action is brought against the licensing authority, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the licensing authority, its chief officer or any of its employees from such claim, suit, or action.

I understand that the acceptance of any application by the licensing authority does not guarantee the issuance of a CCW license and that fees and costs are not refundable if denied. I further understand that if my application is approved and I am issued a CCW license, that the license is subject to restrictions placed upon it and that misuse of the license will cause an automatic revocation and possible arrest. I am aware that any use of a firearm may bring criminal action or civil liability against me.

I have read, understand, and agree to the CCW license liability clauses, conditions, and restrictions stated in this application and Agreement to Restrictions and to Hold Harmless.

I have read and understand the applicable Penal Code sections regarding false statements on a CCW Application, manslaughter, killing in defense of self or property, limitation on self-defense and defense of property, firearm storage and access by children or prohibited persons, and prohibited places, stated in this application.

I have read and understand the Firearms Prohibiting Categories enclosed with this application. I further acknowledge that these prohibiting categories can be amended or expanded by state or federal legislative or regulatory bodies and that any such amendment or expansion may affect my eligibility to hold a CCW license.

Applicant Signature _______________ Date _______________

Witness Signature _______________ Badge Number _______________ Date _______________

## Section 8 - Release of Information and Declaration

I hereby give permission to the licensing authority to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation. I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

Notwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 7920.000 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Applicant Signature _______________ Date _______________

Witness Signature _______________ Badge Number _______________ Date _______________

# EXHIBIT B

# Apply for concealed carry weapon license

APPLY FOR A CCW PERMIT

Concealed carry weapon
55 West Younger Avenue
San Jose, CA 95110
View on map
(408) 808-4942
CCW@shf.sccgov.org




The Sheriff may issue a concealed weapons license to law-abiding residents of the County of Santa Clara who are not prohibited from possessing, owning, or purchasing a firearm capable of being concealed upon his or her person, and comply with the provision of Penal Code Sections 26150–26225.

In accordance with PC §26150(a), and subject to department procedures, residents of the County of Santa Clara may submit an application to the Sheriff's CCW Unit.

*Please note that police chiefs also have the authority to grant CCW licenses to residents of their cities. If you are a resident of an incorporated city within the County of Santa Clara, the Sheriff's Office encourages you to apply to your police chief for a CCW license.*

Applications will be individually investigated. An applicant interview will be required as part of this investigation. Applicants should be reminded that all information disclosed in the application may be subject to public disclosure. Applicants are encouraged to read the application packet in its entirety. The initial application process consists of a series of steps.

The possession of a license to carry a concealed weapon is subject to revocation by either the Sheriff or the California Attorney General's Office when licensees are found to be in violation of policy or legal statutes. The possession of a license to carry a concealed weapon does not exempt any individual from criminal prosecution or civil liability, other than the act of carrying the specific firearm(s) within the State of California. The issuance of a license to carry a concealed weapon does not excuse or justify any behavior that might otherwise be a violation of any law pertaining to weapons. The Sheriff may place restrictions on any license that the Sheriff deems warranted. The restrictions may include the time, place, manner, and circumstances under which the licensee may carry the weapon.

If you need any technical support for your online application, please e-mail Permitium support at help@permitium.com.

If you have any questions, please call (408) 808-4942 or e-mail the Sheriff's Office CCW mailbox at CCW@shf.sccgov.org.

## Disclosure of campaign contributions

As of January 1, 2023, the Levine Act (Government Code Section 84308) applies to local government proceedings involving a license, permit, or other entitlement for use. Pursuant to Government Code Section 84308, local elected officials may not accept, solicit, or direct a contribution of more than $250 from any party or their agent, or from any participant or their agent, while a proceeding involving a license, permit, or other entitlement for use is pending before them or for 12 months after a final decision is rendered in that proceeding. Any local elected official who has received a contribution of more than $250 within the preceding 12 months from a party or their agent, or from a participant or their agent, shall disclose that fact on the record of the proceeding and shall not make, participate in making, or in any way attempt to use their official position to influence the decision.

Pursuant to Government Code Section 84308(d), any party to a covered proceeding is required, and any participant to such a proceeding is strongly urged, to disclose on the record of the proceeding any contribution, including aggregated contributions, of more than $250 that they or their agent have made within the preceding 12 months to a local elected official. The disclosure must include the name of the party or participant and any other person making the contribution; the name of the recipient; the amount of the contribution; and the date the contribution was made. The disclosure shall occur in the manner required under Government Code Section 84308 and any applicable state or local regulations, opinions, or policies. No party or their agent, and no participant or their agent, shall make a contribution of more than $250 to any local elected official during the proceeding or for 12 months after a final decision is rendered in that proceeding.

The foregoing statements do not constitute legal advice, and parties and participants are urged to consult with their own legal counsel regarding the requirements of the law.

*To make a disclosure and to access disclosures submitted to the County, visit the Office of the Clerk of the Board of Supervisors to complete the County of Santa Clara's Levine Act Disclosure Form. The form must be completed by a party to a contract with the County of Santa Clara (or that party's agent) at the time the party submits a response to a Request for Proposals or other competitive solicitation, enters into contract negotiations with the County, or executes a contract with the County, whichever is earliest. The form must be completed by a party to a license, permit, or other entitlement proceeding before the County at the time the party (or their agent) submits the license, permit, or entitlement application to the County. The requirement to submit this form applies where a party (or that party's agent) has contributed more than $250 to a local elected official within the 12 months prior to the proceeding.*

The party (or their agent) must submit a supplemental form if they make any new reportable contributions while the contract, license, permit, or other entitlement is being considered.

The party (or their agent) must also use this form if they need to correct any previously submitted form.

The completed form submitted to the County of Santa Clara is a public record.

COMPLETE AND SUBMIT LEVINE ACT FILING

## FAQ

CALIFORNIA FIREARM LAWS

For more information regarding California's firearms laws:

- General Information +
- Application Process +
- Firearms +
- Following CCW Rules and Compliance +

## Documents

- California Firearms Law Summary
- CCW Policy
- CCW Schedule A
- Approved CCW Training Providers
- CCW Firearms Proficiency Form
- Livescan Form

## Press releases

- CA State Sheriff's Association Statement on CCW Permittee Data Breach
- CA Attorney General Press Release on Data Breach of CCW Permittee Information



©2025 COUNTY OF SANTA CLARA. ALL RIGHTS RESERVED.

# EXHIBIT C

# License to Carry a Firearm

## 207.1 PURPOSE AND SCOPE

The Sheriff is given the statutory authority based on objectively ascertainable criteria to issue a license to carry a firearm to residents within the community. (Penal Code § 26150). This policy, with the attached Schedule A, provides a written process for the application and issuance of such licenses. Pursuant to Penal Code § 26160, this policy shall be made accessible to the public.

### 207.1.1 APPLICATION OF POLICY

Nothing in this policy shall preclude the chief or other head of a municipal police department from entering into an agreement with the Sheriff of the County or preclude the Sheriff of the County from entering into an agreement with the chief of any municipal police department, to process all applicable applications and license renewals for the carrying of concealed weapons. (Penal Code § 26150; Penal Code § 26155).

## 207.2 POLICY

The Santa Clara County Sheriff’s Office will fairly, objectively, and impartially consider all applications to carry firearms in accordance with applicable law and this policy.

## 207.3 QUALIFIED APPLICANTS

In order to qualify for a license to carry a firearm, the applicant must meet certain requirements, including all of the following requirements:

(a) Not be a disqualified person as defined under Penal Code § 26202. (Penal Code § 26150).

(b) Be at least 21 years of age. (Penal Code § 26150; Penal Code § 29610).

(c) Present clear evidence of the applicant’s identity and age. (Penal Code § 26150).

(d) Be a resident of Santa Clara County or a city within the county. (Penal Code § 26150).

(e) Complete required training. (Penal Code § 26150; Penal Code § 26165).

(f) Provide proof of recorded ownership with the California Department of Justice (DOJ) of the specific firearm(s) to be licensed. (Penal Code § 26150).

(g) Fully complete an application on a form prescribed by the California DOJ (Penal Code § 26175) that will include substantial personal information. Much of the information in the application may be subject to public access under the California Public Records Act.

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

(h) Be free from criminal convictions that would disqualify the applicant from carrying a firearm. Fingerprints will be required, and a complete criminal background check will be conducted.

(i) Pay all associated application fees. These fees are authorized by California statute and shall not be refunded if the application for the license is denied.

## 207.4 APPLICATION PROCESS

The application process for a license to carry a firearm shall consist of multiple steps. These steps, and the associated application materials, are outlined in Schedule A. Upon the successful completion of each step, the applicant will advance to the next step until the process is completed and the license is either issued or denied.

(a) Applicants must complete the standard State application form to be signed under penalty of perjury. (Penal Code § 26175). Any applicant who provides false information or statements on the application may be prosecuted for a criminal offense. (Penal Code § 26180). An application will be deemed completed if it is filed in writing, signed by the applicant, and contains all information required by the application, as determined by the Sheriff’s Office. (Penal Code § 26175).

(b) If at any step of the application process, the Sheriff or designee determines that the application package is incomplete, the Sheriff or authorized designee may do either of the following:

1. Require the applicant to complete the package before any further processing.

2. Issue a denial if the materials submitted at the time demonstrate that the applicant would not qualify for a license to carry a firearm even if the package was completed (e.g., not a resident, disqualifying criminal conviction, or a disqualified person).

(c) **Criminal Background Check:** As described in Schedule A, applicants will be required to submit to a LIVESCAN criminal background check and a local records check as part of the application process. Upon receipt of the criminal background information from the California DOJ and Federal Bureau of Investigation (FBI) and a review of local records, a committee within the Sheriff’s Office will conduct an additional evaluation.

1. No person determined to fall within the prohibited class described in Penal Code § 29800, Penal Code § 29900, Welfare and Institutions Code § 8100, or Welfare and Institutions Code § 8103 will be issued a license to carry a firearm.

2. A license shall not be issued if the California DOJ determines that the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. (Penal Code § 26195).

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

3. A license shall not be issued to an applicant if their criminal background check reveals information establishing that they are a disqualified person (as that term is defined below).

(d) **Interview of Applicant:** As part of the application process, the applicant shall be scheduled for a personal interview with the Sheriff or authorized designee to determine if the applicant is a disqualified person. During this interview, there will be further discussion of the applicant's application materials, any information learned through the background investigation, and any potential restrictions or conditions that might be placed on the license. (Penal Code § 26202).

(e) **Character References**: The applicant shall be required to provide at least three character references who meet the requirements set forth in Penal Code § 26175. The Sheriff's Office will conduct an interview with the character references provided by the applicant consistent with Penal Code § 26202.

(f) **Psychological Testing:** As described in Schedule A, the applicant shall satisfactorily complete a psychological exam. Applicants will be referred to a licensed psychologist acceptable to the Sheriff's Office for psychological testing. The cost of such psychological testing shall be paid by the applicant. The purpose of any such psychological testing is intended only to identify any outward indications or history of psychological issues that might render the applicant unfit to carry a firearm. This testing is not intended to certify in any other respect that the applicant is psychologically fit. If it is determined that the applicant is not a suitable candidate for carrying a firearm, the applicant shall be removed from further consideration. (Penal Code §§ 26190, 26202).

(g) **Training and Firearm Safety:** As described in Schedule A, the applicant shall successfully complete and pay for a course of training approved by the Sheriff's Office that complies with Penal Code § 26165. The applicant shall not be required to pay for any training courses before the initial determination of whether the applicant is a disqualified person pursuant to Penal Code § 26202.

1. This firearm training and qualification course shall include live-fire shooting exercises on a firing range and a demonstration by the applicant of safe handling of, and shooting proficiency with, each firearm that the applicant is applying to be licensed to carry.

2. The applicant will be required to submit proof of the course completion and all other required forms. The cost of this course and certifications shall be the responsibility of the applicant.

3. For the list of authorized training providers, refer to the attached Schedule A.

4. The California POST approved firearms certification course, which meets or exceeds the minimum CCW training standards, may be accepted for

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

Santa Clara County Reserve Deputy Sheriffs in lieu of the courses outlined on the Schedule A vendor list.

5. The applicant may be required to submit any firearm to be considered for a license to the Sheriff's Office Rangemaster or other office authorized gunsmith, at no cost to the applicant, for a full safety inspection. The Sheriff reserves the right to deny a license for any firearm that has been altered from the manufacturer's specifications or that is unsafe. (Penal Code § 31910). Upgrades to gun sights and grips that do not affect the safe operation of the firearm are permitted.

(h) **Authority to Conduct Additional Investigation:**

1. If at any step of the application process, the Sheriff or designee identifies discrepancies in the applicant's application or background investigation, the applicant may be required to undergo a polygraph examination, at no cost to the applicant.

2. The Sheriff or authorized designee may engage in such further investigative efforts as necessary to determine if the applicant satisfies the statutory criteria for a license. However, the Sheriff or authorized designee may not require an applicant to provide additional information beyond that required by the standard California DOJ application form, except to the extent required to clarify or interpret information provided by the applicant on the standard application form. (Penal Code § 26175(g)).

(i) **Fees:** Schedule A describes the online portal listing the applicable fees and when they must be paid. Additional fees may be required for fingerprinting, training, or psychological testing, in addition to the application fee. Payment of related fees may be waived if the applicant is a duly appointed reserve peace officer as defined in Penal Code § 830.6(a) or (b). (Penal Code § 26170).

(j) **Issuance or Denial of Application:** The Sheriff or designee shall give written notice to the applicant indicating if the license is approved or denied. The Sheriff or designee shall give this notice within 120 days of receiving the initial completed application for a new license or a license renewal, or within 30 days after receipt of the applicant's criminal background check from the California DOJ, whichever is later. If the license is denied, the notice shall state which requirement was not satisfied and inform the applicant of the right to request a review of the decision from the superior court. (Penal Code §§ 26202 and 26206).

### 207.4.1 DISQUALIFIED PERSON DETERMINATION (Penal Code § 26202)

Absent a contrary determination by a court, an applicant is a "disqualified person" who cannot receive or renew a CCW license if any of the following apply:

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

(a) The applicant has been subject to any restraining order, protective order, or other type of court order issued pursuant to any of the following statutes, unless that order expired or was vacated or otherwise canceled more than five years before the Sheriff received the completed application: Penal Code §§ 136.2 or 18100; Code of Civil Procedure §§ 527.6, 527.8, or 527.85; Family Code §§ 6240 *et seq.* or 6300 *et seq.*; or Welfare and Institutions Code §§ 213.5, 304, 362.4, 726.5, or 15657.03;

(b) In the 10 years prior to the Sheriff receiving the completed application, the applicant has been convicted of an offense listed in Penal Code §§ 422.6, 422.7, 422.75, or 29805;

(c) The applicant has engaged in an unlawful or reckless use, display, or brandishing of a firearm;

(d) In the 10 years prior to the Sheriff receiving a completed application, the applicant has been charged with an offense listed in Penal Code §§ 290, 667.5, 1192.7, 1192.8, or 29805 that was dismissed pursuant to a plea or dismissed with a waiver pursuant to *People v. Harvey*;

(e) In the 5 years prior to the Sheriff receiving a completed application, the applicant has been committed to or incarcerated in county jail or state prison for, or on probation, parole, post-release community supervision, or mandatory supervision as a result of, a conviction of an offense an element of which involves controlled substances or alcohol;

(f) The applicant is currently abusing controlled substances or alcohol;

(g) In the 10 years prior to the Sheriff receiving a completed application, the applicant has experienced the loss or theft of multiple firearms (including both the loss of more than one firearm on the same occasion or the loss of a single firearm on more than one occasion) due to the applicant's lack of compliance with federal, state, or local law regarding storing, transporting, or securing the firearm;

(h) The applicant failed to report the loss of a firearm as required by Penal Code § 25250 or any other state, federal, or local law requiring the reporting of the loss of a firearm;

(i) The applicant has been or is reasonably likely to be a danger to self, others, or the community at large, as demonstrated by anything in the application for a license, or through an investigation as described in Penal Code § 26202(b), or as shown by the results of any psychological assessment, including but not limited to testing under Penal Code § 26190;

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

(j) The applicant has been convicted of contempt of court under Penal Code § 166.

In the event that an application is denied on the basis that the applicant is deemed a disqualified person, the denial shall state the reason why the determination was made, inform the applicant that they may request a hearing from a court to review the denial, and provide the applicant with a copy of the California DOJ's Request for Hearing to Challenge Disqualified Person Determination form. (Penal Code §§ 26202; 26205).

## 207.5 LIMITED BUSINESS LICENSE TO CARRY A CONCEALED FIREARM

The authority to issue a limited business license to carry a concealed firearm to a non-resident applicant is granted only to the sheriff of the county in which the applicant works. A chief of a municipal police office may not issue limited licenses. (Penal Code § 26150)

An individual who is not a resident of the county but who otherwise successfully completes all parts of the application process described above and in Schedule A, may apply for and be issued a limited license subject to approval by the Sheriff and subject to the following:

(a) The applicant physically spends a substantial period of working hours in the applicant's principal place of employment or business within Santa Clara County. (Penal Code § 26150).

(b) Such a license will be valid for a period not to exceed 90 days from the date of issuance. (Penal Code § 26220).

(c) The applicant shall provide a copy of the license to the licensing authority of the city or county in which the applicant resides. (Penal Code § 26220).

(d) Any application for renewal or reissuance of such a license may be granted only upon concurrence of the original issuing authority and the licensing authority of the city or county in which the applicant resides. (Penal Code § 26220).

(e) The license shall be valid only in the county in which the license was originally issued. (Penal Code § 26220).

## 207.6 ISSUED FIREARMS LICENSES

In the event a license to carry a firearm is issued by the Sheriff, the following shall apply:

(a) The license will be subject to any and all reasonable restrictions or conditions the Sheriff or designee has deemed warranted, including restrictions as to the time, place, manner and circumstances under which the person may carry the firearm.

1. All such restrictions or conditions shall be conspicuously noted on any license issued. (Penal Code § 26200).

2. The licensee will be required to sign a Restrictions and Conditions Agreement. Any violation of any of the restrictions and conditions may result in the immediate revocation of the license.

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

(b) The license shall be laminated, bearing a photograph of the licensee with the expiration date, type of firearm, restrictions and other pertinent information clearly visible.

1. Each license shall be numbered and clearly identify the licensee.

2. All licenses shall be subjected to inspection by the Sheriff or any law enforcement officer.

(c) The license will be valid for a period not to exceed two years from the date of issuance. (Penal Code § 26220).

1. A license issued to a state or federal magistrate, commissioner, or judge will be valid for a period not to exceed three years.

2. A license issued to any reserve peace officer as defined in Penal Code § 830.6(a) or (b), or any custodial officer employed by the Sheriff as provided in Penal Code § 831.5, will be valid for a period not to exceed four years, except that such license shall be invalid upon the individual's conclusion of service as a reserve or custodial officer.

(d) If the licensee's place of residence was the basis for issuance of a license and the licensee moves out of the county of issuance, the license shall expire 90 days after the licensee has moved. (Penal Code § 26210).

(e) The licensee shall notify the Sheriff's Office in writing within 10 days of any change of place of residency. Notice shall be provided as specified in Schedule A. Failure to notify the Sheriff's Office of a change in the place of residency may result in revocation of the licensee's license.

### 207.6.1 LICENSE RESTRICTIONS (Penal Code § 26200)

(a) Licenses issued by the Sheriff shall be subject to restrictions that prohibit the licensee from:

1. Consuming any alcoholic beverage while armed.

2. Being in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption while armed.

3. Being under the influence of any medication causing physical or mental impairment or any illicit drug while armed.

4. Carrying a concealed weapon not listed on the license.

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

5. Carrying a firearm for which they are not an owner (with certain exception for licensees that have been deputized as peace officers).

6. Falsely representing themself as a peace officer.

7. Engaging in an unjustified display of a deadly weapon.

8. Failing to carry the license on their person.

9. Impeding a peace officer in the conduct of their activities.

10. Refusing to show the license or surrender firearm to a peace officer upon request.

11. Violating any federal, state, or local criminal law.

12. Carrying more than two firearms under the licensee's control at one time.

13. Bringing a concealed weapon into prohibited areas such as federal, state or local public buildings, public meetings, airports, courthouses, mass transit facility sterile areas (Penal Code § 171.7), or any other areas where firearms are prohibited by local, state or federal laws.

14. Bringing a concealed weapon into certain sensitive locations listed in Penal Code § 26230.[1]

15. Committing any crime. Licensees must report any arrest to Sheriff's Office CCW Unit within 10 days of the arrest.

(b) The above list is non-exhaustive and does not preclude the Sheriff or authorized designee from imposing other reasonable restrictions as to the time, place, manner, and circumstances under which the licensee may carry a concealed weapon. (Penal Code § 26200).

(c) The Sheriff reserves the right to inspect any license or licensed firearm at any time.

(d) The alteration of any previously approved firearm including, but not limited to adjusting the trigger pull, or modifications beyond sight and grip upgrades shall void any license and serve as grounds for revocation.

(e) The applicant must disclose, when stopped or detained by law enforcement, their

[1] On September 6, 2024, the Ninth Circuit Court of Appeals granted a preliminary injunction that prohibits enforcement of the provision banning CCW licensees/permitholders from carrying concealed weapons in certain sensitive locations. *Wolford v. Lopez*, 23-4356, 2024 WL 4097642 8946212, (9th Cir. Sept. 6, 2024). Schedule A identifies the particular sensitive locations and the parking and public appurtenant areas adjacent to those sensitive locations that are subject to the preliminary injunction. An asterisk (*) denotes sensitive locations that are subject to the preliminary injunction.

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

status as a CCW license holder when they are carrying a weapon on their person.

### 207.6.2 AMENDMENTS TO LICENSES

Any licensee may apply to amend a license at any time during the period of validity by completing and submitting a State Standard Modification form online and providing the additional information and fees described in Schedule A. An applicant may modify their license in order to:

(a) Add or delete authority to carry a firearm listed on the license.

(b) Change restrictions or conditions previously placed on the license.

(c) Change the address or other personal information of the licensee. (Penal Code § 26210)

In the event that any amendment to a valid license is approved by the Sheriff, a new license will be issued reflecting the amendment. An amendment to any license will not serve to extend the original expiration date and an application for an amendment will not constitute an application for renewal of the license.

### 207.6.3 REVOCATION OF LICENSES

Any license issued pursuant to this policy may be immediately revoked by the Sheriff for any of the following reasons:

(a) The licensee has violated any of the restrictions or conditions placed upon the license. (Penal Code § 26195).

(b) The licensee is prohibited by state or federal law from owning or purchasing a firearm. (Penal Code § 26195).

(c) Any information provided by the licensee in connection with their application for a new or renewal license is inaccurate or incomplete. (Penal Code § 26195).

(d) The licensee is determined to be within a prohibited class described in Penal Code § 29800, Penal Code § 29805, Penal Code § 29900, Welfare and Institutions Code § 8100, Welfare and Institutions Code § 8103 or any state or federal law.

(e) The licensee has become a disqualified person and cannot receive such a license under Penal Code § 26202. (Penal Code § 26195).
The issuance of a license by the Sheriff shall not entitle the holder to either a property or liberty interest as the issuance, amendment, or revocation of such license remains exclusively within the authority of the Sheriff as set forth herein.

If any license is revoked, the Sheriff's Office will immediately notify the licensee in writing and the California DOJ. (Penal Code § 26195).

### 207.6.4 LICENSE RENEWAL

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

No later than 90 days prior to the expiration of any valid license to carry a firearm, the licensee may apply to the Sheriff for a renewal by:

(a) Completing a renewal application and submitting the additional information described in Schedule A.

(b) Completing a Sheriff's Office-approved training course pursuant to Penal Code § 26165.

(c) Submitting any firearm to be considered for a license renewal to the Rangemaster for a full safety inspection. The Sheriff reserves the right to deny a license for any firearm that has been altered from the manufacturer's specifications or that is unsafe. (Penal Code § 31910).

(d) Paying a non-refundable renewal application fee.

(e) The Sheriff may choose to engage in additional investigative efforts, including possible additional psychological testing if there is compelling evidence of a public safety concern. The applicant may be charged for the cost of the additional assessment (Penal Code § 26190).

Once the Sheriff or designee has verified the successful completion of the renewal process, the renewal of the license to carry a firearm will either be granted or denied. Prior issuance of a license shall not entitle any licensee to any property or liberty right to renewal.

Whether an application for renewal is approved or denied, the applicant shall be notified in writing within 120 days of the renewal application (Penal Code § 26205).

## 207.7 OFFICE REPORTING AND RECORDS

Pursuant to Penal Code § 26225, the Sheriff shall maintain a record of the following and immediately provide copies of each to the California DOJ:

(a) The denial of a license

(b) The denial of an amendment to a license

(c) The issuance of a license

(d) The amendment of a license

(e) The revocation of a license

The Sheriff shall annually submit to the State Attorney General the total number of licenses to carry firearms issued to reserve peace officers and judges.

## 207.8 CONFIDENTIAL RECORDS

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

The home address and telephone numbers of any peace officer, public defender, prosecutor, magistrate, court commissioner or judge contained in an application shall not be considered a public record. (Government Code § 7923.805).

Any information in an application for a license to carry a firearm that indicates when or where the applicant is vulnerable to attack or that concerns the applicant's medical or psychological history or that of his/her family shall not be considered a public record. (Government Code § 7923.800).

## 207.9 POLICY REVIEW

This policy shall be reviewed at least once every two years.

## 207.10 POLICY TRACKING

| | |
|---|---|
| **Date of Origin:** | 10/11/2022 |
| **Review Date:** | 1/21/2027 |
| **Revision Date:** | |
| **Date Approved:** | 1/21/2025 |
| **Effective Date:** | 1/21/2025 |
| **Supersedes:** | New |
| **References** | Penal Code 136.2, PC 171.7, PC 290, PC 422.6, PC 422.7, PC 422.75, PC 667.5, PC 831.5, PC 1192.7, PC 1192.8, PC 18100, PC 25250, PC 26150, PC 26155, PC 26160, PC 26202, PC 26190, PC 26165, PC 26170, PC 26175, PC 26180, PC 26195, PC 26200, PC 26202, PC 26205, PC 26206, PC 26210, PC 26220, PC 26225, PC 26230, PC 29800, PC 29805, PC 29900, PC 31910, PC 830.6 (a) or (b), WIC 213.5, WIC 304, WIC 362.4, WIC 726.5, 8100, WIC 8103, WIC 15657.03, CCP 527.6, CCP 527.8 or 527.85, FC 6240 et seq or 6300 et seq, GC 7923.805, GC 7923.800, *Wolford v. Lopez*, 23-4356, 2024 WL 4097642 8946212, |
| **Regulatory Authority** | Penal Code 26150 |
| **Signature of Issuing Authority** | DocuSigned by: Robert Jonsen D2457E0380864DA... |

Copyright Lexipol, LLC 2025/01/21, All Rights Reserved.
Published with permission by Santa Clara County Sheriff's Office

# EXHIBIT D

# Schedule A

## INITIAL APPLICATION INSTRUCTIONS – READ CAREFULLY

## STEP 1

**NOTICE! FAILURE TO COMPLY WITH ANY SECTION OF THESE INSTRUCTIONS MAY RESULT IN DELAYS IN PROCESSING YOUR APPLICATION.**

1. You must be a resident of Santa Clara County who can legally own, purchase, and possess a firearm capable of being concealed upon your person. An individual who is not a resident of the county may apply for and be issued a limited license subject to approval by the Sheriff and subject to the following:

   (a) The applicant physically spends a substantial period of working hours in the applicant's principal place of employment or business within Santa Clara County. (Penal Code § 26150)

   (b) The applicant meets all other criteria for a concealed carry weapons license under Penal Code § 26150 and the Sheriff's Office Concealed Carry Weapons policy.

   (c) Such a license will be valid for a period not to exceed 90 days from the date of issuance. (Penal Code § 26220).

   (d) The applicant shall provide a copy of the license to the licensing authority of the city or county in which the applicant resides. (Penal Code § 26220).

   (e) Any application for renewal or reissuance of such a license may be granted only upon concurrence of the original issuing authority and the licensing authority of the city or county in which the applicant resides. (Penal Code § 26220).

   (f) The license shall be valid only in the county in which the license was originally issued. (Penal Code § 26220).

2. Complete the State Standard Application Online at scso.permitium.com. Please note that your application must be signed under penalty of perjury. Any applicant who provides false information or statements on the application may be prosecuted for a criminal offense.

3. If you are applying as a resident of Santa Clara County, you must obtain copies of the following items to INCLUDE WITH YOUR APPLICATION SUBMISSION:

   - Valid California Driver's License or California Identification Card
   - Your current Santa Clara County address must be on record with California Department of Motor Vehicles
   - Proof of Residency:

     - Copies of two (2) consecutive statements that reflect your name and your Santa Clara County residence address from one of the following service providers: (Statements must be dated within the last 90 days. We DO NOT accept past due statements. We DO NOT accept any items other than those listed.)

       - Gas/Electric
       - Water
       - Garbage
       - Home Internet
       - Cable/Satellite
       - Home Phone
       - Credit Card
       - Voter Registration Card
       - Homeowner Property Tax Exemption
       - Bank Account - **Mortgage Account Statements and Property Tax Statements NOT accepted**

   - Proof of recorded ownership with the California Department of Justice for the specific firearm(s) to be licensed.
   - Three character references.

     - At least one character reference must be a spouse, co-parent, fiancé(e), or dating partner, if applicable.
     - At least one character reference must be your cohabitant, if applicable. (Penal Code § 26202).

**<u>You must notify this office in writing within 10 days of any change of place of residency.</u>**

4. If you are applying for a Non-Resident Limited Business License to carry a concealed firearm, please submit the following items with your application submission:

   - Valid California Driver's License or California Identification Card.
   - Proof of employment at or ownership of a business within Santa Clara County.

- A statement under penalty of perjury that you physically spend a substantial period of working hours at the place of employment or business within Santa Clara County.
- Proof of recorded ownership with the California Department of Justice for the specific firearm(s) to be licensed.
- Three character references.

    - At least one character reference must be a spouse, co-parent, fiancé(e) or dating partner, if applicable.
    - At least one character reference must be your cohabitant, if applicable. (Penal Code § 26202).

**5.** Before your application can be processed and evaluated, you must pay **50 percent** of the application fee. You may choose to pay your fees online via the CCW web portal at scso.permitium.com. If you choose to pay at the time of your appointment, you must obtain a cashier's check or money order made payable to the **Santa Clara County Sheriff's Office.** The amount of the check will be determined by the type of license requested. Fees are subject to change as allowed by law. Penal Code §26190).

6. Once you have completed the above online application at scso.permitium.com and have included all necessary attachments, you and your character references will be required to schedule an interview with a Sheriff's Office representative. Your interview must be conducted in person. The interviews with your character references may be conducted in person, virtually, or telephonically. **Interviews are accepted by appointment only.** Any questions can be directed to the CCW Coordinator at CCW@shf.sccgov.org. All scheduled appointments are conducted at the following address:

   Santa Clara County Sheriff's Office
   55 W. Younger Ave.
   San Jose, CA 95110

7. Once the interviews and initial review of your application submission are complete, you will be notified in writing. Notification will be provided within 90 days of the date that you submitted a completed application.

   - If the Sheriff determines that your application ***does*** meet State requirements (i.e., that your application is complete, you meet the residency requirements, and you are not a disqualified person or otherwise disqualified from owning a firearm based on the information in your application form), you will receive information for scheduling a psychological test. The psychological office will contact you directly to schedule an appointment. Please note, the cost to the applicant for this testing will be paid directly to the testing company.

- If the Sheriff determines your application ***does not*** meet the State requirements because you are a disqualified person, a denial letter will be sent to you providing the reason(s) why the determination was made, inform you that you may request a hearing from a court to review and, provide you with a "Request for Hearing to Challenge Disqualified Person Determination" form. (Penal Code §§ 26202 and 26206).

8. Once the Sheriff's Office receives the result of your psychological test, you will receive notification in writing. Notification will be provided within 90 days of the date that you submitted a completed application.

   - If the psychological test determines that you are mentally fit to handle a concealed weapon, you will receive a notification with LIVESCAN (fingerprinting) scheduling information and applicable fees.

   - If the psychological test determines that you are reasonably likely to be a danger to self, others, or the community at large, a denial letter will be sent to you providing the reason(s) the determination was made, inform you of the reason why the determination was made and that you may request a hearing from a court and provide you with a "Request for Hearing to Challenge Disqualified Person Determination". (Penal Code §§26202 and 26206).

## STEP 2

### LIVESCAN - BACKGROUND CHECK

1. When you receive notification that your application has been advanced to Step 2, you will be instructed to schedule a LIVESCAN (fingerprinting) appointment (instructions provided in notification letter).

2. Upon successful completion of the application process (Step 4, below) the remaining fee can be paid through scso.permitium.com or by a cashier's check or money order, made payable to **Santa Clara County Sheriff's Office**.

3. A LIVESCAN criminal background check will be run through the California Department of Justice and the Federal Bureau of Investigation to determine your criminal history and whether you are eligible to possess a firearm. Concurrently, Sheriff's Office personnel will conduct a check of all local records systems for relevant information on the applicant.

4. When all requested responses from various agencies have been received, your file will be reviewed by the Sheriff's Office CCW Unit. If the CCW Unit determines that you are not prohibited from possessing a firearm based on the background check, you will be notified in writing and receive instructions on how to proceed to **Step 3** of the application process. If you are denied after this review, you will be notified in writing.

# STEP 3

## WEAPONS/RANGE QUALIFICATIONS AND TRAINING

1. Santa Clara County allows a CCW license holder to list **three (3) weapons on an issued license.**

2. Each CCW license holder is mandated by California state law to attend a firearms safety class. Individuals are also required to qualify with their weapon(s) under the direction of a qualified range master to ensure that each license holder is competent in the safe handling of firearms. The applicant must be the recorded owner for each of the firearms listed on the CCW license.

3. This firearm training and qualification course must be no less than 16 hours in length, be taught by a firearms instructor certified by the California Department of Justice, and include instruction on firearm safety, firearm handling, shooting technique, safe storage, legal methods to transport firearms and secure firearms in vehicles, laws governing where permit holders may carry firearms, laws regarding the permissible use of a firearm, and laws governing the permissible use of lethal force in self-defense. It must also include a component, no less than one hour in length, on mental health and mental resources. The course must require students to pass a written examination to demonstrate their understanding of the covered topics. It must also include live-fire shooting exercises on a firing range and a demonstration by the applicant of safe handling of and shooting proficiency with each firearm that the applicant is applying to be licensed to carry.

4. You must submit proof of training and qualification to the Sheriff's Office. However, please do not submit proof of training and qualification targets prior to Step 3 of the application process. Your training and qualification certification must be dated and submitted within 90 days of your approval notification. Failure to provide the qualification certificate within the required 90 days will result in a denial of the license.

5. Proof of training and qualification shall be uploaded into scso.permitium.com for review. Approved training vendors are listed in Attachment A.

6. Standards used for the live-fire shooting exercise can be found on the Sheriff's

Office webpage listed below, titled "CCW Firearms Proficiency Form" https://sheriff.santaclaracounty.gov/services/other-services/apply-concealed-carry-weapon-license

7. In addition to the training requirements, an applicant may be required to submit any firearm to be considered for a license to the Sheriff's Office Rangemaster or other office authorized gunsmith, at no cost to the applicant, for a full safety inspection. The Sheriff reserves the right to deny a license for any firearm that has been altered from the manufacturer's specifications or that is unsafe.

8. Upon successful completion of the application process (Step 4, below) the remaining fee can be paid through scso.permitium.com or by a cashier's check or money order, made payable to **Santa Clara County Sheriff's Office**. Fees are subject to change as allowed by law.

# STEP 4

## FINAL REVIEW

1. The Sheriff or designee will conduct a final review of the application after the training and qualification certification has been submitted.

2. If you are approved after this review, you will be advised of the approval in writing and a license will be generated and signed by the Sheriff.

3. The Sheriff may place restrictions on a license that they deem warranted. The restrictions may include time, place, manner, and circumstances under which the licensee may carry the weapon.

4. You will be contacted via the Online CCW Application program to schedule an appointment to pick up the license.

5. If you are not approved after this review, you will be notified in writing. The notification will state the requirement that was not satisfied and inform you that you may request a review of the decision from the superior court.

**Further questions regarding the application process can be sent to CCW@shf.sccgov.org**

# LICENSE RESTRICTIONS & CONDITIONS

(a) The Sheriff may place special restrictions limiting the time, place, manner and circumstances under which any license shall be valid. In general, these restrictions will prohibit the licensee from the following while carrying a weapon (Penal Code § 26200):

1. Consuming any alcoholic beverage or controlled substance;
2. Being in a place having a primary purpose of dispensing alcoholic beverages for onsite consumption;
3. Being under the influence of any alcoholic beverage, medication, or controlled substance (as described in Health and Safety Code §§ 11053–11058);
4. Carrying a firearm not listed on the license;
5. Carrying a firearm for which they are not the recorded owner (unless the firearm is registered to the agency for which the licensee has been deputized or appointed to serve as a peace officer and the licensee carries the firearm consistent with the agency's policies);
6. Falsely representing to a person that the licensee is a peace officer;
7. Engaging in an unjustified display of a deadly weapon;
8. Failing to carry the license on their person;
9. Impeding a peace officer in the conduct of their activities;
10. Refusing to display the license or to provide the firearm to a peace officer upon demand for purposes of inspecting the firearm;
11. Violating any federal, state, or local criminal law; and
12. Carrying more than two firearms under the licensee's control at one time;
13. Bringing a concealed weapon into sensitive locations such as, but no limited to, places of worship, financial institutions, polling places, playgrounds, parks, athletic venues, government controlled buildings or parking facilities, amusements parks, museums, or any other area where firearms are prohibited by local, state, or federal laws. (Penal Code § 26230);
14. Unjustified or unreasonable displaying of a firearm;
15. Loading the licensed firearm with illegal ammunition;
16. Carrying a concealed weapon not listed on the license.

(b) The above list is non-exhaustive and does not preclude the Sheriff or authorized designee from imposing other reasonable restrictions as to the time, place, manner, and circumstances under which the licensee may carry a concealed weapon.

(c) The applicant must disclose, when stopped or detained by law enforcement, their status as a CCW license holder when they are carrying a weapon on their person.

(d) Sensitive locations[1] [Penal Code § 26230]

Subject to the exceptions listed below, a person granted a CCW license may not carry a firearm on or into the following sensitive locations:

1. A place prohibited by the Gun-Free School Zone Act (Penal Code § 626.9).
2. A building, real property, or parking area under the control of a preschool or childcare facility, including a room or portion of a building under the control of a preschool or childcare facility, except that the operator of childcare facility in a home may own or possess the firearm in the home if no child under childcare is present in the home or the firearm is unloaded, stored in a locked container, and stored separately from ammunition when a child under childcare is present at the home and the operator provides notice to clients.
3. A building, parking area, or portion of a building under the control of an officer of the executive or legislative branch of the state government.
4. A building designated for a court proceeding (e.g., matters before a superior court, district court of appeal, or the California Supreme Court), parking area under the control of the owner or operator of that building, or a building or portion of a building under the control of the Supreme Court, unless the person is a justice, judge, or commissioner of that court.
5. A building, parking area, or portion of a building under the control of a unit of local government, unless the firearm is being carried for purposes of training pursuant to Penal Code § 26165.
6. A building, real property, and parking area under the control of an adult or juvenile detention or correctional institution, prison or jail.
7. *A building, real property, and parking area under the control of a public or private hospital or hospital affiliate, mental health facility, nursing home, medical office, urgent care facility or other place at which medical services are customarily provided.
8. *A bus, train, or other form of transportation paid for in whole or in part with public funds, and a building, real property, or parking area under the control of a transportation authority supported in whole or in part with public.

[1] On September 6, 2024, the Ninth Circuit Court of Appeals A granted a preliminary injunction that prohibits enforcement of the provision banning CCW licensees/permitholders from carrying concealed weapons in certain sensitive locations. *Wolford v. Lopez*, 23-4356, 2024 WL 4097642 8946212, (9th Cir. Sept. 6, 2024). An asterisk (*) denotes sensitive locations and adjacent parking and public appurtenant areas that are subject to the preliminary injunction.

9. A building, real property, and parking area under the control of a vendor or an establishment where intoxicating liquor is sold on the premises.
10. *A public gathering or special event conducted on property open to the public that requires the issuance of a federal, state, or local government permit—including any sidewalk or street immediately adjacent to but not more than 1,000 feet from the event or gathering—except that a CCW licensee may carry a firearm if they must walk through a public gathering in order to access their residence, place of business, or vehicle.
11. A playground or public or private youth center (as defined in Penal Code § 626.95), and an immediately adjacent street or sidewalk.
12. A park, athletic area, or athletic facility that is open to the public and a street or sidewalk immediately adjacent to those areas, except that a CCW licensee may carry a firearm if they must walk through such a place to access their residence, place of business, or vehicle.
13. Real property under the control of the Department of Parks and Recreation or Department of Fish and Wildlife (except areas designated for hunting pursuant to California law, or any other designated public hunting area, public shooting ground, or building where firearm possession is permitted by applicable law).
14. Any area under the control of a public or private community college, college, or university (e.g., buildings, classrooms, laboratories, medical clinics, hospitals, artistic venues, athletic fields or venues, entertainment venues, officially recognized university-related organization properties, whether owned or leased, and any real property, including parking areas, sidewalks, and common areas).
15. A building, real property, or parking area that is or would be used for gambling or gaming of any kind (e.g., casinos, gambling establishments, gaming clubs, bingo operations, facilities licensed by the California Horse Racing Board, or a facility wherein banked or percentage games, any form of gambling device, or lotteries other than the California State Lottery are or will be played).
16. A stadium, arena, or the real property or parking area under the control of a stadium, arena, or a collegiate or professional sporting or eSporting event.
17. A building, real property, or parking area under the control of a public library.
18. A building, real property, or parking area under the control of an airport or passenger vessel terminal, as those terms are defined in subdivision (a) of Section 171.5.
19. A building, real property, or parking area under the control of an amusement park.
20. A building, real property, or parking area under the control of a zoo or museum.

21. A street, driveway, parking area, property, building, or facility, owned, leased, controlled, or used by a nuclear energy, storage, weapons, or development site or facility regulated by the federal Nuclear Regulatory Commission.
22. *A church, synagogue, mosque, or other place of worship, including in any parking area immediately adjacent thereto, unless the operator of the place of worship clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that license holders are permitted to carry firearms on the property. Signs shall be of uniform design prescribed by the Department of Justice and shall be a least four inches by six inches in size.
23. *A financial institution or parking area under the control of a financial institution.
24. A police, sheriff, or highway patrol station or parking area under control of a law enforcement agency.
25. A polling place, voting center, precinct, or other area or location where votes are being cast or cast ballots are being returned or counted, or the streets or sidewalks immediately adjacent to any of these places.
26. *Any other privately owned commercial establishment that is open to the public, unless the operator of the establishment clearly and conspicuously posts a sign (at least four inches by six inches in size and conforming to the design prescribed by the California DOJ prescribed design) at the entrance of the building or on the premises indicating that license holders are permitted to carry firearms on the property.
27. Any other place or area prohibited by other provisions of local, state, or federal law.

The following are exceptions to the prohibition on a licensee carrying a concealed firearm in the sensitive locations listed above:

1. A licensee may transport a firearm or ammunition within their vehicle so long as the firearm is locked in a lock box and the lock box is a firearm safety device that is listed on the California DOJ's Roster of Firearm Safety Devices Certified for Sale.[2]

2. A licensee prohibited from carrying a concealed firearm into the parking area of a prohibited location must be allowed to do the following: (1) transport a concealed firearm or ammunition within a vehicle into or out of the parking area if the firearm is locked in a lock box; (2) store ammunition of a firearm within a locked lock box

[2] This exception does not apply to areas regulated by the federal Nuclear Regulatory Commission or areas where firearms are prohibited under federal law.

out of plain view within the vehicle in the parking area; and (3) transport a concealed firearm in the immediate area surrounding their vehicle within a prohibited parking lot area, but only for the limited purpose of storing or retrieving a firearm within a locked lock box in the vehicle's trunk or other place inside the vehicle and out of plain view.[3]

3. A licensee may travel along a public right-of-way that touches or crosses the premises of the sensitive locations listed above if the concealed firearm is carried on their person or being transported in a vehicle in accordance with the law.[4] However, the licensee may not loiter or remain in place longer than necessary to complete their travel.

The Sheriff reserves the right to inspect any license or licensed firearm at any time.

The alteration of any previously approved firearm including, but not limited to adjusting the trigger pull, adding laser sights or modifications shall void any license and serve as grounds for revocation.

## Restrictions and Conditions Agreement

I acknowledge and fully understand the license restrictions.

Print Name: ____________________________ Date: _________________

Signature: ___________________________________________________

[3] This exception also does not apply to areas regulated by the federal Nuclear Regulatory Commission or areas where firearms are prohibited under federal law.

[4] This exception does not apply to public or private community colleges, colleges, or universities.

## RENEWAL APPLICATION INSTRUCTIONS – READ CAREFULLY

**NOTICE! FAILURE TO COMPLY WITH ANY SECTION OF THESE INSTRUCTIONS MAY RESULT IN DELAYS IN PROCESSING YOUR APPLICATION.**

1. You must still be a **full-time** resident of Santa Clara County who can legally own, purchase and possess a firearm capable of being concealed upon your person.

2. Complete the State Standard Renewal Application Online at scso.permitium.com. We require renewals to be submitted 90 days in advance of a license's expiration date.

3. Obtain copies of the following items to **INCLUDE WITH YOUR APPLICATION SUBMISSION:**

   - Valid California Drivers License or California Identification Card
   - Your current Santa Clara County address must be on record with California Department of Motor Vehicles
   - Weapons Qualification – Approved qualification vendors are listed in Attachment A.
   - Proof of Residency:

     - Copies of two (2) Consecutive statements that reflect your name and your Santa Clara County residence address from one of the following service providers: **(Statements must be dated within the last 90 days. We DO NOT accept past due statements. We DO NOT accept any items other than those listed)**

       - Gas/Electric
       - Water
       - Garbage
       - Home Internet
       - Cable/Satellite
       - Home Phone
       - Credit Card
       - Voter Registration Card
       - Homeowner's Property Tax Exemption
       - Bank Account - **Mortgage Account Statements and Property Tax Statements NOT accepted**

   - Proof of recorded ownership with the California Department of Justice for the specific firearm(s) to be licensed.

**You shall notify this office in writing within 10 days of any change of place**

**of residency.**

4. **RENEWAL OF NON-RESIDENT LIMITED BUSINESS LICENSES**

- Any application for renewal or reissuance of a non-resident limited business license to carry a concealed firearm may be granted only upon concurrence of the original issuing authority and the licensing authority of the city or county in which the applicant resides. (Penal Code § 26220). If you are applying for a Non-Resident Limited Business License to carry a concealed firearm, please submit the following items with your application submission:
    - Proof of employment at or ownership of a business within Santa Clara County.
    - A statement under penalty of perjury that you physically spend a substantial period of working hours at the place of employment or business within Santa Clara County.

5. You may choose to pay your fees online via the Online CCW Application program. If you choose to pay at the time of your appointment, you must obtain a cashier's check or money order made payable to the **Santa Clara County Sheriff's Office.** The amount of the check will be determined by the type of license requested. The license type and associated fees are listed online at scso.permitium.com.

6. Fees are subject to change as allowed by law.

7. Obtain and submit re-certification for the following:

- Firearms safety training and concealed carry course update
- Weapon inspection
- Weapon qualification– Approved qualification vendors are listed in Attachment A.

8. **Applications are accepted online only.** When you have obtained the necessary attachments, fill out the State Application form online at scso.permitium.com. Once your application is processed you will be notified. Any questions can be directed to the CCW Coordinator at CCW@SHF.SCCGOV.ORG. All scheduled appointments are conducted at the following address:

**Santa Clara County Sheriff's**
**Office 55 W. Younger Ave.**
**San Jose, CA 95110**

# REVIEW

1. The Sheriff will conduct a review of your submitted application.

2. If the Sheriff determines your application does not meet the State requirements because you are a disqualified person, a denial letter will be sent to you providing the reason(s) why the determination was made, informing you that you may request a hearing form a court to review the determination, and providing you with a “Request for Hearing to Challenge Disqualified Person Determination” form. (Penal Code §§ 26505 and 26506).

3. If you are approved after this review, a license will be generated and signed by the Sheriff.

4. The Sheriff may place restrictions on a license that they deem warranted. The restrictions may include time, place, manner, and circumstances under which the licensee may carry the weapon.

5. You will be contacted via telephone or email by the CCW coordinator to schedule an appointment to pick up the license.

6. If you are not approved after this review, you will be notified in writing. The letter will advise the reason for denial and inform you that you may request a review of the decision from the superior court.

**Further questions regarding the renewal process can be sent to CCW@SHF.SCCGOV.ORG.**

# MODIFICATION APPLICATION INSTRUCTIONS – READ CAREFULLY

**NOTICE! FAILURE TO COMPLY WITH ANY SECTION OF THESE INSTRUCTIONS MAY RESULT IN DELAYS IN PROCESSING YOUR APPLICATION.**

1. You may modify your license in order to

   - Add or delete authority to carry a firearm listed on the license.
   - Change the address or other personal information of the licensee. (Penal Code § 26210)

2. Complete the State Standard Modification form online at scso.permitium.com

3. You may choose to pay your fees online via the CCW Modification program. For a list of current fees, refer to scso.permitium.com. Fees are subject to change as allowed by law.

4. If modifying license for the purpose of an **ADDRESS CHANGE**, **PLEASE SUBMIT** the following items **WITH YOUR APPLICATION SUBMISSION**:

   - California Driver's License or California Identification Card reflecting your new address. If you have not yet received your updated Driver's License or Identification Card, please submit a copy of a receipt from DMV stating that a change of address has been submitted.
   - Current month utility bill or other sufficient proof of full-time residency as indicated on your application.

5. If modifying license for the purpose of a **WEAPON CHANGE**, please submit the following certification documents **WITH YOUR APPLICATION SUBMISSION**:

   - California Driver's License or California Identification Card
   - Weapon inspection
   - Weapon qualification
   - List all weapons you want listed on your CCW even if they are on your previous CCW license. Only the weapons listed will be included on your modified CCW license.

6. When you have completed the State modification application, and obtained the necessary attachments and required payments, you must complete the Online CCW modification request at scso.permitium.com.

# REVIEW

1. The Sheriff will conduct a review of your submitted application.
2. A modified CCW license will be generated and signed by the Sheriff.
3. You will be contacted via the Online CCW Program to schedule an appointment to pick up of the modified license.

**Further questions regarding the modification process can be sent to CCW@shf.sccgov.org**

## ATTACHMENT A
## APPROVED TRAINING VENDORS

The Santa Clara County Sheriff's Office recognizes the following certified training facilities to satisfy your training and qualification requirements. Training from any other facility will not be accepted. The California POST approved firearms certification course which meets the or exceeds the minimum CCW training standards may be accepts for Santa Clara County Reserve Deputy Sheriff's.

| VENDOR | RANGE LOCATION | PHONE | WEBSITE |
|---|---|---|---|
| 29 Outdoor Gear | American Canyon, CA | (510) 376-0303 | www.29outdoorgear.com |
| Firearms Training Institute | San Jose, CA | (408) 506-1884 | ftipro.net |
| First Priority Security Consulting LLC | Tracy, CA | (510) 736-4333 | www.1psc-llc.com |
| Friedman Handgun Training | Pleasant Hill, CA | (925) 818-6642 | www.friedmanfirearmstraining.com |
| NorCal Med Tac | Aptos, CA | (831) 970-0440 | www.norcalmedtac.com |
| Safe Firearms Education | San Jose, CA | (408) 348-7966 | www.safefirearmseducation.com |
| Defensive Accuracy | San Leandro, CA | (408) 687-3791 | www.daccw.com |
| Saber Tactics | San Mateo, CA | (650) 276-0009 | sabertactics.com |
| ASP Security Training | San Jose, CA | 800-279-1780 | www.ASPFirearm.com |
| Valley Defensive Solutions | San Jose, CA | (209) 747-5149 | www.valleydefensivesolutions.com |
| Spartan Defense | San Jose, CA | (209) 202-8283 | www.trainwithspartan.com |
| Northern Firearms Instruction | San Jose, CA | (530) 999-1822 | countyccw.com |

| | | | |
|---|---|---|---|
| Bay Area Tactical Group | San Leandro, CA | (415) 568-6803 | battactical.com |
| Coco Firearms Training | Concord, CA | (925) 384-1920 | cocofirearmtraining.com |
| Executech Security Solutions | San Jose, CA | (408) 966-0136 | executechinc.com |
| Loyal Arms | Sacramento, CA | (916) 680-9888 | loyalarms.com |
| Silicon Valley Tactical | Morgan Hill, CA | (408) 313-1254 | www.siliconvalleytactical.com |
| Bill Tidwell, Firearms Instructor | Santa Clara, CA | (510) 552-4742 | www.train2besafe.com |
| CJ’s World | Stockton, CA | (209) 905-8615 | www.cjsworld.net |

# EXHIBIT E




## Select To Get Started:




**Welcome to the Concealed Carry Weapons Applications Page**

Learning the laws regulating the use of firearms is a must for responsible ownership. Local regulations

**NEW Concealed Carry Weapon License**

**RENEW Concealed Carry Weapon License**

**REQUEST A DUPLICATE of an existing Concealed Carry Weapon License**

differ and laws vary from state to state. Citizens must check with the jurisdiction where the firearm is to be carried.

In California, the Sheriff and his staff are required to follow strict state and local guidelines when performing the necessary background checks for issuing Concealed Carry Weapon ("CCW") licenses. Due to the detailed nature involved with the screening process, appointment times and processing times can take multiple weeks. Upon completion of the application, the applicant will be asked to schedule an appointment for an initial interview, which is the next step of obtaining a Concealed Carry Weapon license.

The Santa Clara County Sheriff's Office issues standard, 2-year CCW licenses for California resident applicants and Nonresident applicants, who live outside of California. In addition, the office also issues Employment (90) day CCW licenses, Judicial (3 year) CCW licenses, and Reserve/Custodial (4 year) CCW licenses.

• Applicants have the ability to submit NEW, RENEWAL, and MODIFICATION applications

Santa Clara County Sheriff's Office

**MODIFY an existing Concealed Carry Weapon License**

**Non-Resident (outside of California) CCW Application**

**viewable prior to the transaction completion.**

• Applicants are able to schedule appointments for their initial interview related to their NEW Concealed Carry Weapon license applications.
**Initial interview appointments are scheduled for Tuesdays and Thursdays from 9 AM – 11 AM.**

• Applicants are able to track the progress of their application through Order Tracker: **https://scso.permitium.com/order_tracker**
• Applicants are able to select the preference of notification regarding status updates and all correspondence related to their Concealed Carry license application, as it moves through the process.
**Notification options: e-mail, text message, or automated phone call.**

The Sheriff's Office may use Artificial Intelligence (AI) technology to facilitate the Office's review of certain information necessary to process your application for a CCW license or license renewal. All final determinations regarding the issuance or denial of a CCW license or license renewal are made by the Sheriff.

**Pricing:**

| Type of Permit | Standard 2 Year | Employment (90-Day) | Judicial 3 Year | Reserve/Custodial 4 Year |
|---|---|---|---|---|
| **New CCW Fee:** | | | | |
| **Initial Fee**<br>Paid on submission of your application | $488.00 | $165.00 | $488.00 | - |
| **Issuance Fee**<br>Paid upon the approval of the application | $488.00 | $165.00 | $488.00 | - |
| | | | | |
| **Renewal Fee**<br>Paid upon the submission of your application | $447.00<br>Inc. State fee - $52.00 | $195.00 | $74.00 | $96.00 |
| **Modification/Duplicate Fee**<br>Paid upon the submission of your application | $15.00 | $15.00 | $15.00 | $15.00 |

- **Please Note: The above listed fees do NOT include LIVESCAN, PSYCHOLOGICAL EVALUATION and TRAINING fees.**
- **Please Note: Once you submit your application, you will not be able to add/delete/modify the firearms you have listed.**
- **For credit card transactions a nominal credit card transaction fee will be charged for each transaction. Charges will be viewable prior to transaction completion.**
- **Appointments for New Concealed Carry Weapon licenses will be processed on Tuesdays and Thursdays - 9am to 11am.**
- **Click the appropriate button on the left of the screen to proceed with an application for a Concealed Carry Weapon license.**

**Please note that this website is optimized for Edge, Safari, Chrome and Firefox.**

CCW Information

## Concealed Carry Weapon License Requirements: must meet ALL requirements

**For the complete Santa Clara Sheriff's Office CCW Policy.** SCSO CCW Policy

**Authority**

California Penal Code sections 26150 and 26155 provide that a Sheriff of a county or the Chief or other head of municipal police department of any city, or city and county, shall issue or renew a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (Concealed Carry Weapon license).

**Who Shall be Issued a License**

The licensing authority specified in Penal Code sections 26150 and 26155 shall issue a license to persons who are not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Penal Code 26202, meet residential requirements, and have completed a course of training. All applicants for a Concealed Carry Weapon license will be fingerprinted and state and federal records will be checked to determine if they are eligible to possess firearms. Click here to view all categories that would prohibit a person from possessing firearms and being granted a Concealed Carry Weapon license.

**Completing the Application**

California Penal Code sections 26150 and 26155 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county shall issue a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (CCW license). Penal Code section 26175 requires the Attorney General to prescribe a statewide standard application form for a CCW license. Answering all the questions on the Application does not guarantee the issuance of a Concealed Weapon Permit. The determination whether to issue the license is at the discretion of the licensing authority. Pursuant to California Penal Code section 26160, each licensing authority will have a written policy summarizing their requirements for issuance of a Concealed Weapon Permit. In addition, prior to issuing a Concealed Weapon Permit, the California State Statutes require proof that:

- The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Penal Code 26202;
- The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Penal Code 16400;
- The applicant is a resident of that city or city and county. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county;
- The course of training prescribed by the licensing authority has been completed.
- The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

**Character References**

You will need to provide the names and contact information of three persons willing to serve as references. One of the three must be a person described in Penal Code section 273.5, subdivision (b) (your spouse, or former spouse, your cohabitant or former cohabitant, your fiancée, or someone with whom you have, or previously had, an engagement or dating relationship, or the mother or father of your child), if applicable. At least one of the three must be your cohabitant if applicable.

**Training Required**

**Effective January 1st, 2024, Senate Bill 2 requires that the firearms training course for initial CCW applications be a minimum of 16 hours and for CCW renewal applications by a minimum of 8 hours - Penal Code 26165.**

If applying for a **NEW** Concealed Carry Weapon license a course approved by the County Sheriff's Office must be completed after you have been approved to do so. This course will be a minimum of **16 hours**.

If applying for a **RENEWAL** Concealed Carry Weapon license, a **8 hour** course approved by the County Sheriff's Office must be completed prior to permit issuance.

If applying for a **MODIFICATION** to your current Concealed Carry Weapon license that includes a firearm change, you will need to submit training certifications from a traning vendor approved by the County Sheriff's Office.

The Santa Clara County Sheriff's Office recognizes only select training facilities to satisfy your qualification certification. Training from any other facility will not be accepted. Approved training facilities are listed Training Instructor List

**Prior to Filling Out This Application**

- Be prepared to scan a copy of your valid California Driver's license or California Identification card, which reflects your current Santa Clara County address.
- Be prepared to scan copies of two (2) current and consecutive utility bills/statements that are in your name and reflect your current address in Santa Clara County. If you do not have utility bills in your name, residency documentation provided must be a monthly recurring bill. Mortgage statements and annual bills are NOT accepted. Past due bills/statements are NOT accepted.
- Be sure that each firearm you plan on listing on your Concealed Carry Weapon license is on record in the state of California in your name.
- 90-Day out of county residents are exempt.
- If you are applying for a Non-Resident Limited Business License to carry a concealed firearm, please submit the following items with your application submission:
  - Proof of employment at or ownership of a business within Santa Clara County
  - A statement under penalty or perjury that you physically spend a substantial period of working hours at the place of employment or business within Santa Clara County

---

## For More Information, Contact:

**Santa Clara County Sheriff's Office**
55 W Younger Avenue
San Jose, CA 95110

**Telephone:** 408-808-4942
**Email**: ccw@shf.sccgov.org

# For Technical Support, Contact:

**Permitium Software**
Email: help@permitium.com

---

**Terms of Use** **Privacy Policy**

PERMITIUM

# EXHIBIT F

C. D. Michel – SBN 144258
cmichel@michellawyers.com
Anna M. Barvir – SBN 268728
abarvir@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444

Attorneys for Plaintiffs Robert M. Blank, Antonio Ramos Rodriguez, Kyle Hoang Truong, Charles Koon Chiu Young, Jonathan Young, and California Rifle & Pistol Association, Incorporated

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff The Second Amendment Foundation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROBERT M. BLANK, an individual; ANTONIO RAMOS RODRIGUEZ, an individual; KYLE HOANG TRUONG, an individual; CHARLES KOON CHIU YOUNG, an individual; JONATHAN YOUNG, an individual; CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; and THE SECOND AMENDMENT FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA CLARA COUNTY; SANTA CLARA COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT JONSEN, in his official capacity; ATTORNEY GENERAL ROB | **Case No.: 5:25-cv-08027-EJD**<br><br>**~~FIRST~~ SECOND AMENDED COMPLAINT[1] FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(1) VIOLATION OF 42 U.S.C § 1983 [RIGHT TO BEAR ARMS];**<br><br>**(2) VIOLATION OF 42 U.S.C § 1983 [FREE SPEECH];**<br><br>**(3) VIOLATION OF 42 U.S.C § 1983 [PROCEDURAL DUE PROCESS];**<br><br>**(4) VIOLATON OF 42 U.S.C. § 1983 [EQUAL PROTECTION]** |

[1] This Second ~~First~~ Amended Complaint (SAC) adds ~~the~~ California Attorney General Rob Bonta as a defendant based on his request for intervention under Fed. R. Civ. P. 24, and adds claims against the State of California. This SAC also adds a First Amendment and Equal Protection claim against the Santa Clara County Defendants based on new information. ~~government entity SANTA CLARA COUNTY as a defendant without any other substantive change to the Complaint filed on September 22, 2025. (Doc. 1)~~ A redlined version of the First

BONTA, in his official capacity; and DOES 1-10,

Defendants.

**DEMAND FOR JURY TRIAL**

NOW COME Plaintiffs Robert M. Blank, Antonio Ramos Rodriguez, Kyle Hoang Truong, Charles Koon Chiu Young, Jonathan Young, California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, and bring this action against Defendants Santa Clara County, Santa Clara County Sheriff's Department, Sheriff Robert Jonsen, in his official capacity as Santa Clara County Sheriff, California Attorney General Rob Bonta, and Does 1-10, inclusive, and make the following allegations:

## INTRODUCTION

1. This action challenges the concealed carry weapon ("CCW license") permit issuance policies and practices of the Defendants. Plaintiffs' rights to obtain licenses to carry a concealed firearm in public and therefore to exercise their right to be armed in public is guaranteed by the Second Amendment's text "bear arms." This right was recognized more than three years ago by the U.S. Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and more recently affirmed by that Court in *Wolford v. Lopez*, __ U.S. __, 225 L. Ed. 2d 494 (June 25, 2026) (Government policies designed to perpetuate unconstitutional practices are

Amended ~~original c~~Complaint (FAC), as modified to create this SAC, is attached as **Exhibit F** (displacing Exhibit F attached to the FAC).

not valid regulations of the Second Amendment "right to keep and bear arms.") .

2. The Santa Clara County Sheriff's Department (the "Department") and the County of Santa Clara (the "County") (together, the "County Defendants") already charged high fees for a CCW Permit—recently amended its fee schedule and now charges an application fee of $976.00 ($488 initial fee + $488 issuance fee), up from $662.00. This amount does not include the additional expense borne by the applicant of a required training course (typically $250-$400).

3. In addition to the cost barrier of the permit itself, Defendants insist that all applicants submit to an intrusive psychological examination (costing about $500) to determine if the applicant is "mentally fit" to exercise a fundamental right. Though statutory authority exists for allocating the costs of such an examination (presumably—and only—in appropriate circumstances), there is no statutory authority (nor any constitutional authority) for conditioning the exercise of a fundamental right on submission to psychological testing for every applicant without evidence and good cause.

4. An additional cost is imposed for a Live Scan fingerprinting service. According to the County of Santa Clara's website, Live Scan fees include a $20.00 "local fingerprint roll fee" plus an additional $10.00 – $158.00 service fee. The California Department of Justice charges $71.00 for a Live Scan to obtain a Certificate of Eligibility (a COE is required to work in the firearm retail industry). The Live Scan process adds a typical cost of approximately $100.00 to the process of obtaining a CCW permit in Santa Clara County.

5. That's $996.00 (for the permit) + $400 (for training) + $500 (for psychological testing) + $100 (for Live Scan)—or $1,996.00 for a threetwo-year permit to exercise a fundamental right. Applicants seeking to renew a permit will have to pay another $447.00 application fee *every threetwo years*, plus the cost of another training course (again between $250-$400), putting the cost of renewal close to $850. Over a 10-year period, a law-abiding resident of Santa Clara County can expect to pay approximately $35,396.00 to exercise the "right" of self-defense.[2]

---

[2] On June 30, 2026, California's governor signed into law AB 1948. Starting January 1, 2027, CCW permits will be good for three years from that point forward. But what California giveth, California also taketh away. The state has also increased the training course from a one-day, 8-hour course to a two-day, 16-hour course. As of date this SAC was prepared, the market has

6. The ~~Santa Clara~~ County Defendants have a history of abusing their power to issue CCW permits. Former Sheriff Laurie Smith was sanctioned for her corruption and willful misconduct of issuing CCW Permits in a "pay-to-play" scheme to those who donated money to her political campaign. Even for those CCW permits that were not part of Smith's corrupt patronage scheme, the overwhelming majority of the permits that were issued went only to Santa Clara County's elite and powerful residents (e.g., judges, district attorneys, elected politicians).

7. ~~Santa Clara County's~~ The County Defendants' new CCW policies have merely substituted an underground "pay-to-play" grift, for a broad daylight constitutionally corrupt grift, that is intended to dissuade most people from exercising a fundamental right. Ironically (or maybe unironically), Defendants' website has a page titled "Apply for concealed carry weapon license." That introductory page contains language and links to other websites which strongly imply that campaign contribution disclosures are part of the licensing process, by suggesting that CCW permit applicants are required to comply with Government Code § 84308 (the Levine Act) while their applications are pending.

8. For the County Defendants to suggest that the CCW permit process in their county requires disclosure of campaign contributions shows how little they have learned from the debacle involving Sheriff Smith's pay-for-play schemes. How is it less corrupt to nudge people into filling out forms saying how much they contribute to a sheriff's campaign in lieu of the previous, less public forms of graft? The suggestion that disclosure of campaign finance activities is necessary to comply with state law as part of the CCW application process simply transmutes the hidden pay-to-play system from de facto corruption to de jure corruption.

9. Even hinting that a public disclosure of politically protected speech is required to exercise a fundamental right to the means of self-defense demonstrates the Defendants' habit, pattern, and practice of imposing unlawful requirements to a licensing process that regulates a fundamental right.

~~9.~~10. Penal Code section 26202(b)(3) authorizes the standardless review of CCW applicants' public statements based on their content and viewpoint in violation of the First

---

not yet reflected any price increase for the multi-session classes.

Amendment. The County Defendants, under this statutory authority, conduct such investigations of CCW applicants.

11. The County Defendants' policies (and the State's ratification of those policies) of taxing a right out of the reach of citizens with modest means, imposing political speech regulations, and requiring intrusive psychological testing have just as much power to destroy a fundamental right as the pre-*Bruen* may-issue policies that laid the foundation for holding those rights hostage to political patronage. These unconstitutional practices are subject to the acid test of the Second Amendment "because any permitting scheme can be put toward abusing ends" thus the Supreme Court in its *Bruen decision* invited "constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, 597 U.S. at 38 n.9.

12. After engaging in substantive discussions with the County Defendants, and failing to take corrective action against Santa Clara County, the State of California elected to waive its 11th Amendment immunity and moved to intervene in this action to defend the County's CCW policy choices (which is itself a policy choice by the State) thus ratifying the County Defendants' unconstitutional policies, practices, procedures, and customs. And while Attorney General Bonta's office has appeared to disclaim some practices by the Santa Clara County Defendants (see ECF No. 47-1, at 7 n. 2), this footnote disclaimer in a motion to intervene under Federal Rule of Civil Procedure 24, is insufficient to relieve the State of California of its duties under the Constitution.[3]

~~10.~~13. Federal law and the California Constitution vest the Attorney General of this state with a duty "to see that the laws of the State are uniformly and adequately enforced." To

[3] Plaintiffs have no concrete facts to allege claims under 42 U.S.C. § 1985(3) (conspiracy to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law) and 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, … shall be liable to the party injured, … for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; ….") But if, after discovery is concluded in this matter, good faith allegations under 42 U.S.C. §§ 1985 and/or 1986 can be made, Plaintiffs may seek further amendment to this complaint under Federal Rules of Civil Procedure 8 and 15.

accomplish this, the Attorney General has "direct supervision over every … sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, …." California Constitution Art. V, Sec. 13. A mere disclaimer of known unconstitutional practices by a county cannot absolve the State of its duty to uphold the fundamental rights of all Californians. *See also* Cal. Gov't Code § 53071.

~~11.~~14. This suit does not challenge simple and objective regulations, like requiring permits to ensure order (e.g., for parades and demonstrations) or registration to document qualifications and compliance (e.g., for voting and lobbying) for exercising fundamental rights. Rather, this suit challenges the Defendants' onerous financial barrier, psychological testing, and the chilling of First Amendment rights because those policies and practices impose an unconscionable and unconstitutional burden—and not merely a regulation—on a fundamental right.[4]

~~12.~~15. As noted, the *Bruen* Court anticipated this kind of obstruction. The relevant metric should not be ~~not~~ whether fees reflect the true cost of processing applications, but whether they have the effect of denying ordinary citizens their right to carry arms for self-defense. By imposing such high licensing fees for a CCW permit application and mandating psychological testing without good cause, the ~~Santa Clara County~~ Defendants are merely substituting an unconstitutional wealth qualification for a corrupt political patronage scheme that has the same effect of suppressing its residents' Second Amendment rights. *See People v. Moyer*, 94 Cal. App.

[4] "[C]onstitutional rights would be of little value if they could be ... indirectly denied," *Smith v. Allwright*, 321 U.S. 649, 664 (1944), or "manipulated out of existence," *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "[T]he Twenty-Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Like the Fifteenth, the Twenty-Fourth Amendment "nullifies sophisticated as well as simple-minded modes" of impairing fundamental rights. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). "'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.'" *Harman*, 380 U.S. at 540-41(quoting *Lane*, at 275). *See also Black v. Vill. of Park Forest*, 20 F. Supp. 2d 1218, 1230 (N.D. Ill. 1998) (striking down $60 fee for warrant reimbursement explaining "plaintiffs need not establish that the fee is unreasonable or that it has already chilled the exercise of Fourth Amendment rights.") The same kinds of abuses heaped upon the right to vote resulted in the ratification of the Twenty-Fourth Amendment, abolishing poll taxes. Santa Clara County's attempt to price less-wealthy citizens out of exercising their Second Amendment rights does not require a new amendment, just enforcement of the existing one~~s~~.

5th 999, *rev denied*, 2023 Cal. LEXIS 6405 (2023).

16. Santa Clara County is an outlier. Its licensing costs are a barrier to less wealthy citizens, amounting to a wealth test. Its mandatory psychological testing (without good cause) of all applicants is an unconstitutional qualification for exercising a fundamental right. Its exception to mandatory psychological testing for judicial officers violates equal protection under the laws. Its policy of insisting[5] implying that political speech disclosures are part of the process for obtaining a CCW permit, and its policy of investigating public statements by CCW applicants without objective guidelines, manages to leverage an abridgment of the First Amendment to infringe on the Second Amendment.

17. The State, despite having supervisory power (and a constitutional obligation) to correct abuses of the CCW process by local issuing authorities, did not seek to intervene in this case to uphold Plaintiffs' Second Amendment rights, but now seeks to ratify those abuses by defending the known policies, practices, customs, and procedures of the County Defendants, laying the foundation for its own violations of the Constitution.

13.18. This Court should enjoin Defendants' unconstitutional practices, practices and uphold Plaintiffs' constitutional rights and make them whole.

## PARTIES

### Plaintiffs

14.19. The individual plaintiffs are ordinary, law-abiding, adult residents of Santa Clara County who desire to carry a firearm in public for lawful self-defense and (1) would apply for CCW Permits but for the prohibitive expense of doing so or (2) already have CCW Permits issued by the Santa Clara County Sheriff's Department and seek a refund, or (3) will face considerable unlawful expenses to renew those permits.

[5] When Plaintiffs first alleged that Santa Clara County's process appeared to include campaign disclosure requirements to apply for a CCW permit, Plaintiffs assumed it was a gaffe that would be promptly corrected to moot that claim. The original complaint and the FAC thus alleged that when Santa Clara County directs a CCW applicant to the county's website to make such disclosures, the procedure was an "implied" First Amendment violation. But as of the date of this SAC, the County Defendants still have not removed the requirement from their website (https://sheriff.santaclaracounty.gov/services/other-services/ccw), making the alleged violation—at this late date—intentional rather than just misguided.

~~15.~~20. The individual plaintiffs are natural persons and citizens of the United States and are eligible to possess firearms under state and federal law and currently own at least one firearm.

~~16.~~21. Each individual plaintiff wishes to carry a firearm in public for lawful self-defense and would do so, but for the challenged, regulations, policies, procedures, and practices.

~~17.~~22. Plaintiff Kyle Hoang Truong is a resident of Santa Clara County and a law-abiding citizen of the United States. He would like to exercise his right to carry a firearm in public for self-defense, but he has not been able to do so due to the prohibitive expense of the application process.

~~18.~~23. Mr. Truong desires a CCW Permit, but he cannot afford one. He lives paycheck to paycheck, and his bank account balance often averages less than the $2,000 in total expenses that obtaining a CCW Permit from Santa Clara County would cost him.

~~19.~~24. Mr. Truong does not wish to undergo an unnecessary and intrusive psychological test as part of the CCW application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

~~20.~~25. Plaintiff Antonio Ramos Rodriguez is a resident of Santa Clara County and a law-abiding citizen of the United States. He would like to exercise his right to carry a firearm in public for self-defense, but he has not been able to do so due to the prohibitive expense of the application process.

~~21.~~26. Mr. Rodriguez is a transplant recipient of both a kidney and a pancreas and has retinal detachment in his right eye. Due to his medical condition, Mr. Rodriguez receives social security benefits of approximately $1,800 per month, which, for now, is his only source of income. Very little is left over for him to live on after his bills are covered, and certainly not enough for the added $2,000 expense of a Santa Clara CCW Permit.

~~22.~~27. Mr. Rodriguez does not wish to undergo an unnecessary and intrusive psychological test as part of the CCW application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

~~23.~~28. Plaintiff Jonathan Young is a resident of Santa Clara County and a law-abiding citizen of the United States. He would like to exercise his right to carry a firearm in public for self-defense but has not been able to do so due to the prohibitive expense of the application process.

~~24.~~29. Mr. Young's budget cannot easily absorb an additional $2,000 expense, because he is raising a family and the cost of living in the County is high. Mr. Young accordingly seeks relief from this Court against Santa Clara's exorbitant fees.

~~25.~~30. Mr. Young does not wish to undergo an unnecessary and intrusive psychological test as part of the CCW application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

~~26.~~31. Plaintiff Charles Koon Chiu Young is a resident of Santa Clara County and a law-abiding citizen of the United States. He has an active CCW Permit issued by the Santa Clara County Sheriff's Department that was recently renewed. He had to pay $447 plus the cost of another training course for that renewal, even though he was thoroughly vetted and received training less than two years ago, when he first applied for his current permit.

~~27.~~32. When factoring in the expense of the training course, Mr. Young will have to pay roughly $500 - $850 to renew his CCW permit and continue exercising his Second Amendment right to carry. This is a considerable expense. Mr. Young has recently retired, and his income is just his social security check of $3,582 per month, or $42,984 per year. Considering the very high cost of living in the County, the additional expense of a CCW permit places a hefty financial burden on Mr. Young, especially given that he will face this expense not just once, but biennially.

~~28.~~33. Mr. Young seeks relief from the exorbitant expense of renewing his permit every two years, or if a ruling comes after his renewal, he seeks reimbursement of his renewal fees and prospective relief ensuring that future biennial renewals will not be subject to this exorbitant expense.

~~29.~~34. Mr. Young also seeks reimbursement for the cost of the psychological tests he underwent for his initial CCW permit, and an order requiring the destruction of the records from that test currently in possession of the Defendants.

~~30.~~35. Mr. Young does not wish to undergo an unnecessary and intrusive psychological test if required as part of the CCW renewal application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

~~31.~~36. Plaintiff Robert M. Blank is a resident of Santa Clara County and a law-abiding

citizen of the United States. He has a CCW Permit issued by the Santa Clara County Sheriff's Department that is due to be renewed this year. He will have to pay $447 plus the cost of a training course for that renewal, even though he was already thoroughly vetted and trained when he first applied for the original permit.

32.37. While, unlike the other Plaintiffs, Mr. Blank can comfortably afford the expense of renewing his permit, he objects to paying an exorbitant and unreasonable fee to continue to exercise his enumerated constitutional right to bear arms. He therefore seeks relief from the Court, or if a ruling comes after his renewal, he seeks reimbursement of his renewal fees and prospective relief ensuring that future biennial renewals will not be subject to this exorbitant expense.

33.38. Mr. Blank does not wish to undergo an unnecessary and intrusive psychological test if required as part of the CCW renewal application process. Nor does he feel he should be required to make campaign finance disclosures as part of that process.

39. The associational plaintiffs are non-profit organizations dedicated to the preservation of the Second Amendment and other enumerated constitutional rights. The associational plaintiffs use their resources and economies of scale to ensure the broadest possible protection for their members and supporters by bringing suits on behalf of individual plaintiffs—who are also members—who otherwise may lack the financial resources and litigation experience to bring cases like this themselves. The associational plaintiffs are representing their members and supporters who reside in Santa Clara County who either (1) cannot afford to pay the approximately $2,000 in expenses to apply for a permit, or (2) will need to renew their permit in 2025 and will face the exorbitant expense of at least $750 to do so. The associational plaintiffs thus bring this action to vindicate their members' and supporters' Second Amendment rights to publicly bear arms for self-defense.

34.40. All of the individual plaintiffs reside in Santa Clara County and have elected to apply for their CCW permit within its jurisdiction, as is their right. They further allege that the State of California, by ratifying the County Defendants' unconstitutional and unconscionable fees, it is treating them differently from residents of other counties and is thus denying them equal protection under state law in violation of the 14th Amendment.

~~35.~~41. All individual plaintiffs are members of each of the associational Plaintiffs, California Rifle & Pistol Association, Incorporated, and The Second Amendment Foundation.

~~36.~~42. Plaintiff CRPA is a non-profit membership and donor-supported organization qualified as tax-exempt under Section 501(c)(4) of the Internal Revenue Code, with its headquarters in Fullerton, California. Founded in 1875, CRPA seeks to defend the civil rights of all law-abiding individuals, including the enumerated right to bear firearms for lawful purposes like self-defense. CRPA regularly participates as a party or amicus in litigation challenging unlawful restrictions on the right to keep and bear arms. It also provides guidance to California gun owners regarding their legal rights and responsibilities. CRPA members include law enforcement officers, prosecutors, professionals, firearm experts, and the general public. CRPA members who wish to obtain or renew CCW permits but reside in Santa Clara County are subject to exorbitant fees, unconstitutional psychological testing without good cause, and apparent campaign finance disclosure requirements.

~~37.~~43. Plaintiff The Second Amendment Foundation ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 720,000 members and supporters nationwide, including thousands of members in Santa Clara County. SAF is dedicated to promoting a better understanding of the nation's constitutional heritage and tradition of privately owning, possessing, and carrying firearms, through educational and legal action programs designed to better inform the public. SAF is a pioneer and innovator in defending the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. SAF also incurs significant expenses to sponsor public interest litigation to defend its interests and to disseminate information to like-minded individuals. SAF's policies specifically include the dedication of its resources, litigation experience, and economies of scale for the purpose of representing people who would otherwise lack the means and access to resources to successfully bring lawsuits to compel state and local governments to comply with the Constitution, as intended by the Fourteenth Amendment, its enforcement provisions, and Congressional statutes enabling the enforcement of the Constitution by private actors. *See* 42 U.S.C. §§ 1983, 1988. Other SAF members who are not

named plaintiffs, may also who wish to obtain or renew CCW permits while residing but reside in Santa Clara County, and -are thus also subject to unconstitutional fees, unnecessary and unconstitutional psychological testing, and apparent campaign finance disclosure requirements, and other violations of civil rights as condition of exercising their Second Amendment rights. These other SAF members who reside in Santa Clara County would have standing in their own right, their interests align with SAF, and SAF's interests align with those members, and neither the claims asserted herein, nor the relief requested, requires participation of these other SAF members.These policies and practices by the Defendants must be enjoined.

**Defendants**

38.44. Defendant Santa Clara County is a political subdivision of the State of California, incorporated under state law and subordinate to state law. The County is named as a Defendant to the extent its policies, practices, procedures, and customs as a policy-making body contribute to the unconstitutional conduct alleged herein; and because the boards and departments of local governments are not independent from their parent entity. See generally: *Vann v. City and County of San Francisco*, 97 Cal.App.5th 1013 (2023).

39.45. Defendant Santa Clara County Sheriff's Department is a local government entity created under the laws of the state of California. It exists as an agency and political subdivision of Santa Clara County. Through the elected Sheriff of Santa Clara County, Defendant Robert Jensen, the Department is responsible for issuing CCW permits. The Department is sued to the extent its policies, practices, procedures, and customs as a policy-making body and its operation as an executive agency contribute to the unconstitutional conduct alleged herein.

46. Defendant Robert Jonsen is the elected Sheriff of Santa Clara County. Defendant Jensen is and, at all times relevant to this complaint, was one of the ultimate policymakers for Defendant Department and by extension the County. He has authority and responsibility under California Penal Code section 26150 to issue CCW permits within the county. He is directly responsible for promulgating, enforcing, and continuing the policies of the Department, including the unlawful policies and procedures complained about herein. Defendant Jonsen is sued solely in his official capacity.

~~40.~~47. Defendant Rob Bonta, is the Attorney General of the State of California. Reading (and stretching) Plaintiffs' First Amended Complaint (ECF No. 11, at 30) as a facial challenge to state law, his office moved to intervene in this matter. (ECF No. 47-1, at 5). Ironically, the Attorney General insisted on intervening in this matter, alleging (correctly) that his office has a duty under the state constitution to "see that the laws of the State are *uniformly* [sic] and adequately enforced." (ECF No. 47-1, at 6) (emphasis added) (citing Cal. Const., art. V, § 13). He did not, however, note that the constitution also gives the Attorney General direct supervisory control over the issuing authorities for CCW permits—in this case a county sheriff. Knowing the allegations made in this case against the County Defendants already named, and by failing to ensure statewide uniform enforcement of state law, the Attorney General, having the power to correct such abuses, has opted to ratify Santa Clara County's unconstitutional policies, practices, customs and procedures, and has made adoptive admissions that his office will endorse the County Defendants' unequal enforcement of a law regulating a fundamental right in California. Whether this Court ultimately grants (or defers for later determination or trial) the State's mandatory intervention under Federal Rule of Civil Procedure 24(a), or permissive intervention under Rule 24(b), California's chief law enforcement officer has volunteered the State's resources in defending this case and thus the State has waived sovereign immunity under the 11th Amendment.[6]

~~41.~~48. The true names or capacities—whether individual, corporate, associate or otherwise—of the Defendants named herein as Does 1 through 10 are presently unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of these Defendants if and when they have been determined.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

[6] During conversations with counsel for the Attorney General, it was pointed out that his office had several options to address the issues in this case without intervening as a party, including filing an amicus brief in this matter. None of these options would have put the State's Treasury at risk. The Attorney General seeking to intervene in this case, in lieu of other options, invites (at least for pleading and discovery purposes) the negative pregnant implied by this voluntary exposure.

42.49. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

43.50. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202.

51. Plaintiffs' claims for attorney's fees and costs are authorized by 42 U.S.C. § 1988.

44.52. Because waivers of sovereign immunity are jurisdictional, Plaintiffs allege that California has waived 11th Amendment immunity by seeking to intervene in this case by and through the Attorney General's motion to intervene under Federal Rule of Civil Procedure 24.

45.53. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district and its San Jose Division. The Santa Clara County Sheriff's Department is located within this district and its San Jose division.

**GENERAL ALLEGATIONS**

46.54. The Supreme Court has recognized that the Second Amendment protects the individual right to keep and bear arms including, *inter alia*, the right of the people to "possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

47.55. The Supreme Court has also held that the Second Amendment right to keep and bear arms is incorporated by the Fourteenth Amendment, applying equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep **and bear** arms among those fundamental rights necessary to our system of ordered liberty.") (emphasis added).

48.56. *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 597 U.S. at 20-23 (citing *Heller*, 554 U.S. at 634). Under that

framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that a District of Columbia statute that prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

~~49.~~57. ~~Most recently,~~In *Bruen*, the Supreme Court confirmed and reiterated *Heller*'s historical approach to analyzing Second Amendment questions:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

~~50.~~58. In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10.

59. Plaintiffs' proposed course of conduct is the same as the proposed course of conduct in *Bruen*: "carrying handguns publicly for self-defense." 597 U.S. at 32. In *Bruen*, New York argued that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a nonspeculative need for armed self-defense in those areas." *Id*. at 33. The Supreme Court did not say that "carrying handguns publicly for self-defense without a showing of nonspeculative need" was the proposed course of conduct because that "showing of nonspeculative need" was the *burden* on the Second Amendment right. The burden is not part of the proposed course of conduct; the law or practice that is being challenged is the burden. *See United States v. Martinez*, No. 23-cr-114, slip op. at 3 (E.D. Tex. Apr. 14, 2025) ("The Government next suggests that the 'conduct' covered by the text of the Second Amendment should be defined narrowly to fit the precise conduct regulated by § 922(d)(10)—something like

'selling a firearm to a drug trafficker.' . . . But this impermissibly conflates the two steps of *Bruen*.") In the same way, Plaintiffs here need not define their proposed course of conduct as, for example, "carrying handguns publicly for self-defense without paying exorbitant fees." *Bruen*'s simpler "carrying handguns publicly for self-defense" applies in this case.

51.

60. Plaintiffs concede, for purposes of this action only, that the state-mandated and state-level performed tasks with a fee of $93 (for an exhaustive background check, Live Scan, and firearm cross-reference check for the firearm that will be listed on the actual license), are legitimate state costs for the state's role in CCW licensing, leaving applicants responsible for the cost of a training course.

61. Plaintiffs also concede, for purposes of this action only, that the allege that Santa Clara County's fees violate the Second Amendment and should be enjoined. The Defendants must process applications without charging any fees, aside from the state-mandated fee of $93, leaving applicants responsible for any training course and Live Scan chargescounty-level processes/investigation legitimately include:

a. an in person or virtual interview of the applicant (pursuant to § 26202(b)(1));

b. a telephonic interview of the applicant's three references (pursuant to § 26202(b)(2));

c. verification of the residency information provided on the application (pursuant to § 26202(b)(4)).

52. But even if a Santa Clara County deputy sheriff (earning about $60 per hour) took two hours per application to conduct four interviews and a verification of residency and completion of a training course, the County's costs should be closer to the fees charged by San Diego and Orange county. *See* ¶¶ 115-116, *infra.*

53.62. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditioned the exercise of the right to carry arms for self-defense upon payment of like sums for law-abiding citizens.

63. Plaintiffs further allege that no historical tradition of valid laws or regulations from

the applicable historical periods conditioned the exercise of the right to carry firearms for self-defense purposes on submission to a psychological test, with or without good cause.

54.64. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditions the exercise of the right to carry arms for self-defense upon a standardless review of public statements made by a law-abiding citizen.

65. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditions the exercise of the right to carry firearms for self-defense on the disclosure of campaign finance donations.

66. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditions the exercise of the right to carry arms for self-defense on making arbitrary and capricious statements against interest that are constitutionally irrelevant to granting a CCW license.

67. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical periods conditions the exercise of the right to carry arms for self-defense on law-abiding citizens waiving civil tort defenses and requiring individuals seeking to obtain a CCW license to become an open ended indemnifier of government actors and/or government entities.

68. Most recently, the Supreme Court affirmed in *Wolford v. Lopez,* __ U.S. __, 225 L. Ed. 2d 494 (June 25, 2026), that government policies designed to perpetuate unconstitutional practices are not valid regulations of the Second Amendment "right to keep and bear arms." The County Defendants' history of tolerating corrupt, politically driven, invidious discrimination against the right to keep and bear arms as part of its CCW permit process, is evidence of a custom and practice of violating constitutional rights. The State Defendant's ratification (through its intervention in this case) of that continuing corruption is thus also actionable.

55.69. The burden to prove that historically relevant and constitutionally valid laws that burden the Plaintiffs' right to obtain a CCW permit in Santa Clara County lies with Defendants..

**California's Law for CCW Permit Issuance**

56.70. California State law sets forth some objective and some non-objective requirements

for a licensing scheme to issue CCW permits. State law also sets forth some constitutionally legitimate and some constitutionally illegitimate requirements for permit issuance. The constitutionally valid and objective requirements are not challenged herein.

~~57.~~71. California Penal Code sections 26150, 26155, and 26170 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the applicant meets the statutory qualifications, shall issue or renew a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (CCW license).

~~58.~~72. California Penal Code § 26175 mandates a state-wide uniform application process for issuance of CCW permits and requires the Attorney General to issue a statewide standard application form for CCW licenses. Those qualifications and standards are set forth in form BOF-4012 (includes the standardized application usually filled out online), which is published by the California Department of Justice and is available at: https://oag.ca.gov/system/files/media/bof-4012.pdf. A true and correct copy of BOF-4012 is attached as **Exhibit A** to this complaint.

~~59.~~73. Generally, California law imposes the following CCW permit application requirements:

> (a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:
>
> (1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.
>
> (2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.
>
> (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

> (4) The applicant has completed a course of training as described in Section 26165.
>
> (5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

Cal. Penal Code § 26150(a); *see id.* § 26155(a) (listing the same requirements for when a city's Police Department conducts permit issuance). *See also* § 26170 (listing requirements for deputized persons).

~~60.~~74. With regard to application fees to obtain a CCW permit, Penal Code section 26190(b)(1) only authorizes "[t]he licensing authority of any city, city and county, or county shall charge an additional fee in an amount equal to the reasonable costs for processing the application for a new license or a license renewal, issuing the license, and enforcing the license, including any required notices, excluding fingerprint and training costs, and shall transmit the additional fee, if any, to the city, city and county, or county treasury."

~~61.~~75. With regard to psychological testing, California law ~~does not authorize~~ neither mandates nor expressly authorizes mandatory psychological testing for all applicants seeking an initial CCW permit or renewal. The term "psychological" (or any of that word's roots or variants) does not even appear in Penal Code sections 26150, 26155, or 26170, which list the sole qualifications for obtaining a CCW permit.

~~62.~~76. California law already ~~does~~ requires that the applicant disclose if they have previously been taken into custody as a danger to self or others under section 5150 or Part 1.5 (commencing with Section 5585) of Division 5 of the Welfare and Institutions Code, assessed under Section 5151 of the Welfare and Institutions Code, admitted to a mental health facility under Section 5151 or 5152 of the Welfare and Institutions Code, or certified under Section 5250, 5260, or 5270.15 of the Welfare and Institutions Code. *See* Penal Code § 26175(c)(1).

~~63.~~77. Penal Code section 26185 also requires a mandatory background check to ensure that the applicant is eligible to possess, receive, own, or purchase a firearm. The state's background check system is comprehensive, and it includes a search of the state's mental health database, which contains a list of all persons who have been admitted to a mental health facility under Welfare and Institutional Code sections 5150, 5151, 5152, 5150, 5260, and 5270.15.

~~64.~~78. Furthermore, Penal Code section 26190(e)(1) authorizes the allocation of the cost of psychological testing upon initial application—but only "if required by the licensing authority." In other words, state law does not mandate psychological testing for *every* applicant. Notably, section 26190(e)(2) authorizes allocation of costs for a renewal "*only* if there is compelling evidence of a public safety concern to indicate that an assessment is necessary."

~~65.~~79. Even BOF 4012 (Exhibit A) does not contend that psychological testing is mandatory for issuance of a license, only that licensing authorities "may also require psychological assessment for each initial application" and then sets forth how to allocate those costs under section 26190, subdivision (e).

80. In other words, the County Defendants are~~Santa Clara County is~~ using a discretionary power about the allocation of costs ~~(presumably—and only—if there is prima facie good cause to impose such costs)~~ to bootstrap universal mandatory psychological testing before issuing a CCW permit to everyone who applies for a license.[7] ~~—~~

~~66.~~81. Plaintiffs further allege that the County Defendants have an express policy of exempting judges who apply for CCW permits from psychological testing, thus compounding a Second Amendment violation with a Fourteenth Amendment equal protection violation.[8] ~~presumably even imposing that requirement on Santa Clara County Superior Court judges seeking a three-year license under the County's scheme. Whether the Defendants have in fact imposed mandatory psychological testing on every Santa Clara County Superior Court judge as a condition for seeking a CCW permit is a fact that will be left to discovery and trial.~~

~~67.~~ The vast majority of California's issuing authorities do not mandate such testing. ~~Santa Clara County's~~ The County Defendants' requirement of psychological testing for a CCW

---

[7] Plaintiffs had previously assumed that the plain text of the state law only allowed for psychological examination if there was prima facie good cause to impose such an examination, and thus also impose those costs. Now that California has intervened in support of Santa Clara's policy of mandating psychological testing for *all* new CCW applicants, California's ratification of this violation of the Constitution makes them liable too.

[8] After the filing of the FAC, Plaintiffs obtained a Public Records Act response from Santa Clara County documenting this express policy of exempting judicial officers from the psychological test for securing a CCW Permit.

permit violates more than just the Second Amendment. It violates the presumption of sanity, infringes on the exercise of an enumerated right, and violates the procedural due process guarantees of the Fourteenth Amendment.

82.

83. State law also provides for the review of publicly available information about the applicant, including publicly available statements published by or posted by the applicant.[9] *See* Cal. Penal Code § 26202(b)(3).

68. On information and belief, Plaintiffs allege that neither California, nor the County Defendants, have promulgated objective criteria, that would be valid under the First Amendment, for reviewing content-based or viewpoint-based public statements by CCW applicants as part of the process for licensing a fundamental right. This is both a facial and as-applied violation of the First Amendment. Furthermore, by seeking intervention, the State of California has ratified the Santa Clara County Defendants' as-applied violations of the Constitution.

84.

85. California Penal Code section 26175 sets forth the statutory basis for the State's Attorney General to create a uniform statewide application to obtain a CCW license. The current state-wide uniform application created by the Attorney General has deficiencies that either violate the U.S. Constitution or exceed the statutory authority under § 26175. *See infra*.

**Comparing Santa Clara County's Unconstitutional CCW Application and Issuance Policies Process to Others**

**First Amendment Violations – Campaign Disclosures**

69.86. Like many other coastal municipalities and counties in California, Santa Clara County did not historically issue CCW Permits to ordinary persons; instead, it granted permits

[9] Plaintiffs had anticipated that the County Defendants would try to defend their unconscionably high fees and costs by blaming the costs on the interviews required by Penal Code section 26202(b)(1) & (2), and this one investigative task listed at § 26202(b)(3), as all of the other verifications are automated and conducted by outside contractors utilized by other counties and jurisdictions whose fees are far more reasonable. However, in the Public Records Act response noted in footnote 8, *supra*, Santa Clara County disclosed that it also uses an outside contractor to conduct standardless social media searches of CCW applicants and to evaluate the applicants' public statements, which also violates the First Amendment.

only to the wealthy and well-connected. This practice came to a head under former Sheriff Laurie Smith, who would eventually be sanctioned for issuing CCW Permits on a "pay-to-play" basis, because she ~~and~~ disproportionately grant~~ing~~ed permits to those who donated money to her campaign.

~~70.~~87. The webpage maintained by the Defendants titled "Apply for concealed carry weapon license" is found at https://sheriff.santaclaracounty.gov/services/other-services/ccw. A true and correct copy is attached at **Exhibit B** to this complaint.

~~71.~~88. The bottom of that introductory page for applying for a CCW Permit contains a section titled "Disclosure of campaign contributions" – along with a link to another website that requires entry of relevant personal information to comply with the County of Santa Clara Levine Act Disclosure requirements pursuant to Government Code Section 84308, et seq.

~~72.~~89. These financial disclosures are required to be filed 12 months before any covered agency decision (presumably the granting or denial of a CCW permit) and 12 months following the agency's decision. This means, if Plaintiffs seek an initial CCW permit, they must make campaign financial disclosures 12 months before submitting their CCW application, and 12 months after receiving it. And since the CCW permit is only issued for two years before the renewal process starts, a CCW permit applicant finds themselves in a perpetual state of filing financial disclosures as a condition of exercising Second Amendment rights. This is absurd.

~~73.~~90. ~~Nevertheless, this juxtaposition of the~~ The County Defendants' Levine Act disclosures as a requirement~~s~~ to process a ~~on the~~ CCW application, as set forth on their introductory webpage (especially since the county has had nearly a year to correct this, after it was brought to their attention with this action was first filed) is a de facto requirement ~~strongly implies~~ that campaign finance disclosures are part of the CCW application process in Santa Clara county.

~~74.~~91. In point of fact, it is highly unlikely that a CCW permit is the kind of license or permit covered by the Levine Act, which according the plain text of the statute refers only to "business, professional, trade, and land use licenses and permits and all other entitlements for use, including all entitlements for land use, all contracts, and all franchises." Cal. Govt. Code § 84308(a)(5)(A).

92. A CCW permit fits none of those categories. Defendants' insistence suggestion that a CCW permit application does triggers Government Code § 84308, thusmaking such disclosures a requirement for consideration of a CCW permit, has a chilling effect on both the First Amendment ***and*** Second Amendment rights of the Plaintiffs.

75.93. The Attorney General has direct supervisory control over county sheriffs. Unless Rob Bonta officially, and publicly, repudiates this Santa Clara County policy, his office is ratifying that policy and is thus also in violation of the Constitution.

94. This "campaign disclosure" web page must be stricken from the Defendants' CCW permit website on how to obtain a CCW permit, or to start the application process, and the Defendants must be enjoined—forever—from even suggesting that campaign financial activities or any such informational disclosure protected by the First Amendment is part of the CCW issuance process.

**First Amendment Violations – Standardless Review of Public Statements**

95. California Penal Code section 26202(b)(3) provides for a "review" of CCW applicants' public statements.

76.96. On information and belief, Plaintiffs allege that neither California nor the County Defendants have promulgated objective criteria, that would be valid under the First Amendment, for reviewing content-based or viewpoint-based public statements by CCW applicants as part of the process for licensing a fundamental right. This is both a facial and as-applied violation of the First Amendment. Furthermore, by failing to correct this abuse, and by seeking intervention, the State of California has ratified the Santa Clara County Defendant's as-applied violation.

**Second Amendment Violations - Costs**

77.97. Santa Clara County's Policy (207) for issuance of a CCW permit is found at https://files.santaclaracounty.gov/exjcpb1376/2025-02/207-license-to-carry-a-firearm.pdf?VersionId=Y2TKgtfkJLPoFZ1yfPuXvRUuDof0HT3b. A true and correct copy is attached as **Exhibit C** to this complaint.

78.98. Schedule A, referred to in Policy 207, is found at: https://files.santaclaracounty.gov/exjcpb1376/2025-02/ccw-policy.schedule-

a.pdf?VersionId=1XnoOEt1eT9GB28NLg0aVuZQIHWuDL81. A true and correct copy is attached as **Exhibit D** to this complaint.

~~79.~~99. The Fee Schedule for a Santa Clara County CCW Permit can be found at https://scso.permitium.com/ccw/start. A true and correct copy is attached as **Exhibit E** to this complaint.

~~80.~~100. While *Bruen* finally forced all state actors to issue permits to regular citizens using objective criteria, Defendants responded by seeking to frustrate the right to carry as much as possible by erecting financial burdens and other hurdles to its exercise. Indeed, Santa Clara County is pricing a fundamental right out of the reach of many (if not most) residents of the County.

~~81.~~101. Until this year, Defendants' fees totaled an already exorbitant outlier amount of $662. That has now been raised to $996, together with an additional $500 for psychological testing, another $400 for a 16-hour training course, and another $100 for Live Scan fingerprinting service. This brings the total cost of obtaining a CCW Permit in Santa Clara County close to *$2,000.00 for a three~~two~~-year permit*. (See fn. 2 supra.)

~~82.~~102. After the cost of the initial permit, renewals still cost close to $500, plus the cost of an 8-hour refresher course. *See* Ex. E, p. 3.

~~83.~~103. Santa Clara County is an outlier even when considering the fees charged in other states. For example, in Arizona—where applying for a permit is optional because Arizona is a constitutional carry state—the CCW Permit Application fee is $60 plus the cost of fingerprinting. The fee for CCW Permit Renewal Application is just $43.[10]

~~84.~~104. In Texas, the "standard condition" "Original Application Fee" is $40, while applicants "may be eligible for a discount and/or certain exemption(s)."[11]

---

[10] Arizona Department of Public Safety, *Concealed Weapons Permit Unit – Applications and Fees*, https://www.azdps.gov/services/public/cwp (last visited Mar. 19, 2025).

[11] Texas Dep't of Public Safety, *Texas License to Carry (LTC) Fee Table*, https://www.dps.texas.gov/sites/default/files/documents/rsd/ltc/documents/ltcfeeschedule.pdf (last visited Mar. 19, 2025).

~~85.~~105. Florida charges $55 for its issuance fee and $42 for fingerprinting.[12]

~~86.~~106. In Utah, "[t]he fees to apply for a concealed firearm permit are $52 for Utah residents and $62 for non-residents."[13]

~~87.~~107. In Minnesota, "[t]he fee for a new permit to carry will be determined by the county sheriff, not to exceed $100." "A fee for a renewal permit (applied for before the expiration date of a current permit to carry) will be determined by the county sheriff, not to exceed $75."[14]

~~88.~~108. For its concealed pistol license, Washington State charges $36 plus fingerprinting fees for the initial application, and only $32 for a renewal.[15]

~~89.~~109. The Las Vegas Metropolitan Police Department charges $60 for a New Application and an additional $39 for an FBI Background Check, while a Renewal Application costs just $25 plus the cost of a background check.[16]

~~90.~~110. In the Commonwealth of Virginia, the processing fee for a county clerk is $10, the fee to the State Police is $5, and the fee that "may" be charged by local law enforcement for a background check is "not to exceed" $35, for a "total amount" that, by statute, "shall not exceed $50." Va. Code. § 18.2-308.03.

~~91.~~111. California's short three~~two~~-year permit period is also an outlier that makes the average annual cost to exercise the right to carry much greater than other states. (*Cf.*, fn. 2

[12] Florida Dep't of Agriculture & Consumer Services, *Fee Schedule: Concealed Weapon or Firearm: Section 790.06, Florida Statutes*, https://www.fdacs.gov/content/download/7438/file/Concealed-Weapons-License-Fees-06-26-2017.pdf (last visited Mar. 19, 2025).

[13] Utah Dep't of Public Safety, Criminal Identification (BCI), *How Do I Apply for a Concealed Firearm Permit?*, https://bci.utah.gov/concealed-firearm/how-do-i-apply-for-a-concealed-firearm-permit (last visited Mar. 19, 2025).

[14] Minnesota Dep't of Public Services, Bureau of Criminal Apprehension, *Permit to Carry Frequently Asked Questions, What Is the Cost for a Permit to Carry?*, https://dps.mn.gov/divisions/bca/bca-divisions/administrative/Pages/Permit-to-Carry-FAQ.aspx (last visited Mar. 19, 2025).

[15] Washington State Dep't of Licensing, *Fees: Firearms*, https://www.dol.wa.gov/business/firearms/fafees.html (last visited Mar. 19, 2025).

[16] Las Vegas Metropolitan Police Dep't, *Concealed Carry Firearm Permits (CCW) – Non-refundable Fees – Effective January 1, 2025*, https://www.lvmpd.com/about/bureaus/records-and-fingerprint-bureau/concealed-firearm-permits (last visited Mar. 19, 2025).

supra.)

~~92.~~112. An Arizona CCW Permit, for example, is good for five years and costs only $60.[17] Thus, an Arizona permit costs roughly $12 a year, whereas a Santa Clara County permit costs around $1,000 per year when all expenses are considered.

~~93.~~113. The fees that Defendants charge eclipse even other issuing authorities *within California*. Ironically, out-of-state residents who can now apply for a California CCW permit from any county that they plan to spend time in can probably get a permit with less hassle than a Santa Clara County resident. For instance, a full-time resident of Nevada, who regularly spends time in Shasta County, has a less onerous CCW permit process than a full-time resident of Santa Clara County because state law requires California residents to apply for permits in their county of lawful residence. Cal. Penal Code § 26150.

~~94.~~114. The Los Angeles Sheriff's Department, for example, charges a $43 initial fee and a $173 issuance fee,[18] plus the cost of training and Live Scan fingerprinting, which applicants contract for on their own through a third party.

~~95.~~115. Effective July 14, 2024, San Diego County Sheriff's Department charges a $35.20 initial fee,[19] a $93 Live Scan fee, and a $140.80 final fee, with the training provider chosen and contracted with by the applicant. CCW renewals cost just $77.

~~96.~~116. The Orange County Sheriff's Department's fees total $169 for the application,[20] with applicants completing the Live Scan and training through third parties they choose and contract with.

---

[17] Arizona Department of Public Safety, *Concealed Weapons Permit Unit – Applications and Fees*, https://www.azdps.gov/services/public/cwp (last visited Mar. 19, 2025).

[18] Los Angeles County Sheriff's Dep't, *Concealed Carry Weapon License*, https://lasd.permitium.com/entry (last visited Mar. 19, 2025).

[19] San Diego County Sheriff's Office, *Carry Concealed Weapons (CCW) License, CCW Fee Breakdown*, https://www.sdsheriff.gov/i-want-to/get-a-permit-or-license/regulatory-licenses-and-fees/concealed-weapons-license (last visited Mar. 19, 2025).

[20] Orange County Sheriff's Dep't, *Fee Schedule: CCW Licensing Fee Information*, https://www.ocsheriff.gov/commands-divisions/professional-services-command/professional-standards/ccw-licensing/fee-schedule (last visited Mar. 19 2025).

~~97.~~117. None of the above jurisdictions requires a psychological examination, further lowering the expense relative to Santa Clara County.

~~98.~~118. The San Francisco Police Department charges applicants $144, which includes the Live Scan, with the applicant paying for the psychological examination and training separately. Renewals cost $52.[21]

~~99.~~119. The Alameda County Sheriff's Department charges $195 for a New Concealed Carry Weapon License and $77 for a Standard Renewal, plus the cost of training, Live Scan, and the psychological examination.[22]

~~100.~~120. The San Mateo County Sheriff's Department charges $210 (inclusive of the DOJ Live Scan Fee, DOJ Live Scan "Rolling" Fee, and the Sheriff's Fee), plus the cost of training and the psychological examination. Renewals are $77.[23]

~~101.~~121. Santa Clara County is not the only issuing authority gouging applicants. A few other jurisdictions within California charge astronomically high fees, but none quite match Santa Clara. For example, the San Jose Police Department charges $1,328 before the additional expenses of Live Scan fingerprinting, training, and psychological examination.[24] Yet San Jose charges $25 for renewal applications, far short of the $447 charged by Santa Clara. So, in the longer term, Santa Clara is still costlier. That said, the fact that even worse abuse may exist in other jurisdictions does not excuse Defendants' unconscionable policies and unconstitutional fees.

~~102.~~122. In general, most applicants in California can expect to spend around $500-$700 (still too high by national standards) to get their CCW Permits in order to be able to exercise their constitutional rights, but residents in Santa Clara pay around four times that amount.

---

[21] San Francisco Police Dep't, *Concealed Carry Weapon License – Processing Fees*, https://sanfranciscopd.permitium.com/entry (last visited Mar. 19, 2025).

[22] Alameda County, CA Sheriff's Office, *Concealed Carry Weapons License – Pricing*, https://alamedaca.permitium.com/entry (last visited Mar. 19, 2025).

[23] San Mateo County Sheriff's Office, *Concealed Carry Weapons License – Pricing*, https://sanmateoca.permitium.com/ccw/start (last visited Mar. 19, 2025).

[24] San Jose Police Dep't, *Permit Fees – Concealable Firearms*, https://www.sjpd.org/records/fees/permit-fees (last visited Mar. 19, 2025).

**Second Amendment Violations – Psychological Testing**

~~103.~~123. As noted above, state law does not mandate psychological testing.[25] California law only creates a statutory scheme for reimbursement if a licensing authority (in this case, a sheriff) requires such a test.

~~104.~~124. The Defendants' wrongful policies and procedures stem from requiring a test for *all* applicants without an individualized finding of the need for such an invasive and intrusive procedure. *See* Policy 207.4(f) (Ex. C, p. 3). *See also* Schedule A, Step 1, part 7 and 8 (Ex. D, pp. 3-4).

~~105.~~125. Why might a sheriff rationally require such a test? There are a number of good reasons to make such a discretionary decision on a person-by-person basis. For instance, a history of mentally unstable conduct as evidenced by the applicant's detention under the applicable Welfare and Institutions Code, which itself must be disclosed as part of the application process and is part of the background check, *might* support an individualized requirement for psychological testing. Or a Post-Traumatic-Stress Disorder diagnosis that is revealed during any of the other statutorily authorized investigations that are part of the CCW licensing process (e.g., during the interview of the applicant). With such an individualized finding, a sheriff at least has a rationale for seeking expert help in deciding whether to issue or withhold a permit. Without an individualized finding of a need for testing, a sheriff is engaging in a dangerous presumption that weaponizes psychology to burden the fundamental rights of all who seek to exercise those rights.

~~106.~~126. If Santa Clara County employed such an ad hoc approach, based upon a showing—supported by evidence—of the mental instability of a particular applicant before imposing psychological testing, then at least a rational (though perhaps still not constitutional) basis would exist for mandating such an intrusive procedure and the attendant costs. But that is not what Santa Clara County does. The Defendants impose the cost and the false presumption of

[25] Which is why neither California nor the California Attorney General were originally ~~are~~ named as defendants in this suit. But since California, by and through its Attorney General's office, has signaled its desire to ratify these abuses (while having the power to rectify them) this SAC became necessary to add the State as a defendant after its chief law enforcement officer filed a motion to intervene.

mental instability on everyone seeking to exercise a fundamental right, who must then be subjected to intrusive, privacy-invading psychological screening to enjoy the full franchise of citizenship. This is constitutionally intolerable.

127. The *Bruen* decision mandates that barriers to exercising Second Amendment rights—like the right to carry a weapon in public for self-defense—must have historical analogs that do not otherwise violate any other fundamental rights. There is no valid, historically relevant law that conditioned the right to be armed in public on a psychological test, let alone mandating it for people who have no history of psychological illness or impairment. Without that *Bruen* pedigree for restricting the right to carry arms in public, the Defendants' imposition of such a requirement violates the Second Amendment. *See also Wolford*, 225 L. Ed. 2d 494; *United States v. Hemani*, __ U.S. __, 225 L. Ed. 2d 314 (June 18, 2026).

**Fourteenth Amendment Violation – Due Process – Psychological Testing**

~~107.~~128. The imposition of mandatory psychological testing as a condition for exercising a fundamental right flies in the face of bedrock principles of procedural due process. By mandating submission to psychological testing as part of the CCW process, without some individualized evidentiary showing that the applicant is prone to a disqualifying psychological impairment, the Defendants violate both the Second and Fourteenth Amendments.

~~108.~~129. Deprivation of a constitutional right is itself subject to procedural due process safeguards. *Addington v. Texas*, 441 U.S. 418 (1979). Here, the Defendants are assuming, without proof, that every CCW permit applicant is an undiscovered psychotic or sociopath. "[T]he psychological test [is to] determine[] if you are mentally fit to handle a concealed weapon." Ex. D, p. 4.

~~109.~~130. This test is ordered and conducted without any evidentiary standards, without evidentiary presumptions, without evidentiary burdens defined, without evidentiary privileges defined, or without procedural safeguards. Every CCW permit applicant is required to submit to a psychological test without exception or individualized finding merely because they have expressed a desire to exercise a fundamental right.

131. This unprecedented burden on an enumerated right cannot stand; it cuts against

centuries of the common law presumption of sanity and constitutional limits on an overreaching government.

**Fourteenth Amendment Violation – Equal Protection – Psychological Testing**

132. As noted above, the County Defendants mandate psychological testing for all new CCW applicants.

133. The County Defendants, however, have an express policy of exempting any judicial officer applying for a CCW permit from this requirement, thereby violating the Equal Protection Clause of the Fourteenth Amendment.

**California's Unconstitutional CCW Application and Issuance Policies**

**Fourteenth Amendment – Ratification of County's Equal Protection Violations**

~~110.~~134. As noted in footnote 6, *supra*, California did not have to risk waiving sovereign immunity to weigh in on this controversy. It had plenty of options other than intervening in this case as a party. The negative pregnant is "Why this now?" Recalcitrant states with histories of ignoring their duty to protect all of the constitutional rights of all of their citizens is not something new. *See generally*, *United States v. Cruikshank,* 92 U.S. 542 (1876), *United States v. Stanley (The Civil Rights Cases),* 109 U.S. 3 (1883), *Plessy v. Ferguson,* 163 U.S. 537 (1896), and *Cooper v. Aaron,* 358 U.S. 1 (1958). And even if the violation of fundamental rights seems less repulsive today than the cases cited above, one protocol that has consistently emerged over the course of this nation's history of protecting rights is that, once established as fundamental, no enumerated constitutional right is second-class. *Bruen*, 597 U.S. at 70-71 (citing *McDonald*, 561 U.S. at 780 (plurality op.).

135. In *Bruen*, the Supreme Court signaled to lower courts that they must begin imposing strict, objective requirements on states to justify laws and policies that infringe Second Amendment rights. And in its most recent decision, the Court signaled that it is prepared to entertain allegations that a state-actor's justification for gun control may, in fact, be a pretext for tainted policies, i.e., invidious discrimination against a class. In the Second Amendment context, that would be the class of people insisting on exercising their "right to keep and bear arms." *Wolford*, 225 L. Ed. 2d at 508-10, 516-17 (majority op.); *id.* at 519-525 (concurring op.); *id.* at

543, n. 17 (dissenting op.) (confirming that the majority and concurring opinions are indeed authorizing inquiries of illicit objectives by jurisdictions hostile to Second Amendment.)

136. California's intervention wager (i.e., risking a waiver of sovereign immunity) may be circumstantial evidence of a coordinated illicit policy (*see* n. 3, *supra*) with the County Defendants (or others). But at this time, Plaintiffs lack the facts necessary to satisfy the stricter pleading requirements for those allegations. At a minimum, however, after presumably conducting their own due diligence investigation into the County Defendants' public policies, California has elected to ratify those policies by joining this lawsuit. Having admitted they have the state constitutional power to regulate the CCW issuing agencies to prevent such abuses (Cal Const. art V, § 13), and by failing to take any remedial measures, California is sanctioning the County Defendants' unconstitutional abuses and the unequal application of state law inflicted on the Plaintiffs. Thus, California must endure and defend against the same allegations made against the County Defendants. The State's disclaimer that it takes no position on some of the County Defendants' policies cannot relieve them of joint liability for those policies under a theory of ratification, especially when the Attorney General has the power—and the duty—to regulate the CCW issuing agencies (county sheriffs and chiefs of police) to ensure compliance with the U.S. Constitution and uniform application of state law to all California residents.

137. Therefore, all of the allegations made against the County Defendants are re-alleged and incorporated against the State of California through its Attorney General Rob Bonta, who, having the power to stop the constitutional abuses alleged herein, has elected to defend those unconstitutional policies, procedures, and customs, thus ratifying these violations of the Constitution.

**First Amendment Violations – Ratification of County's Campaign Finance Disclosure Policy**

138. The facts alleged against the County Defendants (¶¶ 86-94) are realleged here against the State Defendant.

139. That having knowledge that the County Defendants are compelling political campaign finance disclosures as a condition to obtain a CCW permit, and having failed to exercise his duty under the California Constitution to halt such practices, the State Defendant is ratifying

these violations of the First Amendment.

**First Amendment Violations – Public Statements**

**Ratification of County's Standardless Review of Public Statements**

140. The facts alleged against the County Defendants (¶¶ 93-94) are realleged here against the State Defendant.

141. That having knowledge that the Santa Clara County Defendants are evaluating content-based and viewpoint based public statements made by CCW applicants, that violate the First Amendment, and having failed to exercise his duty under the California Constitution to halt such practices, Defendant Bonta is ratifying these violations of the U.S. Constitution.

**Penal Code § 26202(b)(3) Facially Violates the First Amendment**

142. The facts alleged against the County Defendants (¶¶ 95-96) are realleged here against the California Attorney General.

143. There are no set of circumstances under which a person applying for a CCW permit to exercise a Second Amendment right to carry arms in public for self-defense must be subjected to a non-objective, discretionary review, of their public statements. This constitutes a facial violation of the First Amendment.

**Second & Fourteenth Amendment Violations – Ratification of County's Fees**

144. The facts alleged against the County Defendants (¶¶ 97-122) are realleged here against the State Defendant.

145. The California legislature could solve this problem by mandating a uniform fee for CCW permits statewide. State law already preempts local regulation of firearms. Cal. Gov't Code § 53071.

146. And while imposing a cost to exercise a fundamental right, like voting, marching in a parade, seeking public office, might seem intuitively wrong, for now, the Supreme Court has countenanced some form of fee collection for licensing the right to be armed in public, notwithstanding a reinvigorated Second Amendment right of self-defense. *See Bruen*, 594 U.S. at 38-39, n. 9, ("[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in

processing licenses applications for exorbitant fees deny ordinary citizens their right to public carry.")

147. That the State Defendant has elected to ratify the County Defendants' abusive permitting process instead of invoking the several tools at his disposal to prevent those abuses is a policy choice. Though he has not, Attorney General Bonta could:

a. Invoke his state constitutional power as the chief law officer of the state to comply with the state constitutional mandate "to see that the laws of the State are uniformly and adequately enforced." Cal. Const. art. V, § 13.

b. Separately, or in conjunction with the power enumerated above, invoke his ***direct*** supervisory authority over all "sheriff[s] and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices" to ensure statewide uniformity in regulating a statewide permit to exercise a fundamental right. *Id.*

c. Promulgate regulations under California's Administrative Procedures Act (Gov't Code § 11340 et seq.) to stop a statewide license for exercising a fundamental right from costing less than $200 in some counties (Placer, Orange, Los Angeles, Riverside) to a high that is just shy of $2,000 in Santa Clara County.[26]

d. Issue formal written opinions "to any Member of the Legislature, the Governor, Lieutenant Governor, Secretary of State, Controller, Treasurer, State Lands Commission, Superintendent of Public Instruction, Insurance Commissioner, any state agency, and any county counsel, district attorney, or sheriff when requested, upon any question of law relating to their respective offices." Cal. Gov't Code § 12519.

148. By failing to exercise his duty to see to the uniform application of California law or a statewide permit that regulates a fundamental right, Attorney General Rob Bonta is violating the Plaintiffs' Second Amendment rights and the right to equal protection under the law pursuant to

---

[26] A regulatory scheme promulgated by the Attorney General's office providing guidelines and objective criteria for investigations under § 26202 would have the effect of ensuring a methodology for setting fees for a statewide license that regulates a fundamental right that conforms to constitutional norms.

the 14th Amendment.

**Second & Fourteenth Amendment Violations - Ratification of County's Psychological Testing Requirement**

149. The facts alleged against the County Defendants (¶¶ 123-127) are realleged here against the State Defendant.

150. By failing to exercise his duty to see to the uniform application of California law for a statewide permit that regulates a fundamental right, Attorney General Rob Bonta is ratifying the County Defendants' violation of Plaintiffs' Second Amendment rights (mandating psychological testing for all applicants) and Fourteenth Amendment rights to equal protection under the law (exempting judges from psychological testing) and to procedural due process of law (presumption of sanity).

**California's Statewide Uniform CCW Application Form**

~~111.~~151. California Penal Code section 26175 sets forth the statutory basis for the Attorney General to create a uniform statewide application to obtain a CCW license.

152. The current uniform statewide application created by the Attorney General has the following deficiencies that either violate the Constitution or exceed the statutory authority under section 26175:

a. Question #14 on page 7 of 17 violates medical privacy laws, lacks objective definitions, lacks procedural due process safeguards, is not directly authorized by section 26175, and is therefore unconstitutional.[27]

b. Question #16 on page 7 of 17 is constitutionally obsolete as currently worded in light of *Hemani*, 146 S. Ct. 1677.

c. Question #18 on page 7 of 17 asks a CCW applicant to admit, under oath, whether they have "ever been involved in an incident involving firearms" without defining "incident" and therefore constitutes a vague, arbitrary, capricious, and ambiguous qualification for exercising a fundamental right.

[27] Questions #13 and #15 already address presumptively valid questions about mental illness with procedural safeguards recognized by statute and case law.

d. Section 7 of the CCW Application contains a hold harmless agreement that requires the CCW licensee (if/when the permit is issued) to assume all responsibility and liability "In the event any claim, suit or action is brought against the licensing authority, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the licensing authority, its chief officer or any of its employees from such claim, suit, or action." And further requires the CCW applicant to acknowledge their understanding and agreement to "Hold Harmless" provisions of the CCW Application. This indemnification and Hold Harmless provision is not authorized by Penal Code section 26175. More importantly, it is an unconstitutional condition. The government may not force a person to surrender one constitutional right to exercise another. *Simmons v. United States*, 390 U.S. 377, 394 (1968) (holding that a defendant cannot be compelled to waive Fifth Amendment rights to invoke Fourth Amendment rights). Yet the California Attorney has imposed exactly that choice when it will not grant a CCW permit, unless an applicant waives important civil tort defenses and agrees to indemnify the government against any and all civil actions arising out of the CCW licensee's exercise of fundamental rights.

**DECLARATORY AND INJUNCTIVE RELIEF**

~~112.~~153. Under *Bruen*, Defendants bear the heavy burden of proving their policies comply with the Second and Fourteenth Amendments. They will fail to do so, because their practices are entirely atextual and ahistorical, representing novel schemes developed in recent years or decades, and completely without any historical analogue.

~~113.~~154. Accordingly, Plaintiffs seek declaratory relief confirming that the County Defendants' CCW Permit application regime and fee schedule violates the Second Amendment, ~~being~~ as they are entirely without any relevant historical precedent. The County Defendants' fees are both facially unconstitutional and unconstitutional as applied to the Plaintiffs and the members and supporters of the associational Plaintiffs. Furthermore, the State's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void and addressed by appropriate injunctive (mandate or prohibition) relief.

155. Furthermore, the County Defendants' violation of procedural due process safeguards by mandating psychological testing for all CCW applicants, without *a priori* individualized findings of psychological instability, violates the Fourteenth Amendment. Furthermore, the State's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void and addressed by appropriate injunctive (mandate or prohibition) relief.

~~114.~~156. Furthermore, the County Defendants' violation of the Equal Protection Clause, by mandating psychological testing for all CCW applicants, but exempting judicial officers, violates the Fourteenth Amendment. Furthermore, the State's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void and addressed by appropriate injunctive (mandate or prohibition) relief.

~~115.~~157. Although Plaintiffs do not concede that *any* fee to exercise an enumerated right passes constitutional muster, especially a fee that is on its face abusive and exorbitant, for the purposes of this lawsuit only, the expenses mandated by state law are not at issue. That includes the $93 California Department of Justice charges~~fee~~ for comprehensive background checks, ~~,~~Live Scan fingerprinting expenses, and the cost of a training course. Until or unless the County Defendants can promulgate a constitutionally valid local fee, Santa Clara County's fee for issuing a CCW permit should be set at $0.00.

158. Plaintiffs seek injunctive relief to compel Defendants to comply with the Second Amendment, as clarified by *Bruen*, and the Fourteenth Amendment's procedural due process guarantees. Santa Clara County's CCW permit must be affordable to all citizens and must not impose unwarranted psychological testing, ~~or~~ First Amendment violations, or wealth restrictions as a condition to exercising Second Amendment rights. Furthermore, the State's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void and addressed by appropriate injunctive (mandate or prohibition) relief.

159. Plaintiffs also seek declaratory and injunctive relief against both the County and State defendants for violations of the First Amendment relating to campaign disclosure requirements and investigations related to CCW applicants' public statements.

160. Plaintiffs seek additional injunctive relief specifically against Attorney General Rob Bonta, ordering his office to promulgate regulations or issue a formal opinion that abusive and exorbitant fees for CCW licenses will not be tolerated in California.

161. Furthermore, Plaintiffs seek an order that the Attorney General revise the stateside uniform CCW Application Form to comply with the U.S. Constitution and California Penal Code § 26175.

116.

**FIRST CLAIM FOR: DAMAGES & DECLARATORY AND & INJUNCTIVE RELIEF**
**U.S. Const. Amends. II, XIV**
**Right to Bear Arms**
**42 U.S.C. § 1983**
(By All Plaintiffs Against All Defendants)

117.162. Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

118.163. As described previously, Defendants have violated, or have ratified the violation, and continue to violate, or continue to ratify the violation of, the rights of gun owners, charging nearly $1,000 in fees, in addition to the cost of training, Live Scan, and psychological testing, to obtain a CCW Permit. Such exorbitant costs are unconstitutional, both on their face and as applied to Plaintiffs.

164. As described previously, the County Defendants' mandatory requirement of psychological testing for all CCW applicants without good cause is unconstitutional, both on its face and as applied to any applicant without a history of mental illness. Furthermore, the State Defendant's ratification of these county-level unconstitutional practices, policies, customs, and procedures must also be declared void, and addressed by appropriate injunctive (mandate or prohibition) relief.

119.

165. As described previously, the County Defendants' insistence suggestion that campaign finance disclosures are a perpetual requirement of the CCW application process to exercise Second Amendment rights is unconstitutional, both on its face and as applied to Plaintiffs. Furthermore, the State Defendant's ratification of these county-level unconstitutional practices,

policies, customs, and procedures must also be declared void, and addressed by appropriate injunctive (mandate or prohibition) relief.

~~120.~~166. As described previously, the statewide CCW Application Form promulgated by the State Defendant violates the Second Amendment through arbitrary and capricious questions, and by imposing an unconstitutional condition as defined by *Simmons v. United States,* 390 U.S. 377 (1968).

~~121.~~167. As a result, Plaintiffs' Second Amendment rights, as applied to California under the Fourteenth Amendment, as well as the rights of the associational plaintiffs' members and supporters, are violated.

~~122.~~168. Defendants are thus propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, and thereby infringe their constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

~~123.~~169. Defendants cannot satisfy their burden to justify these customs, policies, and practices that preclude or inhibit and therefore infringe Plaintiffs' exercise of enumerated rights.

~~124.~~170. Plaintiffs are thus entitled to damages and declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**SECOND CLAIM: DAMAGES & ~~FOR~~ DECLARATORY & ~~AND~~ INJUNCTIVE RELIEF**
**U.S. Const. Amends. I, XIV**
**Free Speech**
**42 U.S.C. § 1983**
(By All Plaintiffs Against All Defendants)

~~125.~~171. Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

172. As described previously, and because political campaign contributions are protected speech under the First Amendment, the County Defendants' policy, practice, and custom of imposing campaign finance disclosure requirements, as an express ~~implied~~ condition of exercising Second Amendment rights, violates the First Amendment. Furthermore, the State's knowing ratification of these county-level unconstitutional practices, policies, customs, and procedures is actionable, and must be addressed by appropriate injunctive (mandate or prohibition) relief.

As described above, Penal Code section 26202(b)(3) authorizes a content- and viewpoint-based evaluation of public statements as a condition to exercise Second Amendment rights. The County Defendants' policy, practice, and custom of investigating CCW applicants' public statements, as an express condition of exercising Second Amendment rights, violates the First Amendment. The State Defendant's knowing ratification of these county-level unconstitutional practices, policies, customs, and procedures is actionable, and must be addressed by appropriate injunctive (mandate or prohibition) relief. Moreover,

~~126.~~173. ~~Furthermore,~~ Penal Code section 26202(b)(3) violates the First Amendment on its face.

~~127.~~174. As a result, Plaintiffs' First Amendment rights, as applied to California under the Fourteenth Amendment, as well as the rights of the associational plaintiffs' members and supporters, are violated.

175. Plaintiffs seek declaratory and/or injunctive relief requiring the removal of the Levine Act notices from the County Defendant's CCW application website and clarification that the procedures for issuances of CCW licenses do not trigger Levine Act disclosures in any county in California.

~~128.~~176. Plaintiffs also seek declaratory and/or injunctive relief that Penal Code section 26202(b)(3) is unconstitutional and therefore void.

**THIRD CLAIM ~~FOR~~: DAMAGES & DECLARATORY ~~AND~~& INJUNCTIVE RELIEF**
**U.S. Const. Amends. XIV**
**Procedural Due Process**
**42 U.S.C. § 1983**
(By All Plaintiffs Against All Defendants)

~~129.~~177. Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

~~130.~~178. As described previously, the County Defendants' mandatory requirement of psychological testing for all CCW applicants without good cause is unconstitutional, both facially and as applied to any applicant without a history of mental illness. Furthermore, the State's knowing ratification of these county-level unconstitutional practices, policies, customs, and procedures is actionable and must be addressed by appropriate injunctive (mandate or prohibition)

relief.

~~131.~~179. Imposing mandatory psychological testing as a condition for exercising fundamental rights, without an individualized showing supported by probable cause, admissible evidence, notice, opportunity to be heard, right to counsel, right to cross-examine a witness, and appellate rights, violates Plaintiffs' procedural due process rights under the Fourteenth Amendment.

180. Plaintiffs seek damages and declaratory and/or injunctive relief that Defendants cannot impose psychological testing as part of the CCW application process without good cause and procedural due process rights in accordance with existing law. Plaintiffs who have already undergone such testing seek an order for the destruction of those records.

**FOURTH CLAIM: DAMAGES & ~~FOR~~ DECLARATORY &~~AND~~ INJUNCTIVE RELIEF**
**U.S. Const. Amends. XIV**
**Equal Protection**
**42 U.S.C. § 1983**
(By All Plaintiffs Against Defendant California Attorney General Rob Bonta)

181. Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

182. Through ratification of the County Defendants' unconstitutional policies, practices, procedures, and customs, the State Defendant—having knowledge of those unconstitutional wrongs and the power to prevent, or aid in preventing, those wrongs—the State Defendant has, and has continued to, sanction the unequal enforcement of California's laws as they apply to a statewide license to exercise a fundamental right.

183. This has resulted in the Plaintiffs, as a class, being treated differently under the state's laws that regulate a fundamental right.

184. Plaintiffs seek a declaration that the State Defendant has waived California's sovereign immunity under the 11th Amendment and is thus liable to pay any money damages that naturally flow from these violations.

~~1.~~185. Plaintiffs also seek declaratory and/or injunctive relief, that the Attorney General must take all necessary steps, pursuant to his power under the State's Constitution, and statutory authorities listed herein, to prevent abusive CCW license requirements and exorbitant fees from

being imposed on law-abiding Californians throughout the state to ensure uniform application of the law in compliance with the 14th Amendment's Equal Protection Clause.

**PRAYER**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. A declaration that all Defendants (either directly or through ratification) charging approximately $2,000 for first-time CCW Permit applications (when all expenses are factored in) violates the constitutional right to carry under the Second Amendment;

2. A declaration that all Defendants (either directly or through ratification) charging approximately $447 plus the cost of a training course for the renewal of a CCW Permit ~~applications~~ violates the constitutional right to carry under the Second Amendment;

3. A declaration that the County Defendants' notice insisting ~~suggesting~~ that campaign finance disclosures are a ~~perpetual~~ requirement of the CCW application process violates the constitutional right to carry under the Second Amendment, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's Equal Protection Clause, in addition to violating the Second Amendment;

4. A declaration that the County Defendants' policy, practice, and custom of imposing campaign finance disclosure requirements, as a ~~an implied~~ condition of exercising Second Amendment rights, violates the First Amendment, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's equal protection clause, in addition to violating the First Amendment;

5. A declaration that the County Defendants' mandatory requirement of psychological testing for all CCW applicants without good cause violates the constitutional right to carry under the Second Amendment, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's equal protection clause, in addition to violating the Second Amendment;

~~5.~~6. A declaration that the County Defendants' mandatory requirement of psychological testing for all CCW applicants, while exempting judicial officers, violates the 14th Amendment's

Equal Protection Clause, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's Equal Protection Clause, in addition to violating the 14th Amendment's Procedural Due Process Clause;

7. A declaration that the County Defendants' mandatory requirement of psychological testing for all CCW applicants without good cause violates the right to procedural due process under the Fourteenth Amendment, and that the State Defendant's ratification of this practice, policy, or procedure also violates the 14th Amendment's Equal Protection Clause, in addition to violating the 14th Amendment's Procedural Due Process Clause;

8. A declaration that the current CCW Application promulgated by the California Attorney General's office is constitutionally and statutorily deficient and must be made to conform to Penal Code section 26175 and the U.S. Constitution;

~~6.~~9. A declaration that investigating public statements made by CCW applicants violates the First Amendment;

~~7.~~10. A declaration that the associational plaintiffs' resources and litigation experience are necessary to vindicate the Second Amendment rights of individual Plaintiffs who lack the means and capacity to challenge the constitutionality of the practices of all Defendants;

~~8.~~11. An order enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from charging applicants abusive and exorbitant ~~any additional~~ local fees for their CCW Permit applications or renewal applications, conceding only that ~~with~~ the applicant shall pay ~~paying only~~ state law-mandated expenses including the $93 application fee as well as the cost of the training course and Live Scan service;

~~9.~~12. An order enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from requiring psychological examinations of all CCW applications or from passing the cost of any such examination onto applicants, without a finding of good cause that such testing is objectively necessary;

~~10.~~13. An order enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from implying, suggesting, or imposing campaign finance disclosure requirements on Plaintiffs as a condition of obtaining a CCW permit;

~~11.~~14. An order mandating the destruction of the records of psychological testing of those CCW applicants who have already undergone such testing, and who were granted a permit;

~~12.~~15. Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. § 1988;

~~13.~~16. Compensatory damages for Plaintiffs who paid the unconstitutional fees before the Court could provide relief;

~~14.~~17. Compensatory damages for Plaintiffs who have paid to undergo unconstitutional mandatory psychological testing as part of the CCW application process;

~~15.~~18. Nominal damages; and

~~16.~~19. All other relief the court deems appropriate.

Respectfully Submitted,

Dated: August 20, 2026 **MICHEL & ASSOCIATES, P.C.**

*/s/ Anna M. Barvir*
Anna M. Barvir
Counsel for Plaintiffs Robert M. Blank, Charles Koon Chiu Young, Antonio Ramos Rodriguez, Jonathan Young, Kyle Hoang Truong, California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation

Dated: August 20, 2026 **LAW OFFICES OF DONALD KILMER, APC**

*/s/ Donald Kilmer*
Donald Kilmer
Counsel for Plaintiff The Second Amendment Foundation

**ATTESTATION OF E-FILED SIGNATURES**

I, Anna M. Barvir, am the ECF User whose ID and password are being used to file this FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. In compliance with Northern District of California L.R. 5-1(i)(3), I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: August 20, 2026

*s/ Anna M. Barvir*
Anna M. Barvir

# CERTIFICATE OF SERVICE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case Name: *Blank v. Santa Clara County Sheriff's Department*
Case No.: 5:25-cv-08027-EJD

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

on the following parties, as follows:

Tony Lopresti
Aryn Paige Harris
aryn.harris@cco.sccgov.org
Office of the County Counsel
70 West Hedding, East Wing, 9th Floor
San Jose, California 95110-1770
*Attorneys for Defendants Santa Clara County and Sheriff Robert Jonsen*

Kevin L. Quade
kevin.quade@doj.ca.gov
1300 I Street, Suite 125
Sacramento, CA 95814
*Attorneys for Defendant Attorney General Rob Bonta*

by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 6, 2026, in Long Beach, California.

*/s/ Haydee Villegas*
Haydee Villegas